Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number

Jeffrey K. Garfinkle (SBN 153496)
Joseph M. Welch (SBN 259308)
Buchalter Nemer, PC
18400 Von Karman Avenue, Suite 800
Irvine, CA  92612
Telephone:  949-760-1121
Facsimile:  949-720-0182

☐ *Individual appearing without counsel*

☒ *Attorney for:* Library Asset Acquisition Co., Ltd.

FOR COURT USE ONLY

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

In re:
ThinkFilm, LLC

Debtor(s).

CHAPTER: 11

CASE NO.: 2:10-bk-19912-BR

DATE:   October 26, 2010
TIME:   2:00 p.m.
CTRM:   1668
FLOOR:  16th

## NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## UNDER 11 U.S.C. § 362 (with supporting declarations)
### (MOVANT: Library Asset Acquisition Co., Ltd.)
### (Personal Property)

1. NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding Parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2. **Hearing Location:**   ☒ **255 East Temple Street, Los Angeles**     ☐ **411 West Fourth Street, Santa Ana**
   ☐ **21041 Burbank Boulevard, Woodland Hills**     ☐ **1415 State Street, Santa Barbara**
   ☐ **3420 Twelfth Street, Riverside**

3. a.  ☒  This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this Motion.

   b.  ☐  This Motion is being heard on SHORTENED TIME. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence must be filed and served:

   ☐ at the hearing     ☐ at least _____ court days before the hearing.

   (1) ☐  A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

   (2) ☐  A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court.

   (3) ☐  A Motion for Order Shortening Time was been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4. You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response *(Optional Court Form F 4001-1M.RES)*, or you may prepare your response using the format required by Local Bankruptcy Rule 9004-1 and the Court Manual

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*

## F 4001-1M.PP


American LegalNet, Inc.
www.FormsWorkFlow.com

Motion for Relief from Stay (Personal Property) - *Page 2 of 10*      **F 4001-1M.PP**

| In re | (SHORT TITLE) | | CHAPTER: 11 |
|---|---|---|---|
| ThinkFilm, LLC | | | |
| | | Debtor(s). | CASE NO.: 2:10-bk-19912-BR |

5.  If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.


Dated: October 1, 2010


Buchalter Nemer, PC
_____
*Print Law Firm Name (if applicable)*



Jeffrey K. Garfinkle                                    /s/ Jeffrey K. Garfinkle
_____          _____
*Print Name of Individual Movant or Attorney for Movant*      *Signature of Individual Movant or Attorney for Movant*

*December 2009*                                                          **F 4001-1M.PP**

American LegalNet, Inc.
www.FormsWorkFlow.com

| In re<br>ThinkFilm, LLC | (SHORT TITLE) | CHAPTER: 11 |
|---|---|---|
| | Debtor(s). | CASE NO.: 2:10-bk-19912-BR |

# MOTION FOR RELIEF FROM STAY
## (MOVANT: <u>Library Asset Acquisition Co.</u>)

1. **The Property at Issue:** Movant moves for relief from the automatic stay with respect to the following personal property (the "Property"):

   ☐ Vehicle *(describe year, manufacturer, type, and model)*:

   *Vehicle Identification Number:*
   *Location of vehicle (if known):*

   ☐ Equipment *(describe manufacturer, type, and characteristics)*:

   *Serial number(s):*
   *Location (if known):*

   ☒ Other Personal Property *(describe type, identifying information, and location)*:
   See Exhibit 21 to the Declaration of Evan Warshawsky ("Warshawsky Decl."), filed concurrently

2. **Case History:**
   a. ☐ A voluntary ☒ An involuntary petition under Chapter ☐ 7 ☒ 11 ☐ 12 ☐ 13
      was filed on *(specify date)*: March 17, 2010
   b. ☐ An Order of Conversion to Chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13
      was entered on *(specify date)*:
   c. ☐ Plan was confirmed on *(specify date)*:
   d. ☐ Other bankruptcy cases affecting this Property have been pending within the past two years. See attached Declaration.

3. **Grounds for Relief from Stay:**
   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:
      (1) ☒ Movant's interest in the Property is not adequately protected.
         (a) ☒ Movant's interest in the collateral is not protected by an adequate equity cushion.
         (b) ☒ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.
         (c) ☐ No proof of insurance re Movant's collateral has been provided to Movant, despite borrower(s)'s obligation to insure the collateral under the terms of Movant's contract with Debtor(s).
         (d) ☐ Payments have not been made as required by an Adequate Protection Order previously granted in this case.
      (2) ☐ The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.
         (a) ☐ Movant is the only creditor or one of very few creditors listed on the master mailing matrix.
         (b) ☐ The Property was transferred to Debtor(s) either just before the bankruptcy filing or since the filing.
         (c) ☐ Non-individual entity was created just prior to bankruptcy filing for the sole purpose of filing bankruptcy.
         (d) ☐ Other bankruptcy cases have been filed asserting an interest in the same Property.
         (e) ☐ The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents. No Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) has been filed.

*(Continued on next page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

American LegalNet, Inc.
www.FormsWorkFlow.com

Motion for Relief from Stay (Personal Property) - *Page 4 of 10*        **F 4001-1M.PP**

| In re | (SHORT TITLE) | | CHAPTER: 11 |
|---|---|---|---|
| ThinkFilm, LLC | | Debtor(s). | CASE NO.: 2:10-bk-19912-BR |

    (3) ☐ *(Chapter 12 or 13 cases only)*

        (a) ☐ Postconfirmation plan payments have not been made to the standing trustee.

        (b) ☐ Postconfirmation payments required by the confirmed plan have not been made to Movant.

    (4) ☐ The lease has been rejected or deemed rejected by operation of law.

    (5) ☐ For other cause for relief from stay, see attached continuation page.

  b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

4. ☐ Movant also seeks annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

5. **Evidence in Support of Motion:** *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

  a. ☐ Movant submits the attached Declaration(s) on the Court's approved forms (if applicable) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.

  b. ☒ Movant submits the attached supplemental Declaration(s) under penalty of perjury, to provide additional admissible evidence in support of this Motion.

  c. ☐ Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims and the Property set forth in Debtor's(s') Schedules. Authenticated copies of the relevant portions of the Schedules are attached as Exhibit _____.

  d. ☐ Other evidence *(specify)*:

6. ☒ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following *(specify forms of relief requested)*:**

1. ☒ Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to repossess and sell the Property.

