1 | LEONARD L. GUMPORT (Bar No. 86935)
*lgumport@gumportlaw.com*
2 | ANDREW S. ROTTER (Bar No. 86725)
*arotter@gumportlaw.com*
3 | PETER J. MASTAN (Bar No. 190250)
*pmastan@gumportlaw.com*
4 | GUMPORT | MASTAN
550 South Hope Street, Suite 825
5 | Los Angeles, California  90071-2627
Telephone: (213) 452-4900
6 | Facsimile:  (213) 623-3302

7 | Attorneys for Ronald L. Durkin,
Chapter 11 Trustee

8 |

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **LOS ANGELES DIVISION**

12 | In re )  **Bk. No. 2:10-bk-19912-BR**
   )
13 | )  **CHAPTER 11**
   THINKFILM, LLC,  )
14 | )  **OPPOSITION OF TRUSTEE TO**
   )  **MOTION OF LIBRARY ASSET**
15 | Debtor.  )  **ACQUISITION COMPANY LTD.**
   )  **FOR RELIEF FROM AUTOMATIC**
16 | )  **STAY; MEMORANDUM OF POINTS**
   )  **AND AUTHORITIES**
17 | )
   )  **[Identical papers are filed in ThinkFilm**
18 | )  **and CT-1 Holdings cases.]**
   )
19 | )  **[Filed under separate covers are**
   )  **evidentiary objections and requests to**
20 | )  **take judicial notice.]**
   )
21 | )
   )  **DATE:        October 26, 2010**
22 | )  **TIME:        2:00 P.M.**
   )  **PLACE:       Courtroom 1668**
23 | )  **[Hon. Barry Russell]**
   )
24 | —————————————————————

25 | / / /

26 | / / /

27 | / / /

28 | / / /

# TABLE OF CONTENTS

**Page**

I.   **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   **SUMMARY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  **FACTS:  THE MOTION SEEKS TO ENFORCE TWO INSIDER DEALS
THAT BERGSTEIN ORCHESTRATED FROM BOTH SIDES** . . . . . . . . . . . . 4

    **A.**   Bergstein, R2D2, CT1, ThinkFilm, LAAC, and Pangea . . . . . . . . . . . . . . . . 5

    **B.**   April 16, 2008:  Nancy Willen Sues ThinkFilm and CT1 . . . . . . . . . . . . . . . 5

    **C.**   Bergstein Was on Both Sides of the 10/24/08 Sale Agreement  . . . . . . . . . . . 5

    **D.**   Bergstein Was on Both Sides of the 3/12/09 Claim Purchase Agreement . . . . 6

    **E.**   April 13, 2009:  Willen Obtains a TRO against ThinkFilm and CT1 . . . . . . . 9

    **F.**   June 17, 2009:  Allied Obtains $4 Million Judgment against ThinkFilm . . . . . 9

    **G.**   The July 20, 2009 Assumption Agreement Contains a Release . . . . . . . . . . . 9

    **H.**   March 17-23, 2010:  Creditors File Involuntary Petitions against the Debtors;
and Bergstein Files Declaration in Bankruptcy Court . . . . . . . . . . . . . . . . . . 10

    **I.**   March 25, 2010:  Bergstein, Tutor, and LAAC File State Court Complaint
against Tregub; Bergstein Files Declaration . . . . . . . . . . . . . . . . . . . . . . . . 10

    **J.**   March 31, 2010:  Bankruptcy Court Orders Appointment of Trustee . . . . . . . 11

    **K.**   March 31, 2010:  LAAC Tells Yet Another Ownership Story to the Federal
District Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    **L.**   April-August 2010:  Appointment of Trustee; and Bergstein, Tutor, Pangea,
and LAAC Oppose Rule 2004 Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    **M.**  April-October 2010:  Tutor, Bergstein, and LAAC Change the
Allegations about What CT1 Owns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    **N.**   October 1-6, 2010:  LAAC Files the Motion; and Court Rules that Orders
for Relief Are to be Entered in the *CT1* and *ThinkFilm* Cases . . . . . . . . . . . 13

IV.  **THE COURT HAS BROAD DISCRETION TO DENY THE MOTION** . . . . . . 14

V.   **LAAC SUBMITTED NO EVIDENCE IN SUPPORT OF THE MOTION** . . . . 14

VI.  **THE 10/24/08 SALE AGREEMENT AND THE 3/12/09 NOTE PURCHASE
AGREEMENT DO NOT, ON THIS RECORD, WITHSTAND THE
SCRUTINY THAT APPLIES TO INSIDER TRANSACTIONS** . . . . . . . . . . . . 16

F:\CLIENTS\Thinkfilm\Pleadings\LAAC Opp 10-12-10.Thinkfilm.wpd

# TABLE OF CONTENTS (cont'd)

**Page**

A.    The 10/24/08 Sale Agreement and the 3/12/09 Note Purchase Agreement
      Were Insider Transactions between the Debtors and Bergstein Entities . . . . .  16

B.    Strict Scrutiny Applies to the Insider Transactions Among the Debtors and
      the Bergstein-Controlled Entities, LAAC and TFC/Orange . . . . . . . . . . . . . .  17

C.    The 10/24/08 Sale Agreement and the 3/12/09 Note Purchase Agreement
      Fail the Strict Scrutiny Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

D.    LAAC is Mistaken in Alleging that the Court is Powerless to Consider
      the Validity of the Underlying Insider Transactions . . . . . . . . . . . . . . . . . . .  19

VII.  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

F:\CLIENTS\Thinkfilm\Pleadings\LAAC Opp 10-12-10.Thinkfilm.wpd

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*Brewer v. Erwin & Erwin, P.C. (In re Marquam Investment Corp.),*
        942 F.2d 1462 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

*In re Conejo Enters.,*
        96 F.3d 346 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Hubbel,*
        427 B.R. 789 (BAP 9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19, 20

*Pepper v. Litton,*
        308 U.S. 295 60 S.Ct. 238, 84 L.Ed. 281 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Whitesides v. Kilimnik (In re Stoumbos),*
        988 F.2d 949 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## <u>STATUTES</u>

11 U.S.C. § 101(B)(i)-(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

11 U.S.C. § 101(31)(B)-(C), (E)-(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11 U.S.C. § 362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

11 U.S.C. § 510(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed.R.Bankr.P. 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

F:\CLIENTS\Thinkfilm\Pleadings\LAAC Opp 10-12-10.Thinkfilm.wpd

## OPPOSITION TO LAAC'S STAY RELIEF MOTION

I.   **INTRODUCTION**

This opposition responds to the stay relief motion ("Motion") filed on Friday evening, October 1, 2010, by Library Asset Acquisition Co., Ltd. ("LAAC"). The Motion should be denied. It has no supporting evidence, does not satisfy the scrutiny applicable to insider transactions, and is undermined by admissions made (and documents signed) by David R. Bergstein ("Bergstein"), who is an insider of both LAAC and all of the five debtors ("Debtors"), including ThinkFilm, LLC ("ThinkFilm") and CT-1 Holdings, LLC ("CT1").

