1

JEFFREY K. GARFINKLE (SBN 153496)
JOSEPH M. WELCH (SBN 259308)

2

BUCHALTER NEMER
A Professional Corporation

3

18400 Von Karman Avenue, Suite 800
Irvine, California 92612

4

Telephone: (949) 760-1121
Facsimile: (949) 720-0182

5

Email:    jgarfinkle@buchalter.com
          jwelch@buchalter.com

6

7

Attorneys for Movant
Library Asset Acquisition Company, Ltd.

8

9

# UNITED STATES BANKRUPTCY COURT

10

## CENTRAL DISTRICT OF CALIFORNIA

11

## LOS ANGELES DIVISION

12

In re

Case No.  2:10-bk-19912-BR

13

ThinkFilm LLC,

Chapter: 11

14

Alleged Debtor.

**DECLARATION OF RONALD N. TUTOR IN SUPPORT OF OMNIBUS REPLY TO OPPOSITIONS TO MOTION FOR RELIEF FROM STAY BY LIBRARY ASSET ACQUISITION COMPANY LTD.**

15

16

17

Hearing:
Date:       October 26, 2010

18

Time:       2:00 p.m.
Place:      Courtroom 1668

19

            255 E. Temple Street
            Los Angeles, California 90012

20

21

22

23

24

25

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7394467v2

**DECLARATION OF RONALD N. TUTOR IN SUPPORT OF OMNIBUS REPLY**

I, Ronald N. Tutor, declare and state, under penalty of perjury, as follows:

1.      In or around November 4, 2002, David Bergstein ("Bergstein") and I formed R2D2 LLC ("R2D2").  At the time of its formation through mid to late February 2009, Bergstein and I each owned fifty percent (50%) of R2D2.

2.      From its inception, I was a passive investor in R2D2.  I had no role in its day-to-day operations, or those of subsidiaries or affiliated companies.  I never served as an officer of R2D2 or any of its subsidiaries or affiliated companies.

3.      During 2007, in connection with various loans made by D.B. Zwirn Special Opportunities Fund, L.P. and its affiliates (collectively, "DB Zwirn"), I executed various guaranties in favor of DB Zwirn.

4.      By the Fall of 2008, the underlying loans which I guarantied allegedly were in default and the borrowers under those loans had entered into a series of forbearance agreements and other amendments with DB Zwirn.

5.      On or about September 25, 2009, DB Zwirn sent me four separate demand letters.  In those letters, DB Zwirn demanded immediate payment of approximately $82 million under certain of the guaranties.  Copies of the four demand letters are enclosed herewith as <u>Exhibit 1</u>.  I do not specifically recall receiving these four demand letters.  However, by late September 2009 I was aware that DB Zwirn had demanded payment from me of approximately $82 million under certain of my guaranties.

6.      From October 2008 through February 2009, I and numerous other borrowers and guarantors engaged in extensive negotiations with DB Zwirn.  Ultimately, as explained herein, I agreed to purchase certain of the loans owned by DB Zwirn and acquire certain security interests in other DB Zwirn loans as a means of resolving the issues involved with certain of my guaranties.

7.      In January 2009, as I was dealing with the issues surrounding my guaranties of the various obligations to DB Zwirn and attempting to create a resolution to those personal financial issues, I determined that my investment in R2D2 was worthless.  At that time, I decided I needed

to divest my ownership interest in R2D2.  On or about January 23, 2009, Bergstein agreed to purchase my ownership interest in R2D2 for Ten Dollars ($10).

8.      In mid to late February 2009, I signed the Membership Interest Purchase Agreement.  Pursuant to that agreement, Bergstein acquired my ownership in R2D2.  A copy of the Membership Interest Purchase Agreement is enclosed herewith as <u>Exhibit 2.</u>

9.      From early February 2009 through March 12, 2009, I engaged in extensive negotiations with DB Zwirn over the proposed resolution—paying various sums to DB Zwirn in exchange for DB Zwirn transferring certain of the loans and security for other non-purchased loans to me or my designee.  I was represented in those negotiations by Michael Barnes of the Barnes Law Firm and attorneys from the national law firm Bryan Cave.  Mr. Barnes also represented LAAC.  DB Zwirn primarily was represented not only by its counsel, Evan Jones of O'Melveny & Meyers, but also by advisors at Fortress and the restructuring firm Berenson & Co.  These negotiations were robust and at arms-length.

10.     The negotiations with DB Zwirn culminated in a "Note Purchase and Sale Agreement" dated March 12, 2009.  The parties to that agreement are DB Zwirn and Library Asset Acquisition Company, Ltd., a company organized under the laws of England and Wales ("LAAC").  There were two subsequent amendments to the Note Purchase and Sale Agreement.  The salient terms of the Note Purchase and Sale Agreement, as amended, were that my then newly formed company—LAAC—would purchase certain loans and the security for such loans and other non-purchased loans from DB Zwirn at agreed-upon prices.

11.     LAAC was formed on February 25, 2009.  LAAC's Certificate of Incorporation, issued by The Companies House, is enclosed herewith as <u>Exhibit 3</u>.

12.     Subsequently, on March 25, 2009, Articles of Incorporation for LAAC were adopted.  A copy of LAAC's Articles of Incorporation dated March 25, 2009 is enclosed herewith as <u>Exhibit 4</u>.  Under LAAC's Articles of Incorporation, only Class A shareholders are entitled to consent to any significant corporate act.

13.     From its February 25, 2009 formation through the present, I owned the only Class A share.  A copy of my share certificate is enclosed herewith as <u>Exhibit 5</u>.