2. ☐ Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

3. Additional provisions requested:

  a. ☒ That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

  b. ☒ That the 14-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived.

  c. ☐ That Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M.ER).*

  d. ☐ For other relief requested, see attached continuation page.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

American LegalNet, Inc.
www.FormsWorkFlow.com

Motion for Relief from Stay (Personal Property) - *Page 5 of 10*    **F 4001-1M.PP**

| In re                          (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| ThinkFilm, LLC | |
| Debtor(s). | CASE NO.: 2:10-bk-19912-BR |

4.   If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated: October 1, 2010

Respectfully submitted,

Library Asset Acquisition Co., Ltd.
*Movant Name*

Buchalter Nemer, PC
*Firm Name of Attorney for Movant (if applicable)*

By: */s/ Jeffrey K. Garfinkle*
    *Signature*

Name:  Jeffrey K. Garfinkle
       *Typed Name of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*

**F 4001-1M.PP**

American LegalNet, Inc.
www.FormsWorkFlow.com

JEFFREY K. GARFINKLE (SBN 153496)
JOSEPH M. WELCH (SBN 259308)
BUCHALTER NEMER
A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone: (949) 760-1121
Facsimile: (949) 720-0182
Email:  jgarfinkle@buchalter.com
        jwelch@buchalter.com

Attorneys for Movant
Library Asset Acquisition Company, Ltd.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>ThinkFilm LLC,<br><br>        Alleged Debtor. | Case No.  2:10-bk-19912-BR<br><br>Chapter: 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY BY LIBRARY ASSET ACQUISITION COMPANY, LTD.**<br><br>Hearing:<br><br>Date:      October 26, 2010<br>Time:     2:00 p.m.<br>Place:    Courtroom 1668<br>          255 E. Temple Street<br>          Los Angeles, California 90012 |

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7208920v1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................. 1

II.    FACTUAL BACKGROUND ......................................................................... 2

    A.    The Various Credit Facilities with DB Zwirn ........................................ 2

    B.    Collateral under the ThinkFilm Credit Facility .................................... 3

    C.    The CT1 Guaranty ................................................................................. 4

    D.    Note Purchase Transaction; The LAAC Titles ...................................... 5

    E.    Administrative Agency Appointment ...................................................... 7

    F.    Borrowers/Guarantors Assignment to TFC .......................................... 7

    G.    Image Agreements ................................................................................. 9

    H.    Current Indebtedness to LAAC ............................................................ 10

    I.    Current Value of LAAC's Collateral .................................................... 11

    J.    Involuntary Bankruptcy Petitions and Appointment of Interim Trustee ............. 13

    K.    State Court Lawsuit Against DBZ ......................................................... 14

    L.    Relief From Stay .................................................................................. 14

III.   LAAC IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY ........................ 15

    A.    Lift Stay Motions are Narrow Summary Proceedings ........................... 15

    B.    "Cause" Exists to Lift the Stay Under 11 U.S.C. § 362(d)(1) ............. 16

    C.    Cause Exists Because LAAC Is Not Adequately Protected by a Sufficient Equity Cushion ............ 17

    D.    11 U.S.C. § 362(d)(2) Provides an Independent Basis to Lift the Stay ............... 18

        1.    CT1 Lacks An Adequate Equity Cushion in the Collateral ..................... 19

        2.    The Property Is Not Necessary for an Effective Reorganization ............. 19

IV.    CONCLUSION ............................................................................................. 20

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Duvar Apt., Inc. v. Fed. Deposit Ins. Corp.*
  *(In re Duvar Apt., Inc.)*
  205 B.R. 196 (9th Cir. BAP 1996)........................................................ 15

*FSFG Serv. Corp. v. Kim (In re Kim)*
  71 B.R. 1011 (Bankr. C.D. Cal. 1987)................................................. 15

*In re Colrud*
  45 B.R. 169 (Bankr. D. Alaska 1989)................................................. 18

*In re Computer Communications, Inc.*
  824 F.2d 725 (9th Cir. 1987)............................................................. 15

*In re Liona Corp.*
  68 B.R. 761 (Bankr. E.D. Pa. 1987)................................................... 18

*In re Mellor*
  734 F.2d 1396 (9th Cir. 1984)........................................................... 17

*In re New Era Co.*
  125 B.R. 725 (S.D.N.Y 1991)............................................................ 19

*In re Trident Associates Ltd. Partnership*
  52 F.3d 127 (6th Cir. 1995).............................................................. 17

*In re Tucson Estate, Inc.*
  912 F.2d 1162 (9th Cir. 1990)........................................................... 17

*La Jolla Mortgage Fund v. Rancho El Cajon Associates*
  18 B.R. 283 (Bankr. S.D Cal. 1982) ................................................... 18

*Nations Bank of Virginia, N.A. v.*
  *DCI Publishing of Alexandria, Inc.*
  160 B.R. 538 (E.D. Va. 1993)............................................................ 19

*Sonnax Indus., Inc. v. TRI Component Prods.*
  *Corp. (In re Sonnax Indus., Inc.)*
  907 F.2d 1280 (2nd Cir. 1990).......................................................... 15

*Stewart v. Gurley*
  745 F.2d 1194 (9th Cir. 1984)........................................................... 19

*United States Savings Association Of Texas*
  *v. Timbers Of Inwood Forest, Ltd.* (*In re*
  *Timbers of Inwood Forest, Ltd.)*
  484 U.S. 365 (1988)......................................................................... 18

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

# TABLE OF AUTHORITIES
### (continued)

Page

*Western Farm Credit Bank v. Carmelo John Teresi*
134 B.R. 392 (E.D. Ca. 1991) .................................................................................. 19

## Federal Authorities

## 11 U.S.C.

§ 361 .................................................................................................................... 16, 17
§ 362 .............................................................................................................. 15, 16, 19
§ 362(d)(1) ............................................................................................................... 16
§ 362(d)(2) ..................................................................................................... 18, 19, 20
§ 362(e) .................................................................................................................... 15
§ 362(g) .............................................................................................................. 17, 20
§ 541(d) .................................................................................................................... 10
§ 548(a) .................................................................................................................... 14

## State Authorities

## Cal. Comm. Code

§ 9613(1)(D) ............................................................................................................ 10

## Other  Authorities

## 3 Collier on Bankruptcy

16 ed. rev., at ¶ 362.08[6] ................................................................................. 16, 19

## House of Representatives Reports

No. 595, 95th Cong., 1st Sess. 344 (1977) ............................................................ 16

## Senate Report

No. 989, 95th Cong., 2d Sess. 55 (1978) ......................................................... 15, 16

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

## I.    **INTRODUCTION**

Library Asset Acquisition Company, Ltd., a private limited liability company organized and existing under the laws of England and Wales ("LAAC"), intends to conduct a foreclosure sale on certain assets that have been pledged as collateral for the repayment of loans that LAAC acquired from D.B. Zwirn Special Opportunities Fund, L.P., a Delaware limited partnership ("DBZ").   Those assets consist primarily of a film library with approximately 570 films (the "TFC Film Library") owned by a non-debtor third party—TFC Library, LLC, a Delaware limited liability company (*fka* Orange Holdings, LLC, a Delaware limited liability company) ("TFC").

Notwithstanding that the assets to be foreclosed upon are owned by a *non-debtor third party and not property of any of the alleged debtors' estates*, two of the alleged debtors in these involuntary cases, CT 1 Holdings LLC ("CT1") and ThinkFilm LLC ("ThinkFilm"), are parties to agreements for the distribution of certain films in the TFC Film Library and another library owned by ThinkFilm with approximately 220 films (the "ThinkFilm Film Library").   Those agreements are with Image Entertainment, Inc. ("Image").[1]

CT1 has an obligation as a fiduciary and sales agent to administer rights that are actually owned and controlled by TFC, in its capacity as successor to former owners of the TFC Film Library.   CT1's obligation to administer these rights includes, without limitation, the obligation to collect proceeds, on the behalf of the rights holder (TFC), under the agreements with Image. Indeed, under the operative loan documents, any funds received by CT1 must be held in trust for the benefit of LAAC.   Likewise, ThinkFilm's rights to receive funds from the "Image Agreements" (as defined below), or any other third party distribution arrangements and agreements, are equally restricted.