This opposition is submitted by Ronald L. Durkin in his capacity as trustee ("Trustee") of the bankruptcy estates of the Debtors in five bankruptcy cases (the "Bankruptcy Cases"). The names of the Involuntary Cases are: (1) *In re R2D2, LLC*, Bk. Case No. 2:10-bk-19924-BR; (2) *In re ThinkFilm, LLC*, Bk. No. 2:10-19912-BR; (3) *In re CT-1 Holdings, LLC*, Bk. No. 2:10-bk-19927-BR; (4) *In re CapCo Group, LLC*, Bk. No. 2:10-bk-19929-BR; and (5) *In re Capitol Films Development, LLC*, Bk. No. 2:10-bk-19938-BR.

Mr. Durkin is or shortly will be the permanent chapter 11 trustee in the *ThinkFilm* and *Capitol Films Development* cases. Mr. Durkin is the interim chapter 11 trustee in the *R2D2*, *CT1*, and *CapCo* cases. LAAC filed identical versions of the Motion in the *ThinkFilm* and *CT1* cases. The Trustee submits identical sets of this opposition in those two cases.

Concurrently, the Trustee submits a request to take judicial notice (the "Request") and evidentiary objections ("Evid. Objs.") to the unsworn declaration of Evan Warshawsky ("Warshawsky").

LAAC announces in its Motion that it only seeks relief from the automatic stay as to certain assets and that it intends to foreclose on other assets held by affiliates. The Trustee has not received any notice of any such foreclosure sale. Bergstein has elsewhere acknowledged defects in the liens LAAC now seeks to enforce. The Trustee reserves the right to seek sanctions against LAAC and its counsel for any act to foreclose on any assets without relief from the stay. This assertion applies to assets that LAAC claims to have acquired pursuant to the self-dealing insider transactions described in this opposition.

1.

## II.    **SUMMARY**

**First:**  The Motion has no supporting evidence.  The Motion stands or falls on the declaration of Warshawsky, LAAC's sole declarant.  His declaration is not under penalty of perjury, as LAAC and its counsel surely knew (or ought to have known) if they read their own papers before abusively requiring the Trustee to prepare this opposition.

LAAC hired Warshawsky less than 30 days before he signed his declaration, in a ploy to find someone, anyone, to tell a story about facts fully known only to the insider participants, namely Bergstein and Ronald N. Tutor ("Tutor").  Having filed and served the Motion on a Friday evening solely to get relief from stay before the Trustee gains access to ThinkFilm's files, LAAC and its principals cannot now sandbag the Trustee with reply briefs that present matters that should have, but were not, submitted with the Motion.

**Second:**  The Motion impermissibly lacks the candor required to satisfy the strict scrutiny that applies to determining the legitimacy of insider transactions.  The Motion does not candidly state who owned and controlled LAAC and TFC Library LLC (formerly known as Orange Holdings) ("TFC/Orange") when they obtained liens against and title to assets of the Debtors.  Bergstein was on both sides of the transactions that LAAC now seeks to enforce without the scrutiny applicable to insider transactions. The Motion does not disclose prior admissions by Bergstein and Tutor concerning the invalidity and defects in the liens that LAAC seeks to enforce.

Here are four key facts that LAAC does not candidly address:

>    **(a)**    At the same time that Bergstein was a manager of the Debtors, he was also a director/manager of movant LAAC, the entity that purportedly acquired liens on the assets of ThinkFilm, CT1, and their affiliates.  [*See* Motion, Exs. 10 and 15 (signature pages).]

>    **(b)**    At the same time that Bergstein was a manager of the Debtors, he was a director/manager of TFC/Orange, the entity that purportedly acquired the Debtors' assets and has purportedly acknowledged the validity of LAAC's liens. [*See* Motion, Ex.12, p. 27.]

**(c)**    During the relevant transactions among LAAC, TFC/Orange, and the Debtors, insiders Bergstein and Tutor contemporaneously alleged that the purported loans and liens acquired by LAAC were defective and subject to counterclaims. [*See* Motion, Ex. 6, pp. 1-2, 9.] Now, in state court litigation that LAAC asks this Court to ignore, LAAC seeks to rescind for illegality the very same loans that LAAC seeks to enforce against the Debtors. [Request, Ex. 10, p. 00137, ¶ A (prayer of LAAC's first amended complaint).]

**(d)**    LAAC is a wholly-owned subsidiary of R2D2 (through CT1), and both R2D2 and CT1 are entities lawfully and rightfully controlled by the Trustee. [*See* Request, Ex. 7, p. 00060 (3/25/10 Bergstein Decl., ¶ 2).]

**Third:** The Motion disregards applicable law. It is a misleading half-truth for LAAC and its counsel to assert that the Court lacks the power to adjudicate counterclaims, including avoidance and/or equitable subordination claims, in the context of a summary stay relief proceeding. LAAC disregards that, although the Court cannot adjudicate such claims in a stay relief proceeding, the Court can consider such claims and issues as a reason to keep the stay in effect. Otherwise, any purportedly secured creditor, no matter how overreaching and fraudulent its claim, could obtain stay relief to foreclose. It is bizarre that LAAC seeks to rescind for illegality in state court litigation the same loans that LAAC insists in this Court are indisputably valid and not subject to challenge. [Request, Ex. 10, p. 00137 (LAAC's first amended complaint).] Moreover, as stated, both Bergstein and Tutor have elsewhere stated that the subject loans were defective, unenforceable, and subject to counterclaims. [*See* Motion, Ex. 6, pp. 1-2, 9.]

**Fourth:** The Motion's lack of evidence and candor require the denial of the Motion. The Motion seeks to enforce insider transactions between LAAC and the Debtors. Under Ninth Circuit law, the insiders' dealings with the Debtors must be subjected to strict scrutiny. LAAC's dealings cannot withstand any degree of scrutiny. LAAC provides no evidence, and the manipulators behind LAAC, including Bergstein, fail to submit any declaration. The relevant transactions are LAAC's purchase of purportedly secured claims against the Debtors

3.

1   and the purchase by TFC/Orange from ThinkFilm and its affiliates of hundreds of their

2   motion picture assets. Bergstein controlled the parties on both sides of those two transactions.

3   He controlled and/or managed LAAC, TFC/Orange, and the Debtors. The Motion does not

4   candidly disclose these damning facts. The insiders transaction that underlie the Motion do

5   not withstand scrutiny by reason of the lack of information provided by LAAC, its counsel,

6   Bergstein, and Tutor. They are not permitted to correct their omissions by submitting a reply

7   brief that contains information that should have been included with the Motion.

8       **Fifth:** The Motion was filed in bad faith. The supporting declaration from

9   Warshawsky was unsworn. The Motion did not disclose that LAAC and its counsel were

10  putting Mr. Durkin to the time and expense of fighting with his wholly-owned subsidiary.

11  The Motion has no declaration from the insiders who are behind LAAC, namely Bergstein

12  and Tutor. The Motion was filed on October 1, 2010, only five days before the October 6th

13  hearing at which summary judgments were granted, entitling the Trustee to obtain access to

14  attorney-client files of ThinkFilm and Capitol Films Development.

15      **Sixth:** The Motion is frivolous. It was a desperate and unfounded effort to deprive the

16  Trustee of time to access and review previously withheld files. The Trustee reserves his right

17  to seek sanctions against LAAC and its management and counsel if LAAC has the audacity to

18  seek to foreclose on the fruits of its insider dealings with the Debtors. The Court's denial of

19  LAAC's Motion should make it clear that the Court does not accept LAAC's unsupported

20  assertion that LAAC has a right to unilaterally foreclose, without stay relief, on the assets and

21  liens it procured through the insider dealings that occurred between LAAC, TFC/Orange, and

22  the Debtors while under the common control of Bergstein.