14.     Veritum owned the only Class B share (as a result of a March 2009 transfer from Bergstein).  Veritum's single Class B share was pledged to me to secure certain obligations which Veritum and Bergstein owed to me.  From its inception, Bergstein served as a director of LAAC.  As a director, Bergstein executed certain documents on behalf of LAAC.  However, from its inception, Bergstein's involvement with LAAC was extremely limited.  All corporate decisions of LAAC were made by me and me alone.

15.     Recently, I exercised certain of my rights and remedies against Veritum's Class B share in LAAC.  That Class B share is now owned by me.  Simultaneous with my acquisition of Veritum's Class B share, Bergstein resigned as a director of LAAC.  I am in the process of locating a new director.

16.     From March through June 2009, LAAC acquired certain of the DB Zwirn loans and certain security for non-purchased DB Zwirn loans, as provided for in the Note Purchase and Sale Agreement (as amended).  Among the loans acquired by LAAC was the ThinkFilm Loan.  LAAC tendered Forty-Five Million Dollars ($45,000,000) to DB Zwirn to acquire these loans and certain security for non-purchased DB Zwirn loans.

17.     LAAC financed its acquisition of the DB Zwirn loans and other security through funds which I lent to LAAC through my wholly-owned company, Library Liquidity LLC ("LL").  LL's loans to LAAC are secured by all of the assets of LAAC.  LL holds perfected security interests in both the United States and the United Kingdom against all of LAAC's assets.  LL was represented in those negotiations and documentation by the Bryan Cave law firm.

18.     The $45 million which LAAC tendered to DB Zwirn to acquire the various loans and other security came only from me.  Through my counsel in these bankruptcy cases, I have provided proof of the source of these funds to the trustee.

19.     Currently, LAAC is involved in litigation against DB Zwirn and other affiliated defendants.  In that litigation, LAAC is not alleging that the principal amount of the indebtedness under the ThinkFilm Loan is unenforceable, illegal or unconscionable.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  This declaration is made on October 19, 2010 in Sylmar, California.

_____

Ronald N. Tutor

# EXHIBIT 1

Bernard National Loan Investors, Ltd.
c/o DBZ U.S. Advisors, LLC
1345 Avenue of the Americas, 29th Floor
New York, New York 10105

September 25, 2009

**Via Federal Express or Facsimile
or Certified Mail**

Ronald N. Tutor
c/o Capitol Films
10100 Santa Monica Blvd., Suite 1250
Los Angeles, California 90067
Attn: David Bergstein
Facsimile: (310) 286-7210

Re:    Demand for Payment of Guaranty

Dear Mr. Tutor:

Reference is hereby made to that certain Amended and Restated Continuing Guaranty dated as of February 21, 2008 (the "Guaranty"), executed by you in connection with a Loan in the principal amount of $51,000,000 (the "Loan") made by Bernard National Loan Investors, Ltd. ("Bernard") and D.B. Zwim Special Opportunities Fund, L.P. (currently known as D.B. Zwim Special Opportunities Fund, LLC) ("DBZ" and, together with Bernard, collectively, the "Lenders") to CT1 Holdings, LLC ("Borrower") pursuant to that certain Loan and Security Agreement dated as of December 5, 2007 (as amended, the "Loan Agreement") and the Loan Documents referred to therein (the "Loan Documents").

Pursuant to the terms of the Loan Documents, one or more Events of Default have occurred and are continuing under the Loan Agreement, including, without limitation, the failure to discharge the Guaranteed Obligations (as defined in the Guaranty) when due, as referenced in that certain letter dated September 10, 2009 from Bernard addressed to Borrower. As a result of such Events of Default, and pursuant to Article 2 of the Guaranty, you are (jointly and severally with David Bergstein) fully and personally liable for (a) the full, prompt and complete payment of the Guaranteed Obligations (as defined in the Guaranty) when due and (b) all costs and expenses, including reasonable fees and out of pocket expenses of attorneys, incurred by Lenders in enforcing their rights under the Guaranty.

Demand is hereby made for immediate payment under the Guaranty in the full amount of the Guaranteed Obligations. As of the date of this letter, that amount is $55,377,300.98, which includes principal and interest through September 30, 2009 as provided under the Loan Documents, subject, however, to a cap on interest of 10% per annum as contemplated by the "savings clause" under Section 3.2 of the Loan Agreement.

Lenders reserve the right to exercise any and all rights and remedies available under the Guaranty, the other Loan Documents and applicable law at any time, with or without further notice (including the right to make additional demands thereunder). No delay by Lenders in exercising any right or remedy, or in requiring strict performance by either or both of Borrower or

LA1 1642788

Mr. Tutor
September 25, 2009
Page 2

Guarantor of any of their obligations under the Loan Documents shall constitute or give rise to any waiver of any of the terms or conditions of the Loan Documents. Furthermore, discussions between or among any of the Lenders and either or all of Borrower and Guarantor, if any, shall not constitute a modification of the Loan Documents, establish a custom or course of dealing, or waive, limit or condition any rights or remedies of the Lenders under the Loan Documents or applicable law, all of which rights are expressly reserved.

Please contact the undersigned or Mr. Steven F. Campbell at (212) 515-7704 to make arrangements for immediate payment in full.

[*Signatures continue on next page*]

LAI 1642788

Mr. Tutor
September 25, 2009
Page 3

Sincerely,

BERNARD NATIONAL LOAN INVESTORS, LTD.

By:    Fortress Value Recovery CM LLC, its
collateral manager

By:
    Name:
    Title:
          Douglas J. Cardoni
          Authorized Signatory


D.B. ZWIRN SPECIAL OPPORTUNITIES FUND,
LLC

By:  Fortress VRF Advisors I LLC, its investment
manager,
as agent and attorney-in-fact

By:
    Name:
    Title:

          Douglas J. Cardoni
          Authorized Signatory


cc:
Barnes Law Firm PC
201 Santa Monica, Blvd., Suite 640
Santa Monica, CA 90401
Attention:  Michael Barnes, Esq.