The proposed foreclosure sale will impact any rights of CT1 and ThinkFilm under the Image Agreements (or any other distributors of the films in the TFC Film Library).   For this reason, and to enable LAAC to enforce ThinkFilm's and CT1's rights under the Image

---

[1] In addition, there may be other agreements or arrangements with CT1 or Thinkfilm, relating to the TFC Film Library, which LAAC has yet to identify.  The proposed foreclosure against the TFC Film Library would impact any such rights.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7208920v1

1

Agreements, such as audit rights and recoveries for underpayment, LAAC seeks relief from the automatic stay.

It is important to note what this motion is **not** seeking.  At this time, LAAC is not seeking relief from stay to foreclose on the ThinkFilm Film Library but LAAC reserves its right to seek such relief in the future.

## II.    FACTUAL BACKGROUND

### A.    The Various Credit Facilities with DB Zwirn

On or about March 2, 2007, ThinkFilm, FPLAC, LLC ("FPLAC"), and Zoopraxis Film Assets, LLC ("Zoopraxis," and collectively with ThinkFilm and FPLAC, the "Borrowers"), on the one hand, and Bernard National Loan Investors, Ltd. ("Bernard National") and Bernard National Senior Funding, Ltd. (collectively, "Bernard"), on the other hand, entered into an Amended and Restated Credit and Security Agreement ("ThinkFilm Credit Agreement") wherein Bernard agreed to provide Borrowers a secured credit facility of Twenty-Nine Million Six Hundred Fifty Thousand Dollars ($29,650,000).  As reflected in the underlying loan documents, Borrowers granted Bernard a first priority security interest in substantially all of their assets.[2] Under the ThinkFilm Credit Agreement, DBZ was "agent for the Lenders" ("Administrative Agent").  (Declaration of Evan Warshawsky ("Warshawsky Decl.") at ¶ 9.)  A true copy of the ThinkFilm Credit Agreement is enclosed with the Warshawsky Declaration as Exhibit 1.

After four amendments to the ThinkFilm Credit Agreement, the secured credit facility was increased to Forty-Five Million Seven Hundred Thousand Dollars ($45,700,000) ("ThinkFilm Credit Facility").  (Warshawsky Decl. at ¶ 10.)  True and correct copies of the amendments to the ThinkFilm Credit Agreement are enclosed with the Warshawsky Declaration as Exhibit 2.[3]

In addition to the ThinkFilm Credit Facility, DBZ and other lenders entered into separate lending agreements with CT1 (the "CT1 Loan") and certain affiliates.  Those affiliates include: (a) Stopping Power Productions, Inc. (the "Stopping Power Loan"); (b) Capitol Films Group Ltd,

---

[2] The original Credit and Security Agreement was dated October 19, 2006.

[3] Those amendments are dated April 19, 2007, May 27, 2007, July 11, 2007 and October 3, 2007, respectively.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7208920v1                    2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Capitol Films Partners Limited and Capitol Films Limited (the "Capitol Film Loan"); and (c) Sheridan Square Entertainment, Inc. (the "SSE Loan").  The CT1 Loan, the Stopping Power Loan, the Capitol Film Loan and the SSE Loan are collectively referred to as the "Other Loans." (Warshawsky Decl. at ¶ 11.)

In March, May and July 2008, DBZ and the other lenders entered into three global amendments that governed and effectively cross-collateralized the ThinkFilm Credit Facility with the Other Loans.  As explained below, one year later when LAAC acquired the ThinkFilm Credit Facility, the ThinkFilm Credit Facility was separated from the Other Loans.  (Warshawsky Decl. at ¶ 12.)

## B.  Collateral under the ThinkFilm Credit Facility

As security for Borrowers' obligations under the ThinkFilm Credit Facility, the Borrowers granted the Administrative Agent, for the benefit of the Lenders, a security interest and lien in and to certain assets, which assets included, without limitation, all right, title and interest that the Borrowers had, if any, in and to certain motion pictures titles (the "Films"), including all personal property, tangible and intangible property owned by one or more of the Borrowers with respect to such Films (all such property together, the "Collateral").[4]  (Warshawsky Decl. at ¶ 13.)

The security interest granted by the Borrowers to the Administrative Agent in and to the Collateral was perfected by a series of copyright mortgages and UCC Financing Statements ("Perfection Documents").  For clarity, Zoopraxis is a special purpose entity formed solely to hold rights acquired from Comerica Bank in and to a portfolio of loan agreements secured by the copyrights in and to various motion pictures ("Comerica Loan Portfolio").  So, with respect to the Comerica Loan Portfolio, the Perfection Documents consist of a further assignment of copyright mortgages and UCC Financing Statements that were previously assigned from Comerica to Zoopraxis. (Warshawsky Decl. at ¶ 14.)

---

[4] *See* Section 8.1 of the Agreement and the definition of "Borrower Collateral."

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7208920v1                                3

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

### C.    The CT1 Guaranty[5]

The following entities or individuals guaranteed the obligations of the Borrowers under the ThinkFilm Credit Facility and/or pledged their rights in the Films as Collateral (collectively, "Guarantors"): (1) TF Canadian Library Holdings, LLC, a Delaware limited liability company; (2) Capitol Films Limited, a private limited liability company formed under the laws of England and Wales; (3) ThinkFilm, Corp., a corporation formed under the laws of the Province of Ontario; (4) ThinkFilm, Inc., a corporation formed under the laws of the Province of Ontario; (5) Capco U.S. Film Holdings, LLC, a Delaware limited liability company; (6) TF Canada Acquisition Corporation, Inc., a corporation formed under the laws of the Province of Ontario; (7) CF Acquisition, LLC, a Delaware limited liability company; (8) Capitol Films Group Limited, a private limited liability company formed under the laws of England and Wales; (9) Capco TF Holdings, LLC, a Delaware limited liability company; (10) David Bergstein, an individual ("Bergstein"); and (11) CT1—one of the alleged debtors in these cases.  (Warshawsky Decl. at ¶ 15.)

A copy of the Amended and Restated Secured Continuing Guaranty executed by CT1 (and the other guarantors) ("CT1 Guaranty") is enclosed with the Warshawsky Declaration as Exhibit 3.  As explained in the Introduction to this Memorandum, CT1 serves in a fiduciary, sale agency capacity to TFC (as successor to ThinkFilm).  CT1's fiduciary capacity is reflected in CT1 Guaranty.  (Warshawsky Decl. at ¶ 16.)  Section 4.1(b) of the CT1 Guaranty requires that all "Exploitation Proceeds"[6] be deposited into a collection account established "in the name of the Administrative Agent."  As provided for in Section 4.1(d) of the CT1 Guaranty, if a guarantor,

---

[5] Pursuant to the Global Amendment, CT1 and the other non-ThinkFilm related borrowers were relieved of their *in personam* liability under the guaranties.  Notwithstanding this exoneration, LAAC (as the successor lender) retains its security interest against CT1.