23  III.    **FACTS:  THE MOTION SEEKS TO ENFORCE TWO INSIDER DEALS**

24          **THAT BERGSTEIN ORCHESTRATED FROM BOTH SIDES**

25      Underlying the Motion are two related insider transactions, with Bergstein on both

26  sides of the deals. In one transaction, Bergstein managed ThinkFilm and its affiliates as

27  sellers while also managing TFC/Orange as the buyer. [Motion, Ex. 12 (10/24/08 sale

28  agreement).] In the other transaction, Bergstein managed ThinkFilm, CT1, and their affiliates

1   as borrowers while also representing LAAC in purchasing claims and liens against those same

2   borrowers. [*Id.*, Ex. 6 (3/12/09 note purchase agreement).] The Motion obfuscates these facts

3   by omitting any declaration from Bergstein and any details concerning who controlled and

4   represented whom during the subject transactions.

5      **A.    Bergstein, R2D2, CT1, ThinkFilm, LAAC, and Pangea**

6          Bergstein is an owner and manager of R2D2. [Request, Ex. 5, p. 00032 (3/23/10

7   Bergstein Decl., ¶ 1).] R2D2 owns CT1. [*Id.*, ¶ 5.] CT1 owns, through other entities,

8   ThinkFilm. [*Id.*, ¶ 6.] R2D2 and its subsidiaries are part of a group of entities engaged in the

9   film distribution and financing business. [*Id.*, ¶¶ 2-3.]

10         In a declaration filed on March 23, 2010, Bergstein failed to tell this Court that R2D2

11  owns LAAC and Pangea Media Group, LLC. [*See* Request, Ex.5 (3/23/10 Bergstein Decl.,

12  ¶¶ 1-8).] However, in a declaration filed two days later in the Los Angeles Superior Court,

13  Bergstein admitted that R2D2 directly or indirectly owns both Pangea and LAAC. [*See*

14  Request, Ex. 7, p. 00060 (3/25/10 Bergstein Decl., ¶ 2).]

15     **B.    April 16, 2008:  Nancy Willen Sues ThinkFilm and CT1**

16         On or about April 16, 2008, Nancy Willen ("Willen") filed a complaint against

17  ThinkFilm and/or CT1 in the Los Angeles Superior Court.  By April 13, 2009, as described

18  below, Willen had obtained a judgment and post-judgment restraining order against both

19  ThinkFilm and CT1. [Request, Ex. 2 (4/13/09 Willen order).]

20     **C.    Bergstein Was on Both Sides of the 10/24/08 Sale Agreement**

21         Purportedly in late October 2008, while Willen sued ThinkFilm and CT1 in state court,

22  Bergstein engineered a sale of the assets of ThinkFilm and CT1 to another entity controlled by

23  Bergstein, namely Orange Holdings LLC (i.e., "TFC/Orange"), which later changed its name

24  to TFC Library, LLC.

25         Exhibit 12 to the Motion is the purported agreement (the "10/24/08 Sale Agreement")

26  whereby ThinkFilm and affiliates purported to sell hundreds of motion picture assets to

27  TFC/Orange.  This sale occurred less than two years before ThinkFilm's bankruptcy.  The

28  signature blocks on this document are striking:

1   The 10/24/08 Sale Agreement contains signatures of the sellers (ThinkFilm and certain

2   affiliates) and the buyer (TFC/Orange).  The signature pages do not reflect an arm's length

3   transaction.  Instead, the signature pages show that Bergstein signed the 10/24/08 Sale

4   Agreement for all of the parties, both the sellers and the buyer.  Bergstein signed for

5   ThinkFilm and its affiliates as sellers and for Orange/TFC as the buyer of the assets of

6   ThinkFilm and its affiliates.  [Motion, Ex.12, p. 27.]

7   How did Bergstein negotiate with himself to get the best possible deal for both the

8   sellers and buyer under the 10/24/08 Sale Agreement?  The Motion does not answer this

9   question.  The Motion does not include any declaration from Bergstein about his dual roles in

10   the 10/24/08 Sale Agreement.

11   The 10/24/08 Sale Agreement has other provisions raising questions about whether the

12   transaction was at arm's length.  Paragraph 6.4 of the agreement purports to select Delaware

13   law as a basis for excusing compliance with California's bulk sales law.  Paragraph 2.1(d) of

14   the agreement specifies that the sellers (including ThinkFilm) are excused from identifying

15   which of them owns the assets being sold; and paragraph 2.1(e) of the agreement purports to

16   obligate non-signatory affiliates of ThinkFilm to join in the sale.  Paragraph 6.5 of the

17   agreement requires that the parties keep it confidential.  [*See* Motion, Ex. 12 (10/24/08 Sale

18   Agreement, pp. 5, 18).]  The provisions bespeak entities that are unable or unwilling to

19   specify who owns what, and who do not wish their creditors to know that assets are being

20   transferred in bulk to a related entity controlled by an insider.

21   **D.    Bergstein Was on Both Sides of the 3/12/09 Claim Purchase Agreement**

22   The 3/12/09 Claim Purchase Agreement is also an insider transaction with every

23   indication that Bergstein was on both sides of the deal, therefore necessarily unable to

24   negotiate at arm's length.  Once again, the Motion does not candidly disclose the self-dealing

25   and insider aspects of this transaction, which underlies LAAC's Motion.

26   Exhibit 15 to the Motion is signed by Bergstein as "Director" of LAAC.  [Motion,

27   Ex. 15, p. 2.]  In state court litigation, Bergstein has admitted that, while he owned and

28   managed R2D2, it owned (through CT1) LAAC and other companies, including Pangea and

6.

1  Library Rights Company, Ltd. [Request, Ex. 7, p. 00060 (3/25/10 Bergstein Decl., ¶ 2).]

2  The brief filed by LAAC in support of the Motion does not disclose that Bergstein was a

3  director of LAAC at the time of the relevant transactions.  Any attempt by LAAC to say that it

4  was candid by alleging that somewhere it disclosed who controlled LAAC and its affiliates

5  should be rejected.  Candor does not mean that the Court must scour the record to discover the

6  true facts.

7       Exhibit 6 to the Motion is the purported agreement (i.e., the "3/12/09 Note Purchase

8  Agreement") whereby LAAC purported to purchase claims against the Debtors, including

9  CT1 and ThinkFilm.  The agreement is dated as of March 12, 2009.  The subject matter of the

10  agreement is the purchase and sale of promissory notes from and liens against ThinkFilm,

11  CT1 and their affiliates.  [*See* Motion, Ex, 6, pp. 1-2, 9.]  This transaction occurred less than

12  two years before the involuntary bankruptcy filing of CT1 and ThinkFilm.