Barnes Law Firm PC
12400 Wilshire Blvd., Ste 1210
Los Angeles, CA 90025
Attn:  Michael Barnes, Esq.

LA1 1642788

Bernard National Loan Investors, Ltd.
c/o DBZ U.S. Advisors, LLC
1345 Avenue of the Americas, 29th Floor
New York, New York 10105

September 25, 2009

<u>Via Federal Express or Facsimile
or Certified Mail</u>

Ronald N. Tutor
c/o Capitol Films
10100 Santa Monica Blvd., Suite 1250
Los Angeles, California 90067
Attn:  David Bergstein
Facsimile:  (310) 286-7210

Re:    Demand for Payment of Guaranty

Dear Mr. Tutor:

Reference is hereby made to that certain Amended and Restated Continuing Guaranty dated as of February 21, 2008 (the "**Guaranty**"), executed by you in connection with a "Term A Loan" (the "**SSE Loan**") made pursuant to that certain Amended and Restated Credit and Security Agreement dated as of July 27, 2006 (as amended, the "**Loan Agreement**") between Sheridan Square Entertainment, Inc., CM, LLC and Compendia Acquisition, LLC and BT Music, LLC (each a "**Borrower**" and, collectively, "**Borrowers**"), Artemis Classics LLC, Tone-Cool Records Corp., Musicrama Distribution and Marketing, Inc., Sheridan Square Ventures I, LLC, VRNA, LLC, Sheridan Square Publishing Group, LLC, Bernard National Loan Investors, Ltd. ("**Bernard**") (as Agent thereunder), and each of the Lenders that are parties from time to time thereto (the "**Lenders**") and the Basic Documents referred to therein (the "**Loan Documents**").

Pursuant to the terms of the Loan Documents, one or more Events of Default have occurred and are continuing under the Loan Agreement, including, without limitation, the failure to discharge the Obligations when due, as referenced in that certain letter dated as of September 10, 2009 from Bernard to, among others, the parties to the Loan Agreement.  As a result of such Events of Default, and pursuant to Article 2 of the Guaranty, you are (jointly and severally with David Bergstein) fully and personally liable for (a) the full, prompt and complete payment of the Obligations when due and (b) all costs and expenses, including reasonable fees and out of pocket expenses of attorneys, incurred by Lenders in enforcing their rights under the Guaranty.

Demand is hereby made for immediate payment under the Guaranty in the full amount of the Guaranteed Obligations.  As of the date of this letter, that amount is $5,000,000, which includes principal and interest through September 30, 2009 as provided under the Loan Documents, subject, however, to a cap on interest of 10% per annum as contemplated by the "savings clause" under Section 3.11 of the Loan Agreement.

Lenders reserve the right to exercise any and all rights and remedies available under the Guaranty, the other Loan Documents and applicable law at any time, with or without further

LA1 1642341

Mr. Tutor
September 25, 2009
Page 2

notice (including the right to make additional demands thereunder).  No delay by Lenders in
exercising any right or remedy, or in requiring strict performance by either or both of Borrowers
or Guarantor of any of their obligations under the Loan Documents shall constitute or give rise
to any waiver of any of the terms or conditions of the Loan Documents.  Furthermore,
discussions between or among any of the Lenders and either or all of Borrower and Guarantor,
if any, shall not constitute a modification of the Loan Documents, establish a custom or course
of dealing, or waive, limit or condition any rights or remedies of the Lenders under the Loan
Documents or applicable law, all of which rights are expressly reserved.

    Please contact the undersigned or Mr. Steven F. Campbell at (212) 515-7704 to make
arrangements for immediate payment in full.

*[Signatures continue on next page]*

LAI 1642841

Mr. Tutor
September 25, 2009
Page 3

Sincerely,

BERNARD NATIONAL LOAN INVESTORS, LTD.,
as Agent

By:    Fortress Value Recovery CM LLC, its
collateral manager

By:    _____

     Name:

     Title:    Douglas J. Cardoni
               Authorized Signatory

cc:
Barnes Law Firm PC
201 Santa Monica, Blvd., Suite 640
Santa Monica, CA 90401
Attention:  Michael Barnes, Esq.

Barnes Law Firm PC
12400 Wilshire Blvd., Ste 1210
Los Angeles, CA 90025
Attn:  Michael Barnes, Esq.

LA1 1642841

Bernard National Loan Investors, Ltd.
c/o DBZ U.S. Advisors, LLC
1345 Avenue of the Americas, 29th Floor
New York, New York 10105

September 25, 2009

**Via Federal Express or Facsimile
or Certified Mail**

Ronald N. Tutor
c/o Capitol Films
10100 Santa Monica Blvd., Suite 1250
Los Angeles, California 90067
Attn:  David Bergstein
Facsimile:  (310) 286-7210

Re:    Demand for Payment of Guaranty

Dear Mr. Tutor:

Reference is hereby made to that certain Amend and Restated Continuing Guaranty dated as of November 14, 2007 (the "Guaranty") executed by you in connection with a loan in the principal amount of $16,050,000 made by Bernard National Loan Investors, Ltd. ("Lender") to Stopping Power Productions, Inc. ("Borrower") pursuant to that certain Amended and Restated Loan and Security Agreement dated as of November 14, 2007 (the "Loan Agreement") and the Loan Documents referred to therein (the "Loan Documents"). All capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Loan Agreement.