[6] "Exploitation Proceeds" is defined in the ThinkFilm Credit Agreement as:

> "All payments, proceeds, or other consideration received by any Credit Party . . .  or any of their Affiliates on account of any of the Collateral including, without limitation, all sums, moneys, fees, advances, guarantees, income profit and proceeds paid to or derived by or payable to any Credit Party . . .  or any of their affiliates on account of the sale, distribution and exploitation of any Film or on account of any other item of Collateral."

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7208920v1                                          4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

including CT1, receives any "Exploitation Proceeds" then such guarantor must "hold such payment in *trust* for the Administrative Agent on behalf of the Lenders." (Emphasis added.)  As a result of these provisions, all payments which CT1 receives for the distribution of the TFC Film Library or other film libraries that serve as collateral under the ThinkFilm Credit Facility (which libraries are owned by third parties) are trust funds belonging to TFC.  And, under the terms of the CT1 Guaranty, CT1 must hold such funds in trust for the benefit of LAAC—as the senior secured creditor.  (Warshawsky Decl. at ¶ 17.)

A copy of the Amended and Restated Security Agreement ("CT1 Security Agreement") executed by CT1 (and other parties) is enclosed with the Warshawsky Declaration as <u>Exhibit 4</u>.  Under Section 2.1 of the CT1 Security Interest, CT1 "grant[ed] a [l]ien in and to, and assign[ed] to the Administrative Agent all of its rights and interests in and to all of the [Collateral]."  (Warshawsky Decl. at ¶ 18.)  A copy of the UCC Financing Statement filed by DBZ against CT1 on October 23, 2006, covering all CT1's assets is enclosed with the Warshawsky Declaration as <u>Exhibit 5</u>.  (Warshawsky Decl. at ¶ 19.)

### D.   Note Purchase Transaction; The LAAC Titles

During March 2009 through June 2009, LAAC acquired all rights owned by several groups of lenders under certain loans in a portfolio of loans administered by DBZ ("DBZ Originated Loans"), which included, without limitation, the rights of the original lenders under the ThinkFilm Credit Facility ("Note Purchase Transaction").  A true copy of the Note Purchase and Sale Agreement, with two amendments (collectively, the "Note Purchase Agreement") by and between LAAC, on one hand, and Hemlock (LUX) S.A.R.L., a limited liability company formed under the laws of Luxembourg ("Hemlock"), DBZ, and Bernard (collectively, "Sellers"), on the other hand, is enclosed with the Warshawsky Declaration as <u>Exhibit 6</u>.  (Warshawsky Decl. at ¶ 20.)

As a result of the Note Purchase Transaction, in June 2009, LAAC acquired the ThinkFilm Credit Facility (as amended) from Sellers.  At that point, all of Sellers' rights in and to the ThinkFilm Credit Facility were assigned and transferred to LAAC ("Credit Facility

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Assignment").[7]  (Warshawsky Decl. at ¶ 21.)  A copy of the Credit Facility Assignment is enclosed with the Warshawsky Declaration as <u>Exhibit 7</u>.

Immediately before LAAC's acquisition, the Sellers amended the ThinkFilm Credit Facility, including a sixth amendment to the ThinkFilm Credit Facility ("Sixth Amendment"). (Warshawsky Decl. at ¶ 22.)  A copy of the Sixth Amendment is enclosed with the Warshawsky Declaration as <u>Exhibit 8</u>.  At the same time these amendments were entered into, a global amendment was entered into among the borrowers under the ThinkFilm Credit Facility and Other Loans, on one hand, and DBZ and the other lenders, on the other hand (the "Global Amendment").  (Warshawsky Decl. at ¶ 23.)  A copy of the Global Amendment is enclosed with the Warshawsky Declaration as <u>Exhibit 9</u>.

The Global Amendment made the following changes: (1) the ThinkFilm Credit Facility was no longer cross-collateralized or integrated with the Other Loans; and (2) the non-ThinkFilm related guarantors were released from *in personam* liability under the operative ThinkFilm loan documents.  (Warshawsky Decl. at ¶ 24.)

Concurrent with the Global Amendment, DBZ and LAAC entered into the Tranche C Intercreditor Agreement (the "Intercreditor Agreement").  (Warshawsky Decl. at ¶ 25.)  A copy of the Intercreditor Agreement is enclosed with the Warshawsky Declaration as <u>Exhibit 10</u>. Essentially, through the Intercreditor Agreement, LAAC and DBZ agreed on what collateral belonged to each lender.  And each borrower and guarantor acknowledged the Intercreditor Agreement.  (Warshawsky Decl. at ¶ 26.)

Lastly, when LAAC acquired the Thinkfilm Credit Facility, DBZ executed and delivered to LAAC two short form assignments for approximately 800 motion picture films or film development projects (which included the films or film development projects in the TFC and ThinkFilm Film Libraries): (1) the first dated as of June 8, 2009 wherein DBZ assigned to LAAC all of the Lender's right, title and interest in and to various security agreements, copyright

---

[7]  LAAC provided documents to the interim trustee regarding this assignment, including payment of consideration. As those documents conclusively establish, no assets of the alleged debtors or any of their corporate affiliates were used to acquire the Credit Facility.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7208920v1                                6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY

mortgages, UCC Financing Statements, guarantees and other instruments ("Fundamental Documents") with respect to 164 motion pictures; and (2) the second dated as of June 30, 2009 wherein DBZ assigned to LAAC all of the Lender's right, title and interest in and to the Fundamental Documents with respect to 663 motion picture titles (both assignments are referred to together as the "Fundamental Document Assignment"). (Warshawsky Decl. at ¶ 27.)

*It is important to note that, in most instances, TFC's rights in the films contained in the TFC Film Library are for a limited duration (spanning between 3-20 years). Each day for which the rights in and to the TFC Film Library are not exploited is one less day for which revenue can be realized. As a result, the TFC Film Library is a rapidly depreciating asset with the vast majority of such depreciation occurring in earlier years. It is critical that LAAC gains complete control over its collateral including the TFC Film Library.*[8]    (Warshawsky Decl. at ¶ 28; emphasis added.)

**E.    Administrative Agency Appointment**

Along with the Credit Facility Assignment, DBZ executed and delivered the Administrative Agency Appointment and Assignment ("Administrative Agency Appointment"), dated as of June 2009, wherein DBZ appointed LAAC as its successor with the power and authority to perform all the duties and exercise all the rights conferred to DBZ as Administrative Agent for the Lenders under the Credit Facility including, without limitation, the authority to exercise any rights that the Administrative Agent or the Lenders may have under the Uniform Commercial Code and all other applicable laws. (Warshawsky Decl. at ¶ 29.) A copy of the Administrative Agency Appointment is enclosed with the Warshawsky Declaration as <u>Exhibit 11</u>.