13       The 3/12/09 Note Purchase Agreement reflects that it was a tripartite agreement,

14  involving (1) sellers of purportedly secured claims against the Debtors, (2) the Debtors, and

15  (3) LAAC as the purchaser of the purportedly secured claims against the Debtors.  The

16  Motion does not candidly say that Bergstein controlled and managed both LAAC and the

17  Debtors in connection with the 3/12/09 Note Purchase Agreement.

18  **The Note Sellers:**  The 3/12/09 Note Purchase Agreement identifies the "Sellers" of

19  the notes and liens as three companies (the "Zwirn Group"): (1) D.B. Zwirn Special

20  Opportunities Fund, L.P. ("Zwirn"), (2) Bernard National Loan Investors Ltd. ("Bernard")

21  and Bernard Global Loan Investors Ltd., and (3) Hemlock (LUX) S.A.R.L. ("Hemlock").

22  [*See* Motion., Ex, 6, p. 1.]

23       The Motion does not candidly say so, but LAAC subsequently sued the Zwirn Group

24  for fraud, illegality, and racketeering in connection with the loans that the Zwirn Group made

25  to the Debtors and subsequently sold to LAAC.  In an amended complaint, LAAC now seeks

26  to rescind its purchase of those loans, even while LAAC seeks to enlist this Court in enforcing

27  those loans against the Debtors.  [Request, Ex. 10, p. 00137, ¶ A (LAAC's first amended

28  / / /

7.

1    complaint).] LAAC may dispute its lack of candor on this point, but LAAC's failure to attach

2    those complaints to its Motion hardly suggests a desire by LAAC to make full disclosure.

3        **The Bergstein-Managed Debtors under the Notes:** Pages one and two of the

4    3/12/09 Note Purchase Agreement reflect that the purported debtors under the Zwirn Group's

5    notes and liens (which LAAC was purchasing) were the Debtors, including CT1 and

6    ThinkFilm. Bergstein acted on behalf of the Debtors, including CT1 and ThinkFilm, in

7    signing the agreement. The signature pages of the agreement reflect that Bergstein signed it

8    on behalf of CT1, ThinkFilm, and many other entities designated as "Borrowers." [*See*

9    Motion, Ex, 6 (signed signature block for ThinkFilm and CT1).]

10        **The Bergstein-Managed Buyer of the Notes against Debtors:** The 3/12/09 Note

11    Purchase Agreement identifies LAAC as the "Purchaser" from the Zwirn Group of the notes

12    and liens, which are claims against ThinkFilm, CT1, and various of their affiliates. Page 14

13    of the agreement states that all notices to LAAC are to be sent to Bergstein, and page 21 of

14    the agreement reflects that Susan Tregub, Bergstein's long-time lawyer, was the signatory for

15    LAAC. [*See* Motion, Ex, 6, pp. 14, 21.] In separate state court litigation, Bergstein has

16    disclosed that Tregub was his lawyer and held a power of attorney from Bergstein. [Request,

17    Ex. 7, p. 00061 (3/25/10 Bergstein Decl., ¶¶ 3-5).] Page 2 of Exhibit 15 to the Motion

18    reflects that Bergstein is a director of LAAC.

19        **The Bergstein-Tutor Guarantors of the Notes:** While Bergstein acted on behalf of

20    the Debtors (as borrowers) and LAAC (as the purchaser of purported claims against the

21    Debtors), Bergstein had yet another role in the 3/12/09 Note Purchase Agreement. Page two

22    of the agreement states that Bergstein and Tutor were guarantors of the purchased obligations,

23    and the signature block of the agreement includes signatures of Bergstein and Tutor as

24    guarantors. [*See* Motion, Ex, 6 (signed signature block for ThinkFilm and CT1).]

25        **Bergstein and Tutor's Admissions that the Notes are Invalid, Defective, and**

26    **Subject to Counterclaims:** The 3/12/09 Note Purchase Agreement contains admissions by

27    Bergstein and Tutor about the invalidity of the secured claims that LAAC now seeks to

28    enforce against the Debtors and their purportedly separate affiliates. Page 9 of the agreement

8.

1    recites that Bergstein, Tutor, and the Debtors allege that the purchased claims are invalid,

2    defective, and subject to counterclaims.  Section 6.4 at page 9 states in relevant part:

3        . . . . The Purchasers [i.e., LAAC and its designee] hereby
        acknowledge and accept the disclaimers of the Sellers [i.e., the
        Zwirn Group] contained in this **Section 6.4**.  Without limiting the
4        foregoing, the Purchaser acknowledges that the Borrower and the
        Guarantors have asserted invalidity, defect and other
5        counterclaims in connection with the Loan Agreements, the
        Collateral Security Documents, the Personal Guaranties and the
6        Corporate Guaranties. . . .  [Motion, Ex. 6, p. 9 (emphasis added).]

7

8        The above-quoted clause unmistakably says that LAAC acknowledges that Bergstein

9    and Tutor (i.e., the Guarantors) and CT1 and ThinkFilm (i.e., the Borrowers) asserted that the

10   notes and liens sold to LAAC were invalid, defective, and subject to counterclaims.  These are

11   the same notes and liens that LAAC asks this Court to help enforce by lifting the stay.  The

12   Motion chooses not to candidly disclose that Bergstein had previously asserted that the

13   obligations acquired by LAAC were defective, unenforceable, and subject to counterclaims.

14       **E.    April 13, 2009:  Willen Obtains a TRO against ThinkFilm and CT1**

15       On April 13, 2009, the Los Angeles Superior Court entered a restraining order against

16   both ThinkFilm and CT1 to assist Nancy Willen in attempting to collect a judgment.

17   [Request, Ex. 2 (4/13/09 Willen order).]

18       **F.    June 17, 2009:  Allied Obtains $4 Million Judgment against ThinkFilm**

19       On June 17, 2009, in the Los Angeles Superior Court, Allied Advertising Limited

20   Partnership obtained a judgment for $4,232,658 against ThinkFilm.  [Request, Ex. 3 (6/17/09

21   Allied judgment).]

22       **G.    The July 20, 2009 Assumption Agreement Contains a Release**

23       Prior to July 2009, as described above, Bergstein and Tutor admitted that the notes and

24   liens purchased by LAAC were defective, invalid, and subject to counterclaims.  On or about

25   July 20, 2009, LAAC made the enforcement of the notes and liens even more problematic by

26   signing a document that purported to give ThinkFilm a release from LAAC.

27       Exhibit 15 to the Motion contains a purported assumption agreement between

28   ThinkFilm and certain affiliates, on the one hand, and, on the other, LAAC.  This document,

9.

1    which is dated as of July 20, 2009, contains a release by LAAC of all recourse and remedies

2    against ThinkFilm. After defining ThinkFilm as an "Assignor," the document states:

> 3    LAAC hereby consents and agrees that, on and after the
> date hereof, LAAC shall have no recourse or remedies against any
> 4    of the Assignors under the Assignor Loan Agreement or any Loan
> Document, and Lender shall look solely to Purchaser and the
> 5    collateral which has been, or may be, pledged to secure the loans
> under the Assignor Loan Agreement and Loan Documents.
> 6    [Motion, Ex. 15, p. 1.]

7     Despite this release, the Motion is predicated on LAAC's purported rights and

8    remedies against ThinkFilm under the Zwirn Group's loan documents that were purportedly

9    sold to LAAC under the 3/12/09 Note Purchase Agreement. The attorney-client files of

10    ThinkFilm likely shed light on how and why ThinkFilm obtained this release, and whether

11    this release conflicts with the relief sought in the Motion. If so, that would help explain (but

12    would not justify) the unseemly haste that LAAC and its counsel used in filing the Motion

13    only days before the Trustee became entitled to turnover of ThinkFilm's attorney-client files.