Pursuant to the terms of the Loan Documents one or more Events of Default have occurred and are continuing, including, without limitation, the failure to discharge the Obligations when due, as referenced in that certain letter dated September 10, 2009 from Lender addressed to Borrower. As a result of such Events of Default, and pursuant to Article 2 of the Guaranty, you are (jointly and severally with David Bergstein) fully and personally liable for (a) the full, prompt and complete payment of the Obligations when due, and (b) all costs and expenses, including reasonable fees and out of pocket expenses of attorneys, incurred by Lender in enforcing its rights under the Guaranty.

Demand is hereby made for immediate payment under the Guaranty in the full amount of the Obligations. As of the date of this letter, that amount is $15,431,569.70, which includes principal and interest through September 30, 2009 as provided under the Loan Documents, subject, however, to a cap on interest of 10% per annum as contemplated by the "savings clause" under Section 3.2 of the Loan Agreement.

Lender reserves the right to exercise any and all rights and remedies available under the Guaranty, the other Loan Documents, and applicable law at any time, with or without further notice (including the right to make additional demands thereunder). No delay by Lender in exercising any right or remedy, or in requiring strict performance by Borrower or Guarantor of any of their obligations under the Loan Documents shall constitute or give rise to any waiver of any of the terms or conditions of the Loan Documents. Furthermore, discussions between or

LA1 1642831

Mr. Tutor
September 25, 2009
Page 2

among Lender and either or both of Borrower and Guarantor, if any, shall not constitute a modification of the Loan Documents, establish a custom or course of dealing, or waive, limit or condition any rights or remedies of Lender under the Loan Documents or applicable law, all of which rights are expressly reserved.

Please contact the undersigned or Mr. Steven F. Campbell at (212) 515-7704 to make arrangements for immediate payment in full.

[Signature Continues on Next Page]

LA1 1642831

Mr. Tutor
September 25, 2009
Page 3

BERNARD NATIONAL LOAN INVESTORS, LTD.

By:      Fortress Value Recovery CM LLC, its
collateral manager

By:
        Name:
        Title:
                Douglas J. Cardoni
                Authorized Signatory

cc:

Barnes Law Firm PC
12400 Wilshire Blvd., Ste 1210
Los Angeles, CA 90025
Attn: Michael Barnes, Esq.

Barnes Law Firm PC
201 Santa Monica, Blvd., Suite 640
Santa Monica, CA 90401
Attention: Michael Barnes, Esq.

LA1 1642831

Bernard National Loan Investors, Ltd.
c/o DBZ U.S. Advisors, LLC
1345 Avenue of the Americas, 29th Floor
New York, New York 10105

September 25, 2009

**Via Federal Express or Facsimile
or Certified Mail**

Mr. Ronald N. Tutor
10100 Santa Monica Blvd., Suite 1250
Los Angeles, California 90067

Re:    Demand for Payment of Guaranty

Dear Mr. Tutor:

Reference is hereby made to that certain Amended and Restated Limited Guaranty and Keep Well Agreement dated as of June 4, 2007 (the "Guaranty") executed by you in connection with loans made pursuant to that certain Amended and Restated Credit and Security Agreement dated as of July 27, 2006 (as amended, the "Loan Agreement") between Sheridan Square Entertainment, Inc., CM, LLC, Compendia Acquisition, LLC (each a "Borrower" and, collectively, "Borrowers"), Artemis Classics LLC, Tone-Cool Records Corp., Musicrama Distribution and Marketing, Inc., Sheridan Square Ventures I, LLC, VRNA, LLC, Sheridan Square Publishing Group, LLC, Bernard National Loan Investors, Ltd. ("Bernard") (as Agent thereunder), and each of the Lenders that are parties from time to time thereto ("Lenders") and the Basic Documents referred to therein (the "Basic Documents"). All capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Loan Agreement.

Pursuant to the terms of the Basic Documents, one or more Events of Default have occurred and are continuing, including, without limitation, the failure to discharge the Obligations, as referenced in that certain letter dated as of September 10, 2009 from Bernard to, among others, the parties to the Loan Agreement. As a result of such Events of Default, the entire amount of the Obligations is due and payable, and, pursuant to Section 3 of the Guaranty, you are (jointly and severally with CT1 Holdings LLC, R2D2, LLC and David Bergstein) fully and personally liable for the full, prompt and complete payment of the Additional Pledge Contribution (as defined in the Guaranty).

Demand is hereby made for immediate payment under the Guaranty in the full amount of the Additional Pledge Contribution. As of the date of this letter, that amount is $6,950,000.

Lenders reserve the right to exercise any and all rights and remedies available under the Guaranty, the other Basic Documents, and applicable law at any time, with or without further notice. No delay by Lenders in exercising any right or remedy, or in requiring strict performance by any or all of the Borrowers or Investors of any of their obligations under the Basic Documents shall constitute or give rise to any waiver of any of the terms or conditions of the Basic Documents. Furthermore, discussions between or among Lenders and all or any of the Borrowers and/or Investors, if any, shall not constitute a modification of the Basic Documents, establish a custom or course of dealing, or waive, limit or condition any rights or remedies of the

Mr. Tutor
September 25, 2009
Page 2

Lenders under the Basic Documents or applicable law, all of which rights are expressly reserved.

Please contact the undersigned or Mr. Steven F. Campbell at (212) 515-7704 to make arrangements for immediate payment in full.

*[Signatures continue on next page]*

LAI 1645537

Mr. Tutor
September 25, 2009
Page 3

Sincerely,

BERNARD NATIONAL LOAN INVESTORS, LTD.,
as Agent

By:    Fortress Value Recovery CM LLC, its
collateral manager

By:

Name:
Title:

Douglas J. Cardoni
Authorized Signatory

cc:

Barnes Law Firm PC
12400 Wilshire Blvd., Ste 1210
Los Angeles, CA 90025
Attn: Michael Barnes, Esq.