**F.    Borrowers/Guarantors Assignment to TFC**

On or about August 3, 2009, FPLAC, CFA, ThinkFilm, CTFH, and Zoopraxis (collectively, "Library Assignors"), on the one hand, and TFC, on the other hand, entered into an

---

[8]  Consistent with the Intercreditor Agreement, LAAC's security interest in the TFC Film Library is of a first priority and senior to all other potential interests. By virtue of any foreclosure sale against the TFC Film Library, any junior interests in the TFC Film Library will be extinguished. Post-relief from stay and post-foreclosure sale (assuming LAAC or its successor is the successful bidder), LAAC anticipates addressing, and hopefully resolving, any outstanding distribution issues directly with Image.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7208920v1                                    7

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Asset Purchase Agreement ("APA"), effective October 24, 2008, wherein the Library Assignors agreed to sell, transfer and assign to TFC all rights, title and interest in and to 539 LAAC titles (the "TFC Titles").  (Warshawsky Decl. at ¶ 30.)  A copy of the APA is enclosed with the Warshawsky Declaration as Exhibit 12.[9]

The assignment of rights contemplated under the APA was implemented by the Bill of Sale and Assignment ("TFC Bill of Sale") wherein the Library Assignors sold, transferred and assigned to TFC all rights, title and interest in and to the TFC Titles.  (Warshawsky Decl. at ¶ 31.) The TFC Bill of Sale, a copy of which is enclosed with the Warshawsky Declaration as Exhibit 13, was recorded with the United States Copyright Office on August 4, 2009, Vol. 3576, Doc. No. 426.  (Warshawsky Decl. at ¶ 32.)

In addition to the transfer of rights under the APA and Bill of Sale, the Borrowers assigned, and TFC assumed, all the Borrower's rights and obligations under the ThinkFilm Credit Facility based on that certain Loan Agreement Assignment and Assumption, enclosed with the Warshawsky Declaration as Exhibit 14.  (Warshawsky Decl. at ¶ 33.)  Further, per the Lender Consent to Assignment and Assumption ("Successor Lender Consent"), LAAC, in its capacity as Successor Lender: (1) consented to this assignment of rights and assumption of obligations, (2) acknowledged and agreed that "LAAC shall have no recourse or remedies" against any of the Borrowers under the Agreement, and (3) preserved LAAC's lien against the remaining Collateral. (Warshawsky Decl. at ¶ 34.)  A copy of the Successor Lender Consent is enclosed with the Warshawsky Declaration as Exhibit 15.  Simply stated, in connection with the asset transfer to TFC, a recourse loan was made non-recourse.  Borrowers were released from *in personam* liability under the ThinkFilm Credit Facility, while LAAC preserved its *in rem* rights against any remaining collateral owned by the Borrowers. (Warshawsky Decl. at ¶ 35.)

Based on the assignment of rights from the Library Assignors to TFC, TFC's assumption of the Borrower's obligations and LAAC's consent to such assignment, TFC is the present

---

[9] This delayed closing was the result of the need to obtain lender consent to the asset transfer.  Following consummation of the transfer of the Credit Facility to LAAC, LAAC consented to the asset transfer to TFC.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7208920v1                                          8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY

obligor under the Credit Facility with respect to the TFC Film Library.  (Warshawsky Decl. at ¶ 36.)

### G.    Image Agreements

During 2007 and 2008, Image and CT1 entered into a series of agreements for the distribution of motion pictures owned by subsidiaries and affiliates of CT1.  CT1 entered into those agreements in its capacity as sales agent and fiduciary to certain affiliates, including ThinkFilm.  (Warshawsky Decl. at ¶ 38.)  Those agreements are as follows:

(1)  Output Distribution Agreement dated as of December 7, 2007, as amended from time to time (including the Distribution Agreement Novation, dated June 24, 2008),[10] a copy of which is enclosed with the Warshawsky Declaration as Exhibit 16;

(2)  Catalog Exclusive Distribution Agreement dated as of September 5, 2008, a copy of which is enclosed with the Warshawsky Declaration as Exhibit 17;

(3)  Exclusive Distribution Agreement dated as of August 26, 2008, as amended from time to time, a copy of which is enclosed with the Warshawsky Declaration as Exhibit 18;[11]

(4)  Exclusive Distribution Agreement dated as of October 25, 2007, as amended from time to time, a copy of which is enclosed with the Warshawsky Declaration as Exhibit 19;[12]

(5)  Exclusive Distribution Agreement dated as of August 20, 2008, as amended from time to time, a copy of which is enclosed with the Warshawsky Declaration as Exhibit 20;[13] and

(6)  Exclusive Distribution Agreement dated as of April 28, 2008, as amended from time to time, a copy of which is enclosed with the Warshawsky Declaration as Exhibit 21.[14]

---

[10]  Capitol Films US, LLC and ThinkFilm are nominal parties to the Distribution Agreement Novation.  Nevertheless, Thinkfilm has no rights under this agreement.  This agreement involved the following film titles:  *The Air I Breathe*, *Shadow of the Moon*, and *Dead Fish*.  The rights to *The Air I Breath* and *Shadow of the Moon* are or were owned or controlled by TFC.  The rights to *Dead Fish* are owned or controlled by Pangea Media Holdings, a UK corporation, as successor to Capitol Films Limited, a UK corporation.

[11]  This agreement involved the following film titles:  *Blackout*, *Escapist*, *Incendiary*, *Phoebe in Wonderland*, and *Roman Polanski:  Wanted and Desired*.  The rights to *Blackout* are owned or controlled by Pangea Media Holdings Limited, a UK corporation, as successor to Capitol Films Limited, a UK Corporation.

[12]  This agreement involved the film title:  *Before the Devil Knows You Are Dead*.  The rights to this film title are owned or controlled by TFC.

[13]  This agreement involved the film title*:  Edge of Love.*

Buchalter Nemer
A Professional Corporation
Irvine

BN 7208920v1                    9

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

1   The agreements referenced in the foregoing six paragraphs are collectively referred to as

2   the "Image Agreements."  A spreadsheet listing the films covered by the Image Agreements is

3   enclosed as <u>Exhibit 22</u> to the Warshawsky Declaration.  (Warshawsky Decl. at ¶ 39.)

4   LAAC mentions these agreements because it is these agreements, or any other distribution

5   rights on the TFC Film Library that call for payments to CT1 or ThinkFilm, that LAAC is seeking

6   relief from stay.  Under the most encompassing Image Agreement, Image was granted the right to

7   distribute certain film titles now owned by TFC until July 31, 2011.[15]  In exchange, Image agreed

8   to pay certain amounts directly to CT1—in its fiduciary capacity to ThinkFilm.  And, under the

9   operative loan documents, CT1 is required to hold those payments in trust for LAAC.[16]

10   (Warshawsky Decl. at ¶ 40.)

11   A foreclosure against the TFC Film Library will result in CT1 losing its putative right to

12   receive any funds from Image.  This is one of the reasons that LAAC is seeking relief from stay.

13   (Warshawsky Decl. at ¶ 41.)

14   **H.   <u>Current Indebtedness to LAAC</u>**

15   As set forth in the Warshawsky Declaration, no payments are being made to LAAC on or

16   after the Note Purchase Transaction which consummation occurred between March and July

17   2009.  (Warshawsky Decl. at ¶¶ 42 - 56.)  As a result, the principal balance currently owed LAAC

18   under the ThinkFilm Credit Facility is approximately $45.7 million.  (Warshawsky Decl. at ¶ 42.)

19   Although LAAC is also owed accrued interest and certain recoverable charges (including

20   attorneys' fees and costs), the Collateral's value is far less than the outstanding principal

21   balance.[17]  (Warshawsky Decl at ¶¶ 57 – 66.)