14    **H.**    **March 17-23, 2010:  Creditors File Involuntary Petitions against the**

15      **Debtors; and Bergstein Files Declaration in Bankruptcy Court**

16     On March 17, 2010, creditors filed involuntary bankruptcy petitions against the

17    Debtors. At about the same time, the creditors filed motions for the appointment of an interim

18    trustee. [Request, ¶ 6.]

19     On or about March 23, 2010, in the Involuntary Cases, Bergstein filed declarations

20    opposing the appointment of an interim trustee. Bergstein described the purported structure

21    of the Debtors. Bergstein's declaration mentioned Pangea and LAAC, but evasively failed to

22    state who owned those companies. [Request, Ex. 5 (3/23/10 Bergstein Decl., ¶¶ 5-8, 24).]

23    **I.**    **March 25, 2010:  Bergstein, Tutor, and LAAC File State Court Complaint**

24      **against Tregub; and Bergstein Files a Declaration**

25     On or about March 25, 2010, Bergstein filed a complaint against Tregub in the Los

26    Angeles Superior Court. Bergstein's co-plaintiffs included Tutor, R2D2, CT1, ThinkFilm,

27    and LAAC, among others. Bergstein and his co-plaintiffs alleged causes of action against

28    Tregub for malpractice and breach of fiduciary duty. The lawsuit was entitled *Tutor et al.*

1 | *v. Tregub*, LASC No. BC434558 (the "Tregub Action"). [*See* Request, Ex. 6 (complaint

2 | against Tregub).]

3 | Also on March 25th, in the Tregub Lawsuit, Bergstein filed a declaration in support

4 | of a TRO against Tregub. In that declaration, Bergstein stated that he owned and managed

5 | R2D2; he further stated that R2D2, through CT1, indirectly owned LAAC, Pangea, and many

6 | other companies, including Library Rights Company, Ltd. [Request, Ex. 7 (3/25/10 Bergstein

7 | Decl., ¶ 2).] Paragraph 2 of Bergstein's March 25, 2010 declaration stated:

8 | I am the manager of Plaintiff R2D2 LLC ("R2D2").
R2D2, in turn, owns Plaintiff CT1 Holdings, LLC ("CT1"), which

9 | is the direct or indirect holding company for certain entities,
including Plaintiffs Capco Group LLC ("Capco"), Capitol Films

10 | Development LLC ("Capitol Films Development")[,] ThinkFilm
LLC ("ThinkFIlm"), TF Canadian Library Holdings, LLC ("TFC

11 | Library"), FPLAC LLC ("FPLAC"), Zoopraxis Film Assets, LLC
("Zoopraxis"), CF Acquisitions, LLC ("CF Acquisitions"),

12 | **Library Asset Acquisition Company, Ltd. ("LAAC")**, Library
Rights Company, Ltd. ("Library Rights") . . . .

13 |

14 | [Request, Ex. 7, p. 00060 (3/25/10 Bergstein Decl., ¶ 2) (bolding added).]

15 | **J.    March 31, 2010:  Bankruptcy Court Orders Appointment of Trustee**

16 | On or about March 30, 2010, in the Bankruptcy Cases, the Bankruptcy Court entered

17 | orders directing the appointment of an interim chapter 11 trustee in each of the cases.

18 | [Request, ¶ 12.]

19 | **K.    March 31, 2010:  LAAC Tells Yet Another Ownership Story to the**

20 | **Federal District Court**

21 | As described above, on March 23, 2010, in the Bankruptcy Cases, Bergstein filed a

22 | declaration that mentioned LAAC but omitted to state who owned it. On March 25, 2010, in

23 | the Tregub Lawsuit in the Los Angeles Superior Court, Bergstein filed a declaration stating

24 | that LAAC was a subsidiary of R2D2 and CT1.

25 | On March 31, 2010, yet another scenario concerning LAAC ownership structure was

26 | presented by a Bergstein affiliate (LAAC) to yet another court:  On March 31st, represented

27 | by one the same counsel who was counsel of record in Bergstein's lawsuit against Tregub,

28 | LAAC filed a "Corporate Disclosure Statement" in *Aramid Entertainment Fund Ltd. v.*

1   *Library Asset Acquisition Company, Ltd.*, U.S.D.C. Case No. 2:10-CV-02258-JHN.

2   According to this statement, Tutor owned 50% of LAAC and a company named Veritum Ltd.

3   owned the other 50%. [Request, Ex. 8, pp. 00067-68 (corporate disclosure statement).]

4   Although LAAC did not say so, Bergstein is the director of Veritum. [Request, Ex. 1

5   (Veritum certificate of incorporation).]

6          **L.**    **April-August 2010:  Appointment of Trustee; and Bergstein, Tutor,**

7                **Pangea, and LAAC Oppose the Trustee's Rule 2004 Motions**

8       By May 2010, in the Bankruptcy Cases, the Trustee sought Rule 2004 examinations of

9   Bergstein, Tutor, and Frymi Biedak (Bergstein's assistant), including examinations of one or

10   more of these individuals as custodians of records of LAAC and/or Pangea.  During May-July

11   2010, those witnesses opposed the Trustee's Rule 2004 motions.

12       Among other things, on July 6, 2010, on behalf of Pangea, the law firm of Buchalter

13   Nemer filed objections and a request for a protective order to limit the Trustee's investigation.

14   On July 13th, on behalf of Tutor and LAAC, Buchalter Nemer filed a motion for a protective

15   order to further limit the Trustee's investigation. [Request, ¶ 16 and Exs. 11-12

16   (Pangea/LAAC objections).

17       At a hearing on July 20, 2010, in the Bankruptcy Cases, the Court overruled

18   substantially all of the objections of Bergstein, Tutor, Pangea, and LAAC to the Trustee's

19   Rule 2004 motions. [Request, ¶ 16.]

20       Subsequently, at a hearing on August 25, 2010, in the Bankruptcy Cases, the Court

21   overruled Pangea's motion for a protective order to prevent the Trustee from recovering an

22   image that the Trustee had made of an NAS computer server. [Request, ¶ 16.]

23          **M.**    **April-October 2010:  Tutor, Bergstein, and LAAC Change their**

24                **Admissions about What Assets Belong to CT1**

25       During April 2010, in the Los Angeles Superior Court, Tutor, Bergstein, and LAAC

26   filed a complaint against the Zwirn Group, alleging that its loans to the Debtors (and personal

27   guarantees that Tutor and Bergstein signed) were usurious and unenforceable.  In paragraph

28   12 of the initial complaint, the plaintiffs alleged that numerous films were "in" the film library

1  of CT1 (which would make them property of CT1's bankruptcy estate). [Request, Ex. 9, p.

2  00074, ¶ 12 (Tutor/Bergstein/LAAC initial complaint).]