Barnes Law Firm PC
201 Santa Monica, Blvd., Suite 640
Santa Monica, CA 90401
Attention: Michael Barnes, Esq.

LA1 1645537

# EXHIBIT 2

# MEMBERSHIP INTEREST PURCHASE AGREEMENT

THIS MEMBERSHIP INTEREST PURCHASE AGREEMENT is entered into as of January 23, 2009 (the "Agreement"), by and among David Bergstein ("Buyer") and Ronald N. Tutor ("Seller"). Buyer and Seller are sometimes referred to herein collectively as the "Parties" and individually as a "Party." R2D2, LLC, a California Limited Liability Company is referred to as the "Company."

## Recitals

A.    Seller owns 50% of the total outstanding membership interests in Company ("Seller Interests") and Buyer owns 50% of the total outstanding membership interests in Company ("Buyer Interests"). There are no other members of the Company.

B.    Buyer desires to purchase from Seller and Seller desires to sell to Buyer Sellers Interests on the terms and subject to the conditions set forth herein.

## Agreement

In consideration of the mutual covenants and obligations set forth herein, the Parties to this Agreement hereby agree as follows:

## ARTICLE 1
## Sale and Purchase of Membership Interests

Section 1.1.    Agreement to Sell Sellers Interests.  As of the Closing Date (as defined below), Seller shall sell to Buyer, and Buyer shall purchase from Seller, the Seller Interests, subject to any claims, liens, restrictions, encumbrances or security interests of any nature which may exist up and through the Closing Date.

Section 1.2.    Purchase Price.  Buyer shall pay to Sellers as the purchase price for the Seller Interests the sum of Ten Dollars (the "Consideration").

## ARTICLE 2
## Closing

Section 2.1.    Closing Date.  The closing of the purchase and sale of the Seller Interests (the "Closing") shall take place simultaneously with the execution of this Agreement (the "Closing Date").

Section 2.2.   **Closing Deliveries.**   At the Closing, Seller shall deliver to Buyer, the Sellers Interests duly endorsed by Seller to Buyer, or such other documentation as may be required to evidence the transfer of Seller Interests.

(b) At the Closing, Buyer shall deliver to Seller the Consideration.

## ARTICLE 3
## Representations and Warranties

Section 3.1.   **Representations and Warranties of Seller.**   Seller hereby represents and warrants to Buyer that Seller is the owner of record of the Seller Interests. Seller has good title to the Interests. The Seller has the power and authority to deliver and sell the Interests, and the delivery thereof by the Seller to the Buyer pursuant to this Agreement will vest full legal and beneficial title to the Interests in the Buyer.

Section 3.2.   **Representations and Warranties of Buyer.**   Buyer hereby represents and warrants to Seller that:

(a) Buyer has full legal right and power and all authority and approval required by law to enter into this Agreement and this Agreement constitutes the valid and legally binding obligation of the Buyer, enforceable in accordance with its terms.

(b) Seller has made no representations or warranties to Buyer other than as contained in section 3.1 above.

## ARTICLE 4
## Indemnification

Section 4.1.   **Indemnification by Seller.**   Buyer hereby acknowledges that Seller shall not indemnify Buyer against claims, liabilities, obligations, losses, damages, judgments or costs of any nature arising in any way out of the sale of the Seller Interests.

Section 4.2.   **Indemnification by Buyer.**   The Buyer shall indemnify and hold harmless the Seller against any and all claims, liabilities, obligations, losses, damages, judgments or costs of any kind resulting from or arising out of (i) any breach by Buyer of any representation, warranty or covenant made by Buyer contained in this Agreement; (ii) any non-fulfillment or breach or default in the performance by the Buyer of any of the covenants made herein; and (iii) any and all costs and expenses (including reasonable legal and accounting fees) related to the foregoing.

## ARTICLE 5
### Miscellaneous

Section 4.2.    <u>Governing Law.</u> This Agreement shall be construed in accordance with and be governed by the laws of the State of California. Any legal action or proceeding with respect to this Agreement may be brought in the courts of the State of California sitting in the City of Los Angeles or of the United States for the Central District of California. The Parties hereby submit to personal jurisdiction in said State for the enforcement of the obligations hereunder, and waive any and all personal rights under the law of any other jurisdiction to object to such personal jurisdiction within said State.

Section 5.2.    <u>Notices.</u> All notices or other communications that are required or permitted hereunder shall be in writing and sufficient if delivered personally or sent by (a) registered or certified mail, postage prepaid, or (b) nationally-recognized overnight courier, addressed as follows:

If to Buyer:            David Bergstein
                        2121 Ave of the Stars, Ste 3000
                        Los Angeles, CA 90067


If to Seller:           Ronald N. Tutor
                        15901 Olden Street
                        Sylmar, CA 91342

Section 5.3.    <u>Amendments and Waivers.</u> Any term of this Agreement may be amended and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively), only with the written consent of the Seller and the Buyer.

Section 5.4.    <u>Severability.</u> If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision shall be modified to the extent necessary to render it enforceable, and the remaining provisions of the Agreement shall be enforceable in accordance with their terms.

Section 5.5.    <u>Assignment.</u> This Agreement may not be assigned, pledged, hypothecated, sold or otherwise transferred or encumbered by Seller, voluntarily or involuntarily, including, without limitation, by operation of law; and any attempt to do so shall be null and void.

Section 5.6.    <u>Further Assurances.</u> Seller and Buyer each shall execute and deliver such additional documents and instruments and take such other actions as may be reasonably required in order to carry out the purposes and intent of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

"SELLER"

By: _____
Ronald N. Tutor

"BUYER"

By: _____
David Bergstein

Consented to by

R2D2, LLC

By: _____

# EXHIBIT 3



# CERTIFICATE OF INCORPORATION
# OF A PRIVATE LIMITED COMPANY

## Company No.   6829489

The Registrar of Companies for England and Wales hereby certifies that

**LIBRARY ASSET ACQUISITION COMPANY LTD**

is this day incorporated under the Companies Act 1985 as a private
company and that the company is limited.