---

22   [14] This agreement involved the film title: *Then She Found Me*.  The rights to this film title are owned or controlled

23   by TFC.

24   [15] The July 31, 2011 end date is as to the films distributed under the Catalog Exclusive Distribution Agreement.
There are different end dates under the other Image Agreements.  For the most part, those end dates are 5 years from
either (1) the delivery date of the applicable film title or (2) the "street date."

25   

26   [16] Because of this trust relationship, any right of CT1 to receive funds from Image is limited by Bankruptcy Code
541(d)

27   [17] Under Cal. Comm. Cod. § 9613(1)(D), prior to conducting a foreclosure sale and upon request for a party with

28   appropriate statutory standing, LAAC is required to provide an accounting of the outstanding indebtedness under the
operative loan agreements for which the Collateral serves as security.  LAAC is still in the process of ascertaining the

I.    **Current Value of LAAC's Collateral**

As explained in the Warshawsky Declaration, distribution rights decline in value over time based on the following factors: (a) initial releases into any particular distribution channel (theatrical, pay per view, home video, digital, cable, broadcast) command the highest value while subsequent releases often generate lower and lower values; (b) as a distribution agreement nears expiration, the amount of future revenue streams are diminished; and (c) when a distribution agreement for a film nears expiration, potential licensees typically offer much less than the distribution rights are worth or simply decline to make deals.  (Warshawsky Decl. at ¶ 45.)

*Here, the value of LAAC's film library collateral, and particular, the payment stream under the Image Agreements has plummeted.*    Under the Image Agreements, total gross revenues generated in 2008 were $22.9 million.    The next year, 2009, total gross revenues collapsed to $2.8 million for those same titles—*an 88% decrease*.  (Warshawsky Decl. at ¶ 61.) For the first two quarters of 2010—which includes almost 3 post-petition months—total gross revenues under the Image Agreements continued with their precipitous decline.  For the first six months of this year, total gross revenues were approximately $700,000.  (Warshawsky Decl. at ¶ 61.)  The following charts show the dramatic reduction in gross revenues and net profits (or losses) generated under the Image Agreements:[18]

exact amount of overall outstanding indebtedness.  LAAC will have such amount prior to any foreclosure sale. Regardless, for purposes of the proof required for this motion, it is sufficient for LAAC to provide the principal amount owed under the operative loan documents—particularly when the value of the Collateral is massively below the principal indebtedness.

[18] This information is derived from the annual and quarterly statements provided by Image.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7208920v1

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20    As established in the Declaration of Mr. Warshawsky, LAAC projects that: (1) net profits

21  to Image through the remaining term of the most encompassing Image Agreement—the Catalog

22  Distribution Agreement (July 31, 2011) will be $338,000 (based on actual data provided by

23  Image on sales and profits during the prior 18 months); and (2) CT1 will not receive *any*

24  payments from Image during the remaining term because Image has claimed an unrecouped

25  balance from all titles in the Image Agreements of almost $2.3 million.  (Warshawsky Decl. at

26  ¶ 62.)  A chart showing LAAC's projections and assumptions is enclosed with the Warshawsky

27  Declaration as <u>Exhibit 23</u>.  Thus, even under a best-case scenario, which assumes no deductions,

28  setoffs or recoupments by Image, the maximum projected recoveries by CT1 under the Image

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7208920v1                                    12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY

1    Agreements through July 31, 2011 are approximately $338,000.[19]  That amount is far, far below

2    the $45.7 million of principal indebtedness owed to LAAC.  (Warshawsky Decl. at ¶ 63.)

3         LAAC has no reason to believe there will be any significant economic changes in the

4    relationship with Image that benefit CT1 or ThinkFilm going forward.  (Warshawsky Decl. at

5    ¶ 64.)  For the reasons discussed in the Warshawsky Declaration, Image either has refused to

6    make any payments on the distribution rights for almost two years or has promised, but not

7    delivered, substantial revenues from deals "in the pipeline" (i.e. executed contracts with future

8    payment dates).  (Warshawsky Decl. at ¶¶ 48-56.)  Image, through its distribution (or lack

9    thereof), controls a substantial portion of the value of LAAC's collateral (US distribution rights to

10   a significant portion of the TFC Film Library).  (Warshawsky Decl. at ¶ 65.)  Based on

11   (a) Image's performance over the past two years, (b) the depreciating distribution rights in both

12   the Image Agreements (mostly expiring in 2011), and (c) the general demise of very large

13   customers/sub-distributors (including Blockbuster, Inc., the world's largest movie-rental company

14   that filed for bankruptcy earlier this month), the Collateral is worth a mere fraction of current

15   indebtedness.  Further, LAAC's ability to recover even a portion of its original loan decreases

16   every day that it cannot properly exploit the films before the underlying agreements with

17   copyright holders expire.  (Warshawsky Decl. at ¶ 66.)

18        **J.    Involuntary Bankruptcy Petitions and Appointment of Interim Trustee**

19        On March 17, 2010, creditors filed involuntary bankruptcy petitions under chapter 11

20   against each of the following alleged debtors: R2D2, LLC (Bk. Case No. 2:10-bk-19924-BR);

21   (2) ThinkFilm (Bk. No. 2:10-bk-19912-BR), (3) CT1 (Bk. No. 2:10-bk-19927-BR), (4) CapCo

22   Group, LLC (Bk. No. 2:10-bk-19929-BR), and (5) Capitol Films Development, LLC, (Bk.

23   No. 2:10-bk-19938-BR).

24

25

26   [19] Under the other agreements with Image (that extend 5 years from either the distribution or "street date"), there may
     be additional post-July 31, 2011 gross revenues generated in connection with the films covered by those agreements.
27   At best, based upon the most recent gross revenues, it is anticipated that the aggregate amount of projected net profits
     under these additional Image Agreements through the end of their terms will be approximately $750,000.  From these
28   net profits, Image may be entitled to exercise its set-offs and recoupment rights for prior advances.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7208920v1                                13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

On March 31, 2010, the Court ordered the appointment of an interim trustee for each of the alleged debtors. On or about April 9, 2010, the Office of the United States Trustee filed applications for this Court to approve the appointment of Mr. Durkin as the chapter 11 interim trustee ("Interim Trustee") in each involuntary bankruptcy case. Those applications were granted by orders entered on April 15, 2010.

Since his appointment, the Interim Trustee has conducted multiple Rule 2004 examinations, including document productions and depositions of the following individuals and entities: David Bergstein (two days of depositions); Ronald Tutor (two days of depositions); Frymi Biedak (three days of depositions); Image and LAAC. As to LAAC and Ronald Tutor, all non-privileged responsive documents were produced. Included in the documents produced was proof that Ronald Tutor paid DBZ for LAAC's acquisition of the ThinkFilm Credit Facility.

**K.      State Court Lawsuit Against DBZ**

On or about August 13, 2010, Ronald Tutor, David Bergstein and numerous other entities, including certain Borrowers and Guarantors, ("State Court Plaintiffs") filed a first amended complaint against DBZ, Bernard National, Hemlock, Fortress Investment Group, LLC ("Fortress") and others ("State Court Defendants") for fraud, rescission, restitution, declaratory relief and other causes of action ("State Court Action"). The State Court Action has been or soon will be amended twice. In the second amended complaint, among the other relief, LAAC seeks rescission of the Note Purchase Agreement and restitution for the reasons set forth therein.