3         Subsequently, after the Trustee filed briefs in the Bankruptcy Cases noting that

4  paragraph 12 of the complaint alleged that hundreds of films were "in" CT1's film library,

5  Tutor, Bergstein, and LAAC amended their complaint against the Zwirn Group. Now, the

6  allegations that numerous films were "in" CT1's film library were deleted. As revised, the

7  complaint alleged that the films were held by affiliates of CT1. [Request, Ex. 10, pp. 00110-

8  11, ¶ 15 (LAAC's first amended complaint).]  In other words, during the Bankruptcy Cases,

9  Tutor, Bergstein, and LAAC removed hundreds of films from CT1's film library by a stroke

10 of their lawyer's pen.  [Request, Ex. 10, p. 00074, ¶ 12 (LAAC's initial complaint).]

11        LAAC's first amended complaint against the Zwirn Group alleges that LAAC seeks to

12 rescind its acquisition of the notes and liens acquired pursuant to the 3/12/09 Note Purchase

13 Agreement and related documents.  LAAC (and Tutor and Bergstein) allege that the notes and

14 liens were part of multiple acts of usury, fraud and racketeering by the Zwirn Group.

15 [Request, Ex. 10 (LAAC's first amended complaint).]  The Trustee's concurrently filed

16 Request includes copies of LAAC's initial and amended complaints against the Zwirn Group.

17 LAAC chose not to provide those documents in its Motion.  LAAC alleges that it has filed yet

18 another complaint against the Zwirn Group.  LAAC treats this Court on a "need to know"

19 basis, and LAAC omitted that document from the Motion.

20     **N.    October 1-6, 2010:  LAAC Files the Motion; and the Court Rules that**

21           **Orders for Relief Are to be Entered in the *CT1* and *ThinkFilm* Cases**

22        On the evening of Friday, October 1, 2010, LAAC filed the Motion for relief from

23 stay.  The only declaration filed in support of the Motion was an unsworn declaration from

24 Warshawsky.

25        Warshawsky's declaration disclosed that LAAC hired him not more than 30 days prior

26 to his signing the declaration.  While Warshawsky provided an incompetent, unsworn

27 declaration in support of the Motion, both Tutor and Bergstein failed to submit declarations.

28 ///

F:\CLIENTS\Thinkfilm\Pleadings\LAAC Opp 10-12-10.Thinkfilm.wpd

1       At the time of the Motion, the petitioning creditors had summary judgment motions

2   pending for entry of orders for relief in the *ThinkFilm* and *Capitol Films* cases.  Those

3   summary judgment motions were set for hearing on October 6, 2010.  The Court previously

4   ruled that the Trustee would be entitled to control the attorney-client privileges of the Debtors

5   once the Trustee became the permanent trustee, following the entry of an order for relief.

6       It was essential for LAAC to file its Motion to deprive the Trustee of any significant

7   time to obtain and review previously withheld files.  By reason of the timing of the Motion,

8   the Trustee had only five business days (i.e., since October 6th) to demand, obtain and review

9   all withheld attorney-client privileged files of ThinkFilm and Capitol Films.

10  **IV.**    **THE COURT HAS BROAD DISCRETION TO DENY THE MOTION**

11      The Court has broad discretion to grant or deny relief from the automatic stay.  *In re*

12  *Hubbel*, 427 B.R. 789, 792 (BAP 9th Cir. 2010) ("The decision whether to grant or deny

13  relief from the automatic stay is committed to the sound discretion of the bankruptcy court,

14  and we review such discretion under the abuse of discretion standard.") (quoting *In re Conejo*

15  *Enters.*, 96 F.3d 346, 351 (9th Cir. 1996)).

16  **V.**    **LAAC SUBMITTED NO EVIDENCE IN SUPPORT OF THE MOTION**

17      The Motion is not supported by any admissible evidence.  The purported evidentiary

18  support for the Motion consists of:  (1) a stack of exhibits that are purportedly authenticated

19  by the declaration of Warshawsky, and (2) Warshawsky's declaration.

20      Warshawsky's declaration is not under oath.  Where an oath should appear, his

21  declaration ends with this paragraph: "This declaration was made on October 1, 2010 in the

22  County of Los Angeles, State of California." [Warshawsky Decl., p. 16:4-5.]  Warshawsky's

23  declaration should be struck in its entirety.  The Motion never should have been filed.

24      The lack of an oath merely highlights the sham nature of Mr. Warshawsky's

25  declaration.  It is replete with other legal deficiencies, and it is disconcerting that LAAC

26  hired Warshawsky in September 2010 (Warshawsky Decl., ¶ 5), not more than thirty days

27  before he signed the sole declaration on which LAAC relies in its Motion.

28  ///

F:\CLIENTS\Thinkfilm\Pleadings\LAAC Opp 10-12-10.Thinkfilm.wpd

1    Here are additional flaws in Warshawsky's declaration:

2    **First:** Paragraph 1 states that Warshawsky's knowledge derives from looking at

3    LAAC's books and records. Without more, that does not show personal knowledge of

4    anything; anyone can look at unspecified books and records.

5    **Second:** Paragraphs 2-5 reflects that the time-span of Warshawsky's personal

6    involvement with LAAC and Bergstein's companies is December 2008 through 2010. But all

7    of the subject loans were made prior to that date. Despite the inadequate 2008-2010 time-

8    span of Warshawsky's personal involvement, ¶ 7 of Warshawsky's declaration purports to

9    describe events that occurred before December 2008. Although Warshawsky had no

10    involvement with Bergstein or LAAC prior to December 2008, Warshawsky attempts to

11    describe events that happened during 2007 (Warshawsky Decl., ¶¶ 9-10, 38), during March-

12    July 2008 (*id.*, ¶ 12), and at unspecified times that appear to be sometime between March

13    2007 and July 2008 (*id.*, ¶ 11).

14    **Third:** Warshawsky's declaration is littered with legal conclusions that are sham

15    efforts by a CPA to validate security interests about which his client is unwilling to provide

16    candid, qualified and admissible evidence. Warshawsky purports to be a CPA, not an

17    attorney with expertise in security interests, nor a copyright title searcher with expertise in

18    determining copyright titles and liens. (*See* Warshawsky Decl., ¶ 2.)

19    Warshawsky's purported CPA license (whatever its status) does not qualify him to

20    testify that the "security interests" LAAC seeks to enforce were "perfected" (Warshawsky

21    Decl., ¶ 14), or that "LAAC holds a first priority security interest" against Thinkfilm and CT1

22    (*id.*, ¶ 44). Nor does his purported CPA license qualify him to testify that "CT1 serves in a

23    fiduciary, sales agency capacity as to TFC . . . ." (*Id.*, ¶ 16.) Nor is he qualified to state his

24    opinion that a document means that a loan was "no longer cross-collateralized or integrated,"

25    or the effect of releasing guarantors from "*in personam* liability under the operative

26    ThinkFilm loan documents." (*Id.*, ¶ 24; *see also* ¶ 35.)

27    / / /

28    / / /

15.

1   **Fourth:** Warshawsky's declaration repeatedly seeks to restate and paraphrase the

2   contents of documents, when the documents (if properly authenticated) are the evidence of

3   their contents. (Warshawsky Decl., ¶¶ 17-18, 26, 46.)