Given at Companies House, Cardiff, the 25th February 2009



**THE OFFICIAL SEAL OF THE
REGISTRAR OF COMPANIES**



*Companies House*
—— *for the record* ——

The above information was communicated in non-legible form and authenticated by the
Registrar of Companies under section 710A of the Companies Act 1985

CONFIDENTIAL

RT00032C

# EXHIBIT 4

*We hereby certify this to be a true copy of the original*

*KATRINA STAGNER*
*SOLICITOR*
*ROOM 321, 5 RICHMOND MEWS*
*LONDON W1D 3DB*
*31 MARCH 2009*

Company No:    06829489

## THE COMPANIES ACTS 1985 AND 2006

---

## PRIVATE COMPANY LIMITED BY SHARES

---

## ARTICLES OF ASSOCIATION
## OF
## LIBRARY ASSET ACQUISITION COMPANY LTD (the "Company")

### (Adopted by written special resolution passed on 25. March 2009)

1. **Preliminary**

   1.1   The regulations constituting Table A in the Schedule to the Companies (Tables A to F) Regulations 1985 as amended by the Companies (Tables A to F) (Amendment) Regulations 2007 (SI 2007/2541) and the Companies (Tables A to F) (Amendment) (No. 2) Regulations 2007 (SI 2007/2826), and as otherwise amended prior to the adoption of these Articles as they relate to a private company limited by shares (**Table A**) shall apply to the Company except in so far as they are excluded or varied by these Articles. References in these Articles to numbered Regulations shall, unless the context otherwise requires, be deemed to be references to Regulations in Table A.

   1.2   Regulations 2, 3, 24, 40, 64, 84, 89, 90, 94 and 99 shall not apply to the Company and in lieu thereof and in addition to the remaining Regulations in Table A, the following shall be the Articles of the Company.

   1.3   Words and expressions defined in Regulation 1 of Table A have the same meanings in these Articles where the context admits.

   1.4   The Company is a private company and no shares or debentures of the Company may be offered to the public.

   1.5   Companies Acts means the Companies Act 1985 and the Companies Act 2006 as amended and in force prior to adoption of these Articles.

2. **Definitions**

In these Articles the following words and expressions shall have the meanings set out below:

| | |
|---|---|
| **"Family Trust"** | a trust or settlement established by a Member for the benefit of such Member, the Privileged Relations of such Member and/or a charity and references to a Family Trust shall include references to a trustee of a Family Trust as trustee and not in a personal capacity; |
| **"Member" or "Shareholder"** | a holder of shares; |
| **"Member of the same Group"** | as regards any company, a company which is for the time being a holding company or a subsidiary of that company or of any such holding company; |
| **"Privileged Relation"** | in relation to an individual member or deceased or former individual member: |

    (a)    the husband or wife or the widower or widow of such member;

    (b)    all parents and step-parents and/or descendants in direct line of such member;

    (c)    the brothers and sisters of such member; and

    (d)    a husband or wife or widower or widow of any of the persons referred to in paragraphs (a), (b) and (c) above;

and for the purposes aforesaid a step-child or adopted child or illegitimate child of any person shall be deemed to be his or her lineal descendant Provided that a Privileged Relation shall not be a minor;

| | |
|---|---|
| **"Relevant Shares"** | so far as the same remain for the time being held by any Transferee Company) the shares originally acquired by such Transferee Company and any additional shares issued to such Transferee Company by way of capitalisation or acquired by such Transferee Company in exercise of any right or option granted or arising by virtue of the holding of such shares or any of them or the membership thereby conferred; |
| **"Transferee Company"** | a company for the time being holding shares in consequence, directly or indirectly, of a transfer or series of transfers of shares between Members of the same Group (the relevant Transferor Company in the case of a series of such transfers being the first transferor in such series); |

| | |
|---|---|
| **"Transferor Company"** | a company (other than a Transferee Company) which has transferred or proposes to transfer shares to a Member of the same Group. |
| **"Shares"** | (unless the context otherwise requires) shares in the capital of the Company; |
| **Share Capital"** | the entire issued share capital of the Company from time to time; |

## SHARES

3.    **Share Capital**

3.1    At the date of the adoption of these Articles the capital of the Company is 1,000 divided into 500 A Ordinary Shares of £1.00 each and 500 B Ordinary Shares of £1.00 each.

3.2    Save as expressly provided in these Articles of Association in connection with the permitted transfer of A Ordinary Shares (Article 6) and the consent of the holders of the A Ordinary Shares (Article 12) the A Ordinary Shares and the B Ordinary Shares in issue from time to time shall rank equally in all respects.

4.    The following words shall be deleted from the sixth line of Regulation 6:-

*"shall be sealed with the seal"*

and shall be substituted by the following words:-

*"shall be signed by any one Director "*.

## TRANSFER OF SHARES

5.    Subject to Article 6, the Directors may in their absolute discretion and without assigning any reason therefore decline to register any transfer of any share whether or not it is a fully paid share.

6.    Any A Ordinary Shares may at any time be transferred:

6.1    to any person with the prior consent in writing of holders of all Shares in issue; or

6.2    by any individual member to a Privileged Relation of such member; or

6.3    by any member being a company to a Member of the same Group as the Transferor Company; or

6.4   by any person entitled to shares in consequence of the death or bankruptcy of an individual member to any person or trustee to whom such individual member, if not dead or bankrupt, would be permitted hereunder to transfer the same;

6.5   by any Member to the trustee of a Family Trust of such Member.