**L.      Relief From Stay**

LAAC, as the successor to both (a) the Administrative Agent under the Administrative Agency Appointment ("Successor Administrative Agent") and (b) the Lenders under the Credit Facility, intends to conduct a foreclosure sale on the TFC Film Library. It is important to note that the TFC Film Library is not owned by any of the alleged debtors, including ThinkFilm and CT1. It is not property of the estate of any of the alleged debtors.[20]

---

[20] While it is possible that the interim trustee could seek to recover a portion of the TFC Film Library as a fraudulent transfer in the ThinkFilm bankruptcy case, in order to do so he would need to show that ThinkFilm did not receive reasonably equivalent value or that the transfer was effectuated to hinder, delay or defraud creditors. *See* 11 U.S.C. § 548(a). Any argument that ThinkFilm did not receive reasonably equivalent value would fail, because at the time of the transfer, ThinkFilm was exonerated of any *in personam* liability under the ThinkFilm Credit Facility and the

BUCHALTER NEMER
A Professional Corporation
Irvine

BN 7208920v1                                    14

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Following the foreclosure, the purchaser of the TFC Film Library will have various rights under the Image Agreements as they relate to the TFC Film Library, including audit rights to determine whether Image paid the full amounts due and owing under the various Image Agreements, as the relate to the TFC Film Library.

As explained above and in the Warshawsky Declaration, LAAC is unable to determine whether any amounts are currently due under the Image Agreements.  Nevertheless, the fact remains that Image has made no payments to CT1 for almost two years.

## III.    LAAC IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY

### A.    Lift Stay Motions are Narrow Summary Proceedings

A lift stay motion is a summary proceeding "in which the only issues will be the 'lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor, or the existence of other cause for relief from the stay.'"  *In re Computer Communications, Inc.*, 824 F.2d 725, 729 (9th Cir. 1987) (quoting S. Rep. No. 989 at 55).  The burden of proof on a motion to modify the automatic stay is a shifting one.  *Sonnax Indus., Inc. v. TRI Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2nd Cir. 1990).  To obtain relief from the automatic stay, the party seeking relief must first establish a prima facie case.  *Duvar Apt., Inc. v. Fed. Deposit Ins. Corp. (In re Duvar Apt., Inc.)*, 205 B.R. 196, 200 (9th Cir. BAP 1996); *FSFG Serv. Corp. v. Kim (In re Kim)*, 71 B.R. 1011, 1015 (Bankr. C.D. Cal. 1987).  Once a prima facie case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted.  *Sonnax*, 907 F.2d at 1285; *Duvar Apt.*, 205 B.R. at 200.

*Collier* explains that "the defensive and informal nature of stay litigation precludes the formal assertion of counterclaims.  While section 362 takes no direct position on the matter, other than by inference from the brief time periods of section 362(e), the legislative history is quite

---

overall value of the TFC Film Library was and remains well below the outstanding indebtedness owed under the ThinkFilm Credit Facility.  Likewise, the transfer of the ThinkFilm Film Library was not a transfer designed to hinder, delay or defraud creditors.  Rather, it was effectuated along with the transfer of several other film libraries, owned by affiliated non-debtor entities, as part of an overall corporate restructuring, the primary purpose of which was to consolidate all of the film libraries into a single entity.  This structure promoted business efficiencies and better enabled the procuring of financing or raising of additional capital.  (Warshawsky Decl. at ¶ 38.)

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7208920v1                                       15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY

clear." *3 Collier on Bankruptcy*, 16 ed. rev., at ¶ 362.08[6].

> At the expedited hearing under subsection (e), and at all hearings on relief from the stay, *the only issue will be the claim of the creditor and the lack of adequate protection or existence of other cause for relief from stay.* The hearing is not the appropriate time at which to bring in other issues, such as counterclaims against the creditor on largely unrelated matters. Those counterclaims are not to be handled in the summary fashion contemplated for the preliminary hearing. Rather, these issues are appropriately the subject of more complete proceedings by trustees to recover property of the estate or to object to the allowance of a claim.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 344 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 55 (1978) (Collier, supra, at ¶ 362.08[6] at footnote 14).

LAAC anticipates that the Interim Trustee (or other parties) may argue that the State Court Action to which LAAC is a party somehow justifies denial of this motion. It does not. In the State Court Action, LAAC seeks to rescind the Note Purchase Agreement with DBZ and certain other parties. If such relief is granted, the prior lenders simply would be restored to their position as secured creditors against CT1 and ThinkFilm. In addition, LAAC seeks further relief against DBZ and the other sellers—all of which are addressed in the second amended complaint.

Any attempt by the Interim Trustee to argue that the allegations in the State Court Action, as they relate to LAAC, should bar or otherwise prevent the granting of this motion is an improper attempt to expand the scope of § 362. Consistent with the doctrinal underpinnings of § 362, if the Interim Trustee desires to assert claims against LAAC, he must do so in a separate proceeding.

**B.    "Cause" Exists to Lift the Stay Under 11 U.S.C. § 362(d)(1)**

By enacting Section 362(d)(1) of the Bankruptcy Code, Congress recognized that the protections of the automatic stay should not be used to unduly bind a secured creditor when cause exists and its interest in its collateral is not adequately protected. Upon the request of a party in interest, a court shall grant relief from the automatic stay "for cause," which includes the lack of adequate protection of the party's interest in property. 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define adequate protection, but illustrates what may constitute such protection. Section 361 provides a non-exclusive list of examples that includes:

BN 7208920v1                16
BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

(1)  requiring cash payments to the secured creditor to the extent the continuation of the stay results in a decrease in value of the collateral;

(2)  providing the secured creditor with an additional or replacement lien on property to the extent that the continuation of the stay results in a decrease in value of the collateral; or

(3) granting such relief to the secured creditor as will result in the creditor's realization of the "indubitable equivalent" of its interest in the collateral.

11 U.S.C. § 361.

In addition to a lack of adequate protection, cause can be established by other factors and is determined on a case-by-case basis. *In re Tucson Estate, Inc.*, 912 F.2d 1162 (9th Cir. 1990); *In re Trident Associates Ltd. Partnership*, 52 F.3d 127 (6th Cir. 1995).  The debtors (or in this case, the Interim Trustee) carries the burden of proof to establish adequate protection and that cause does not exist to grant the relief requested.  11 U.S.C. § 362(g).

In this case, cause exists to grant LAAC's relief from the automatic stay under section 362(d)(1) because LAAC's interest in the Collateral (with potentially very limited rights owned by CT1) is not adequately protected.  To recap, that collateral consists of CT1's rights under the Image Agreement and CT1's potential claims against Image under the Image Agreement.

That collateral secures in excess of $45 million of principal indebtedness owing to LAAC. At best, the value of CT1's interest in the collateral (i.e., its rights to payment under the Image Agreement) is approximately $338,000 (through July 31, 2011).  Obviously, there is no equity let alone any equity cushion.  And no payments are being made to LAAC, by Image, the alleged debtors or any other party to protect against the diminution in value of its collateral. (Warshawsky Decl. at ¶ 42.)