4   **VI.   THE 10/24/08 SALE AGREEMENT AND THE 3/12/09 NOTE PURCHASE**

5   **AGREEMENT DO NOT, ON THIS RECORD, WITHSTAND THE SCRUTINY**

6   **THAT APPLIES TO INSIDER TRANSACTIONS**

7   **A.   The 10/24/08 Sale Agreement and the 3/12/09 Note Purchase Agreement**

8   **Were Insider Transactions between the Debtors and Bergstein Entities**

9   The Motion seeks relief from stay so that LAAC can enforce purported notes and

10  security interests that it allegedly acquired from the Zwirn Group and that are allegedly

11  secured by liens against assets of the Debtors and their transferees, TFC/Orange.

12  The Motion fails to meet the standard of scrutiny that applies to insider transactions,

13  and LAAC is mistaken in alleging that the Court is powerless to consider that Bergstein and

14  Tutor have themselves admitted and alleged that the notes and liens, which LAAC seeks to

15  enforce, are defective, invalid, and subject to counterclaims.

16  LAAC's purported claims and liens result from two insider transactions involving the

17  Debtors (which Bergstein controlled) and Bergstein-controlled affiliates. First, in the

18  10/24/08 Sale Agreement, the Debtors purportedly transferred their assets to TFC/Orange. In

19  that transaction, Bergstein signed for each and every entity, both sellers and buyer. Second,

20  the parties to the 3/12/09 Note Purchase Agreement were the Zwirn Group, the Debtors

21  (controlled by Bergstein), and LAAC (of which Bergstein was the Director), and Bergstein

22  and Tutor (as guarantors).

23  Bergstein was and is an insider of the Debtors. The term "insider" is statutorily

24  defined to include the director, officer, and person in control of a corporation, and a partner

25  and person in control of a partnership. The term "insider" also includes a "managing agent"

26  of the debtor and an "affiliate, or insider of an affiliate" as if such affiliate were the debtor.

27  *See* 11 U.S.C. § 101(31)(B)-(C), (E)-(F); *see also Brewer v. Erwin & Erwin, P.C. (In re*

28  *Marquam Investment Corp.),* 942 F.2d 1462, 1465 (9th Cir. 1991) ("*Marquam*") ("The term

16.

1   'insider' includes a director, officer, or person in control of a debtor corporation.") (citing

2   11 U.S.C. § 101(B)(i)-(iii)).

3          Thus, regardless of whether a limited liability company is classified as a corporation or

4   partnership, Bergstein was an insider: He was a managing agent, control person, and/or

5   director and officer of all the Debtors, LAAC, and TFC/Orange.   Further, Tutor submits no

6   declaration; and he has never disputed that he was a co-owner and member of R2D2, the top

7   tier company, through at least January 23, 2009, i.e., after the 10/24/08 Sale Agreement.

8          **B.    Strict Scrutiny Applies to the Insider Transactions Among the Debtors and**

9                  **the Bergstein-Controlled Entities, LAAC and TFC/Orange**

10         As insider transactions among the Debtors and the Bergstein-controlled and managed

11  entities, the 10/24/08 Sale Agreement and the 3/12/09 Note Purchase Agreement must be

12  subjected to strict scrutiny.

13         "The Supreme Court has instructed that an insider's dealings with a bankrupt

14  corporation must be 'subjected to rigorous scrutiny.'" *Marquam*, 942 F.2d at 1465 (quoting

15  *Pepper v. Litton*, 308 U.S. 295, 306, 60 S.Ct. 238, 84 L.Ed. 281 (1939) ("*Pepper*").)

16         "When the validity of an insider's contract with a corporation is at issue, the burden is

17  on the insider 'not only to prove the good faith of the transaction but also to prove its inherent

18  fairness from the viewpoint of the corporation and those interested in it." *Marquam*, 942 F.2d

19  at 1465 (quoting *Pepper*, 308 U.S. at 306).

20         Moreover, the insider's purportedly secured claim does not constitute an invulnerable

21  shield to insider misconduct, because 11 U.S.C. § 510(c) gives the Bankruptcy Court the

22  power to equitably subordinate an insider's claim. *See Whitesides v. Kilimnik (In re*

23  *Stoumbos)*, 988 F.2d 949, 960 (9th Cir. 1993) (upon review of evidence of self-dealing by an

24  insider who held a secured claim, the Ninth Circuit concluded:  "We reverse the bankruptcy

25  court's holding that Kilimnik's claim should not be equitably subordinated.")

26         "The essence of the test is whether or not under all the circumstances the transaction

27  carries the earmarks of an arm's length bargain.  If it does not, equity will set it aside."

28  *Marquam*, 942 F.2d at 1465 (quoting *Pepper*, 308 U.S. at 306-07).

C.    **The 10/24/08 Sale Agreement and the 3/12/09 Note Purchase**

**Agreement Fail the Strict Scrutiny Standard**

The agreements underlying LAAC's Motion do not withstand the strict scrutiny that applies to insider transactions under the standards articulated by Ninth Circuit in *Marquam*:

**First:**  The Motion has no supporting evidence because the Warshawsky declaration is unsworn and consists of inadmissible legal conclusions, document paraphrases, and descriptions of events that occurred prior to Warshawsky's involvement.  The underlying loans were purportedly made by the Zwirn Group during 2005-2007, long before Warshawsky's claimed involvement in December 2008.

**Second:**  The insiders themselves, including Bergstein and Tutor, submit no declaration in support of the purported fairness of the 10/24/08 Sale Agreement and the 3/12/09 Note Purchase Agreement, and it is impossible to conclude on the showing made in the Motion that Bergstein fairly conducted negotiations simultaneously on behalf of both the Debtors (as sellers and lienors) and their transferees and encumbrancers (LAAC and TFC/Orange).  Rather than candidly attempting to justify the conduct of those insiders, LAAC submits the unsworn declaration of someone it hired less than a month before he signed his conclusory declaration.

**Third:**  The Court need not speculate about whether the underlying notes and liens are unenforceable.  Bergstein and Tutor have alleged that the notes and liens are defective, invalid, and subject to counterclaims.  Bergstein and Tutor made these admissions in the 3/12/09 Note Purchase Agreement.  They and LAAC are currently seeking to rescind LAAC's acquisition of those notes and liens, and have alleged that the Zwirn Group committed fraud, usury and racketeering in connection with its purportedly secured claims.

**Fourth:**  The multiple complaints filed by Tutor, Bergstein, and LAAC against the Zwirn Group reflecting an inadequately explained shift of assets out of the bankruptcy estate of CT1 while this bankruptcy case was ongoing.  In April 2010, paragraph 12 of the initial complaint filed by Tutor, Bergstein and LAAC against the Zwirn Group alleged that numerous films were "in" the film library of CT1 (which would make those films property of

18.

1  the CT1 bankruptcy estate).  Subsequently, Tutor, Bergstein and LAAC filed an amended

2  complaint that attempted to alter this admission; in their first amended complaint, they now

3  alleged that the same films were, instead, held by affiliates of CT1, not by CT1.

4       **D.**    **LAAC is Mistaken in Alleging that the Court is Powerless to Consider**

5                  **the Validity of the Underlying Insider Transactions**

6         LAAC erroneously tells this Court that it must close its eyes and disregard any

7  evidence relating to the invalidity or voidability of LAAC's security interests.

8         On this shaky ground, LAAC submits no evidence from Tutor and Bergstein, who seek

9  to enforce the underlying transactions.  LAAC relies on the half-truth that the Court may not

10  adjudicate the validity of any counterclaims in a summary stay relief proceeding.