7.   No B Ordinary Share may be transferred in any manner without the prior consent in writing of the holders of all A Ordinary Shares in issue from time to time.

8.   **Subsequent Transfers**

8.1   If a person to whom A Ordinary Shares have been transferred pursuant to Regulation 6 shall cease to be a Privileged Relation, such person shall be bound, if and when required in writing by the Directors so to do, to effect a transfer back to the Transferor (or as he may direct in accordance with Regulation 6) in respect of the A Ordinary Shares concerned.

8.2   If a Transferee Company ceases to be a Member of the same Group as the Transferor Company from which (whether directly or by a series of transfers under Article 6) the Relevant Shares derived, it shall be the duty of the Transferee Company to notify the Directors in writing that such event has occurred and (unless the Relevant Shares are thereupon transferred to the Transferor Company or a Member of the same Group as the Transferor Company, any such transfer being deemed to be authorised under the foregoing provisions of this Article) the Transferee Company shall be bound, if and when required in writing by the Directors so to do, to effect a transfer back to the Transferor (or as he may direct in accordance with Article 6) in respect of the Relevant Shares.

## PROCEEDINGS AT GENERAL MEETINGS

9.   No business shall be transacted at any General Meeting unless a quorum is present when the meeting proceeds to business. For all purposes the quorum shall be two Members present in person or by proxy and entitled to vote.

10.   At any General Meeting a resolution put to the vote of the meeting shall be decided on a show of hands, unless before or on the declaration of the result of a show of hands a poll is demanded by any member present in person or by proxy.

## DIRECTORS

11.   Regulation 64 of Table A shall apply with the exception of the words 'but shall not be less than two' and accordingly there may be a sole director.

## CONSENT

12.    The Company and its Directors shall not without the prior consent in writing of the holders of all the A Ordinary Shares in issue from time to time:

12.1    Permit or cause to be proposed any alteration to its share capital (including any increase thereof) or the rights attaching to its shares or waive any right to receive payment on any of its shares issued partly paid.

12.2    Create, allot, issue, buy-in or redeem any share or loan capital or grant or agree to grant any options or warrants for the issue of any share or loan capital or issue any securities convertible into shares, or establish any employee incentive scheme.

12.3    Permit or cause to be proposed any amendment to its memorandum of association or these Articles.

12.4    Propose or pay any dividend or propose or make any other distribution (as defined under sections 209, 418 and 419 ICTA 1988).

12.5    Subscribe or otherwise acquire, or dispose of any shares in the capital of any other company.

12.6    Acquire or dispose of the whole or part of the undertaking of any other person or dispose of the whole or part of the undertaking of the Company or merge the Company or any part of its business with any other person or propose to do so.

12.7    Enter into or give or permit or suffer to subsist any guarantee of or indemnity or contract of suretyship for or otherwise commit itself in respect of the due payment of money or the performance of any contract, engagement or obligation of any other person or body

12.8    Dispose (otherwise than in accordance with any relevant capital disposals forecast in the budget previously approved) of any asset of a capital nature having a book or market value greater than £50,000.

12.9    Negotiate or permit the disposal of shares in the Company amounting to a sale or listing.

12.10    Cease, or propose to cease, to carry on its business or permit the Company or its directors (or any one of them) to take any step to wind up the Company.

12.11    Take any step to place the Company into administration (whether by the filing of an administration application, a notice of intention to appoint an administrator or a notice of appointment), propose or enter into any arrangement, scheme, moratorium, compromise or composition with its

creditors (whether under Part 1 Insolvency Act 1986 or otherwise) or apply for an interim order under Part 1 Insolvency Act 1986, or invite the appointment of a receiver or administrative receiver over all or any part of the Company's assets or undertaking.

12.12 Make any material change to the nature of the business of the Company or the jurisdiction where it is managed and controlled.

12.13 Establish any new branch, agency, trading establishment or business or close any such branch, agency, trading establishment or business.

12.14 Do any act or thing outside the ordinary course of the business carried on by it.

12.15 Mortgage or charge or permit the creation of or suffer to subsist any mortgage or fixed or floating charge, lien (other than a lien arising by operation of law) or other encumbrance over the whole or any part of its undertaking, property or assets.

12.16 Enter into any partnership, joint venture or consortium agreement.

12.17 Factor any of its debts, borrow monies (in the aggregate of more than £50,000) or accept credit (other than normal trade credit).

12.18 Appoint any additional Director.

## POWERS AND PROCEEDINGS OF DIRECTORS

13.   A Director who is in any way, whether directly or indirectly, interested in a contract or proposed contract with the Company shall declare the nature of his interest in the manner required by Section 317 of the Act. A Director may vote in respect of any such contract or proposed contract and if he does so vote his vote shall be counted and he shall be capable of being counted towards the quorum at any meeting of the Directors at which any such contract or proposed contract shall come before the Board for consideration.

14.   A Director may hold any other office or place of profit under the Company (other than the office of auditor) in conjunction with his office of Director for such period and on such terms (as to remuneration and otherwise) as the A Shareholder may determine

15.   Any Director may act by himself or his firm in a professional capacity for the Company, and he or his firm shall be entitled to remuneration for professional services as if he were not a Director; provided that nothing herein contained shall authorise a Director or his firm to act as auditor to the Company.

16.   No Director of the Company shall vacate or be required to vacate his office as a Director on or by reason of his attaining or having attained the age of seventy or

any other age, and any person proposed to be appointed a Director of the Company shall be capable of being appointed as a Director of the Company, notwithstanding that at the time of such appointment he has attained the age of seventy. No special notice need be given of any resolution for the appointment or approving the appointment as a Director of a person who shall have attained the age of seventy years, and it shall not be necessary to give to the members notice of the age of any Director or person proposed to be appointed as a Director.