C.    **Cause Exists Because LAAC Is Not Adequately Protected by a Sufficient Equity Cushion**

"Equity cushion" is a common form of adequate protection for a secured creditor.  *See In re Mellor*, 734 F.2d 1396 (9th Cir. 1984).  However, the existence of a sufficient equity cushion alone is not dispositive; adequate protection does not exist when other factors, such as decline of the value of the collateral, indicate that the creditor is not being protected.  *See In re Colrud*,

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7208920v1                                17

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

45 B.R. 169, 178-79 (Bankr. D. Alaska 1989).  Similarly, the Supreme Court stated that a secured party's interest in its security is not adequately protected under section 362(d)(1) if the security is depreciating during the term of the automatic stay.  *United States Savings Association Of Texas v. Timbers Of Inwood Forest, Ltd.* (*In re Timbers of Inwood Forest, Ltd.*), 484 U.S. 365, 372 (1988).

The adequateness of an equity cushion is determined by whether there is sufficient value in the collateral to protect a secured creditor from a diminution in the value of its interest.  *La Jolla Mortgage Fund v. Rancho El Cajon Associate*s, 18 B.R. 283 (Bankr. S.D Cal. 1982).  Accordingly, equity cushion is determined by comparing the value of the property to the sum of the secured claims on the property.  *In re Liona Corp.*, 68 B.R. 761 (Bankr. E.D. Pa. 1987).

Here, LAAC's primary collateral consists of the TFC Film Library (owned by a non-debtor), a smaller film library owned by ThinkFilm, and potential payments by Image to CT1 under the Image Agreements.  At this point, LAAC is only seeking to foreclose against the TFC Film Library and CT1's rights under the Image Agreements.  Those assets, including the right to receive future payments from Image under the Image Agreements (which CT1 must hold in trust for TFC and LAAC) are worth far below the $45 million of indebtedness owed to LAAC.  As a result, there is no dispute that there is no equity in the assets that secure LAAC's indebtedness.

More significantly, because of the limited duration of TFC's rights in the TFC Film Library, the value of those rights declines on a daily basis.  It is undisputed that CT1 lacks any assets by which it can provide adequate protection to LAAC.  As a result, LAAC is entitled to relief from stay to foreclose against the TFC Film Library, which may extinguish Image's future rights under the Image Agreements related to the TFC Film Library and any rights of CT1 to receive payments from Image under those agreements.

**D.      11 U.S.C. § 362(d)(2) Provides an Independent Basis to Lift the Stay**

Upon the request of a party in interest, a court must grant relief from the automatic stay regarding an act against property of the estate if the debtor lacks equity in the property and if the property is not necessary for an effective reorganization which can be accomplished within a reasonable time.  11 U.S.C. § 362(d)(2).  In the instant case, both elements of section 362(d)(2) exist and relief must be granted.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7208920v1                                      18

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

1.    CT1 Lacks An Adequate Equity Cushion in the Collateral

Equity has been defined as "the value, above all secured claims against the property that can be realized from the sale of the property for the benefit of unsecured creditors." *Stewart v. Gurley*, 745 F.2d 1194, 1195 (9th Cir. 1984). *Collier* explains the need for debtor's equity as follows:

> [When] the estate will receive no benefit from the sale, there is little reason to permit the trustee to control the sale. In such a case, unless the debtor can demonstrate that the property is necessary to an effective reorganization, the property is of no value to the debtor or to the estate and *relief should be granted so that the party with a real interest in the property can control its disposition.*

3 *Collier on Bankruptcy*, 16th ed. rev., at ¶ 362.07[4][a] (emphasis added).

As explained above, there can be no dispute that CT1 lacks any equity in the Collateral (worth between $338,000 and $1,088,000 to CT1), which secures $45 million of indebtedness owing to LAAC.[21]  Although LAAC is entitled to collateral not owned by CT1, section 2.4 of the CT1 Guaranty provides that "the Administrative Agent shall be under no obligation to marshal any assets of [the Borrowers] or any other guarantor in favor of any Guarantor, or against or in payment of any or all of the Obligations."  Further, case law supports a literally reading of Section 362(d)(2), which considers only the *debtor's* equity.[22]  Here, CT1 does not have *any* equity in the Collateral—particularly in light of CT1's fiduciary obligations and the pre-petition trust relationships that governed CT1's relationship with Image.

---

[21] This argument assumes that CT1 has unfettered rights to use proceeds derived from the Image Agreements. As explained throughout this Memorandum, CT1 does not have such unfettered rights. Rather, CT1 serves in a fiduciary sales agency capacity to TFC and is contractually obligated to hold an proceeds derived from the Image Agreements in trust for LAAC.

[22] *See, e.g., Nations Bank of Virginia, N.A. v. DCI Publishing of Alexandria, Inc.*, 160 B.R. 538, 541 (E.D. Va. 1993) (holding that a creditor's equity cushion stemming from other collateral on property not owned by debtor is not relevant under Section 362); *In re New Era Co.*, 125 B.R. 725 (S.D.N.Y 1991) (certificate of deposit owned by non-debtor not considered since Section 362(d)(2) only demands an analysis of the debtor's equity); and *Western Farm Credit Bank v. Carmelo John Teresi*, 134 B.R. 392, 398 (E.D. Ca. 1991) (creditor was entitled to relief from the automatic stay because neither third-party creditor nor the debtors were entitled to have the creditor's debt allocated according to their respective demands).

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7208920v1

19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR RELIEF FROM THE AUTOMATIC STAY

1

2.    <u>The Property Is Not Necessary for an Effective Reorganization</u>

2

3    After establishing that a debtor lacks adequate equity, it is the debtor's burden to prove

4    that the property involved is necessary to an effective reorganization.  11 U.S.C. § 362(g).  In this

5    case, the Interim Trustee and CT1 cannot meet their burden.  CT1 is merely a holding company

6    for other entities.  Other than collecting money from Image (which Image has not paid in almost

7    two years), CT1 has no business operations.  Any collections from Image are trust funds of TFC

8    and the cash collateral of LAAC, which the Interim Trustee cannot use without either obtaining

9    consent of LAAC (which it will not grant) or by order of this Court.  To obtain such an order, the

10    Interim Trustee would need to establish that LAAC is adequately protected—an impossible task

11    since CT1 has no unencumbered assets.  Under these circumstances, no justification exists to

12    delay LAAC from being authorized to exercise its rights and remedies and forcing it to incur

13    further losses.  Therefore, in addition to cause under Section 362(d)(1), LAAC is also entitled to

14    relief from the automatic stay under Section 362(d)(2).

## IV.    <u>CONCLUSION</u>

15    For all of the foregoing reasons, LAAC is entitled to relief from stay to exercise its rights

16    and remedies as against its Collateral, including foreclosing on (1) the TFC Film Library, which

17    may extinguish any rights of CT1 and ThinkFilm to receive payments; and (2) CT1's and

18    ThinkFilm's rights against Image under the Image Agreements.

19

20    DATED: October 1, 2010                          BUCHALTER NEMER
                                                        A Professional Corporation

21

22                                                      By: _/s/ Jeffrey K. Garfinkle_____
23                                                          JEFFREY K. GARFINKLE
                                                            Attorneys for Movant
24                                                          Library Asset Acquisition, Ltd.

25

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7208920v1                                    20