11         In fact, the Court has every right to consider issues relating to the possible voidability

12  of a security interest in deciding whether or not to lift the stay:

13          . . . . Case law, statutory language, and legislative history
all support the conclusion that a bankruptcy judge may consider
14   issues that go to the enforceability of a security interest.  While a
bankruptcy judge may not fully adjudicate such a question in a
15   relief from stay hearing, the judge may indeed determine that a
security interest is more likely than not unenforceable.  If such an
16   interest is unenforceable, then the bankruptcy judge is not
obligated to lift the stay.
17

18  *In re Hubbel*, 427 B.R. 789, 792-93 (BAP 9th Cir. 2010).  In other words, the Bankruptcy

19  Court has discretion to make a "provisional decision" that the automatic stay should remain in

20  effect when the evidence weighs in favor of the debtor.  *Id.*, at 793.  If the purportedly secured

21  creditor disputes the conclusion that its security interest is likely unenforceable, then the

22  creditor "is entitled to bring an adversary proceeding to determine, on the merits, whether a

23  particular legal argument undermines the validity of a security interest."  *Id.*

24       *Hubbell* affirmed a Bankruptcy Court's decision to keep the stay in effect by reason of

25  issues concerning whether the creditor's purported security interest had been rescinded under

26  the Truth in Lending Act (TILA).  In affirming the Bankruptcy Court's ruling, the BAP

27  rejected the argument that 11 U.S.C. § 362 destroyed the Bankruptcy Court's power to keep

28  the stay in effect by reason of TILA issues that could not be determined in a summary stay

1  relief proceeding. The BAP viewed the Bankruptcy Court's ruling "as agreeing to lift the stay

2  on the condition that the Appellant establish that the contract had not been rescinded under

3  TILA. Such a condition is entirely appropriate under this statutory scheme." *Hubbel*, 427

4  B.R. at 796. In other words, substantial issues about the voidability of, and/or defects in, a

5  purported secured creditor's claim can justify keeping the stay in effect unless and until either

6  the creditor or the trustee obtains a determination of the lien-validity issues in a full-blown

7  adversary proceeding, which contains the procedural protections that LAAC seeks to short-

8  circuit with its flimsy Motion.

9      Similarly, the Trustee's position is that LAAC should be required to establish that its

10  security interest and claims are not subject to avoidance or equitable subordination or other

11  challenge. As an insider, LAAC and its silent insiders, Tutor and Bergstein, bear the burden

12  of showing the inherent fairness of their dealings with ThinkFilm and CT1. Tutor and

13  Bergstein are silent. As a result, they do not and cannot carry their burden.

14  **VII.    CONCLUSION**

15      The Motion was frivolous. It should be denied. Bergstein and Tutor are silent. On

16  this record, which LAAC chose to submit (or omit), the applicable standard of scrutiny

17  compels the conclusion that LAAC's purportedly valid claims are likely voidable and/or

18  subject to equitable subordination.

19

20  Dated: October 12, 2010              Respectfully submitted,

21                                       GUMPORT | MASTAN

22

23                                       By:_____

24                                           Leonard L. Gumport
                                             Attorneys for Ronald L. Durkin,
25                                           Trustee

26

27

28

F:\CLIENTS\Thinkfilm\Pleadings\LAAC Opp 10-12-10.Thinkfilm.wpd

**\*   NOTE:** When using this form to indicate service of a proposed order, **DO NOT** LIST ANY PERSON OR ENTITY IN Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Gumport | Mastan, 550 S. Hope Street, Suite 825, Los Angeles, CA  90071

A true and correct copy of the foregoing document described as:  **OPPOSITION OF TRUSTEE TO MOTION OF LIBRARY ASSET ACQUISITION COMPANY LTD. FOR RELIEF FROM AUTOMATIC STAY; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(S) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On **October 12, 2010**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addresses indicated below:

_X_  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL (**indicate method for each person or entity served**):**
On **October 12, 2010** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.  Listing the judge here  constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

_X_  Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (**indicate method for each person or entity served**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows:.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

___  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| October 12, 2010 | **TRAVIS MICHAEL TERRY** | _(signature)_ |
| Date | Type name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009* **F 9013-3.1**

| In re: THINKFILM, LLC, | | CHAPTER: 11 |
| --- | --- | --- |
| | Alleged Debtor(s). | CASE NUMBER: 2:10-bk-19912-BR |

## ADDITIONAL SERVICE INFORMATION (if needed):

### TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

| | |
| --- | --- |
| David E Ahdoot | dahdoot@bushgottlieb.com, tjimines@bushgottlieb.com |
| Steven A Alpert | cacbefile@pricelawgroup.com |
| Todd M Arnold | tma@lnbrb.com |
| David M Bass | dbass@basslawla.com |
| Hartford O Brown | hbrown@klinedinstlaw.com |
| John P Byrne | John.Byrne@byrnelaw.biz |
| Sara Chenetz | chenetz@blankrome.com |
| Russell Clementson | russell.clementson@usdoj.gov |
| Joseph A Eisenberg | jae@jmbm.com |
| Jeffrey K Garfinkle | bkgroup@buchalter.com, jgarfinkle@buchalter.com |
| Philip A Gasteier | pag@lnbrb.com |
| Thomas M Geher | tmg@jmbm.com |
| Irving M Gross | img@lnbrb.com, angela@lnbrb.com |
| Leonard L Gumport | lgumport@gumportlaw.com |
| Michael C Heinrichs | mheinrichs@omm.com |
| Joseph A Kohanski | jkohanski@bushgottlieb.com, tjimines@bushgottlieb.com |
| Jeffrey A Krieger | jkrieger@ggfirm.com |
| Richard Levy | rlevy@pryorcashman.com |
| Richard Levy | rlevy@pryorcashman.com |
| Michael S Lurey | michael.lurey@lw.com, colleen.rico@lw.com |
| Michael L Martucci | Michael@radlegal.com |
| Peter J Mastan | pmastan@grlegal.com |
| Hayes F Michel | hmichel@bakerlaw.com |
| David L. Neale | dln@lnbrb.com |
| Timothy R Pomeroy | tpomeroy@klinedinstlaw.com |
| Vince Ravine | vince@vravinelaw.com, melissa@vravinelaw.com |
| Andrew S. Rotter | arotter@gumportlaw.com |
| Mark M Sharf | mark@sharflaw.com, msharf00@gmail.com |
| Adam M Starr | starra@gtlaw.com |
| United States Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |
| David Weinstein | david.weinstein@hro.com |
| Sharon Z Weiss | sharon.weiss@hro.com |
| Joseph M Welch | jwelch@buchalter.com |

### SERVED BY EXPRESS MAIL

**INTERIM TRUSTEE**
Ronald L. Durkin, CPA
Durkin Forensic Incorporated
601 S. Figueroa Street, Suite 2080
Los Angeles, CA 90017

**OFFICE OF THE U.S. TRUSTEE**
Russell Clementson, Esq.
Office of the U.S. Trustee
Ernst & Young Plaza
725 South Figueroa Street, 26th Floor
Los Angeles, CA 90017

### SERVED BY FEDERAL EXPRESS

**UNITED STATES BANKRUPTCY COURT**
Honorable Barry Russell
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Bldg. and Courthouse
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009    F 9013-3.1