## DISQUALIFICATION OF DIRECTORS

17.    Regulation 81(e) shall not apply to the Company.

## DIVIDENDS

18.    No dividend or interim dividend shall be paid otherwise than in accordance with the provisions of those parts of Part VIII of the Act which apply to the Company.

## SECRETARY

19.    Subject to the provisions of the Act, the Secretary shall be appointed by the Directors for such term, at such remuneration and upon such conditions as they may think fit, and any Secretary so appointed may be removed by them. If at any time there shall be no Secretary or for any reason no Secretary capable of acting, the Directors may appoint an assistance or deputy Secretary.

## NOTICES

20.    Notice of every general meeting shall be given in the manner authorised by Table A to every member (including any member outside the United Kingdom to the address supplied for such purpose) and shall also be given to the directors and the auditors.

David Bergtein
Director

EXHIBIT 5

# SHARE CERTIFICATE

Certificate Number

3

Number of Shares

1 "A"

Company Name:    LIBRARY ASSET ACQUISITION COMPANY LTD

Company Number:    6829489

*This is to Certify that*    RONALD TUTOR

is/are the Registered holder(s) of    ONE (1) ordinary, "A"    Shares of    £ 1.00    each    paid

in the above-named company, subject to the Memorandum and Articles of Association of the Company.

This document is hereby executed by the Company/The Common Seal of the Company was hereto affixed in the presence of:

Director:

*Secretary/Director*

Date:    25 March 2009

*Delete as appropriate
NO TRANSFER OF ANY OF THE ABOVE MENTIONED SHARES CAN BE REGISTERED UNTIL THIS CERTIFICATE HAS BEEN DEPOSITED AT THE REGISTERED OFFICE OF THE COMPANY

| In re:<br>Thinkfilm LLC.<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 10-19912 |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 18400 Von Karman Ave., Ste. 800, Irvine, CA  92612

A true and correct copy of the foregoing document described as <u>DECLARATION OF RONALD N. TUTOR IN SUPPORT OF OMNIBUS REPLY TO OPPOSITIONS TO MOTION FOR RELIEF FROM STAY BY LIBRARY ASSET ACQUISITION COMPANY LTD.</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:
Overnite Express

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>10/19/10</u>                I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

- David E Ahdoot     dahdoot@bushgottlieb.com, tjimines@bushgottlieb.com
- Steven A Alpert     cacbefile@pricelawgroup.com
- Todd M Arnold     tma@lnbrb.com
- David M Bass     dbass@basslawla.com
- Hartford O Brown     hbrown@klinedinstlaw.com
- John P Byrne     John.Byrne@byrnelaw.biz
- Jennifer S Chang     jsc@birdmarella.com, krw@birdmarella.com
- Sara Chenetz     chenetz@blankrome.com
- Russell Clementson     russell.clementson@usdoj.gov
- Joseph A Eisenberg     jae@jmbm.com
- Philip A Gasteier     pag@lnbrb.com
- Thomas M Geher     tmg@jmbm.com
- Irving M Gross     img@lnbrb.com, angela@lnbrb.com
- Leonard L Gumport     lgumport@grlegal.com, lgumport@gumportlaw.com
- Michael C Heinrichs     mheinrichs@omm.com
- Joseph A Kohanski     jkohanski@bushgottlieb.com, tjimines@bushgottlieb.com
- Jeffrey A Krieger     jkrieger@ggfirm.com
- Richard Levy     rlevy@pryorcashman.com
- Michael S Lurey     michael.lurey@lw.com, colleen.rico@lw.com
- Michael L Martucci     Michael@radlegal.com
- Peter J Mastan     pmastan@grlegal.com
- Hayes F Michel     hmichel@bakerlaw.com
- David L. Neale     dln@lnbrb.com
- Timothy R Pomeroy     tpomeroy@klinedinstlaw.com
- Vince Ravine     vince@vravinelaw.com, melissa@vravinelaw.com
- Andrew S. Rotter     arotter@grlegal.com, arotter@gumportlaw.com
- Mark M Sharf     mark@sharflaw.com, msharf00@gmail.com
- Adam M Starr     starra@gtlaw.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- David Weinstein     david.weinstein@hro.com
- Sharon Z Weiss     sharon.weiss@hro.com

☐ Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**II.   SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):

On 10/19/10 _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

10th & Wolf LLC
Jeffrey W tott, Managing Member
Barberry Farm
4 Barberry Rd
Sewickley, PA 15143

Tracy L Ashmore
Holme Roberts & Owen LLP
800 W Olympic Blvd 4th Fl
Los Angeles, CA 90015

Jennifer S Chang
Bird, Marella, Boxer & Lincenberg, P.C
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067

Lucia E Coyoca
Mitchell Silberberg & Knupp LLP
11377 W Olympic Blvd
Los Angeles, CA 90064

Dox Productions Limited
c/o Jeff Sanders Esq
Roberts Ritholz et al LLP
235 Park Ave South 3d Fl
New York, NY 10003

Ronald L Durkin (TR)
633 West Fifth St, 24th Fl
Los Angeles, CA 90071-2008

Durkin Forensic Inc
601 S Figueroa St Sge 2080
Los Angeles, CA 90017

Steven M Nachman
675 Third Ave 29th Floors
New York, CA 10017

Frank M Radoslovich
601 University Ave Ste 250
Sacramento, CA 95825

☐ Service information continued on attached page

**III.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s)

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                          F 9013-3.1

and/or entity(ies) by personal delivery, or (for those not presented by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 10/19/10 | Loretta Goodwin | |
|----------|-----------------|--|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                      F 9013-3.1