JOSEPH A. KOHANSKI (SBN 143505)
jkohanski@BushGottlieb.com
DAVID E. AHDOOT (SBN 245133)
dahdoot@BushGottlieb.com
MELVIN YEE (SBN 241569)
myee@BushGottlieb.com
BUSH GOTTLIEB SINGER LÓPEZ
KOHANSKI ADELSTEIN & DICKINSON
A Law Corporation
500 North Central Avenue, Suite 800
Glendale, California 91203-3345
Telephone: (818) 973-3200
Facsimile: (818) 973-3201

Attorneys for Creditors
Directors Guild of America, Inc., Screen Actors
Guild, Inc., Writers Guild of America, West, Inc.,
Directors Guild of America- Producer Pension
and Health Plans, Screen Actors Guild-Producer
Pension and Health Plans, Writers Guild -
Industry Health Fund and Producer-Writers Guild
of America Pension Plan, and Motion Picture
Industry Pension and Health Plans

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In Re<br><br>THINKFILM, LLC<br><br>Debtor. | **CASE NO. 2:10-bk-19912-BR**<br><br>**Chapter 11**<br><br>**UNION ENTITIES' STATEMENT TO LIBRARY ASSET ACQUISITIONS COMPANY'S MOTION TO: (1) PROHIBIT TRUSTEE FROM USING CASH COLLATERAL; (2) SEQUESTER CASH COLLATERAL AND (3) PROVIDE ACCOUNTING OF ALL POST-PETITION RECEIPTS**<br><br>Date: November 23, 2010<br>Time: 2:00 p.m.<br>Ctrm.: Courtroom 1668<br>225 E. Temple Street<br>Los Angeles, California 90012 |

/ / /

/ / /

**TO THE HONORABLE BARRY RUSSELL, JUDGE, UNITED STATES BANKRUPTCY COURT AND ALL PARTIES HAVING NOTICE HEREOF:**

The Directors Guild of America, Inc. ("DGA"), Screen Actors Guild, Inc. ("SAG"), Writers Guild of America, West, Inc. ("WGAW") (collectively, the "Guilds"), for themselves and their respective Pension and Health Plans (the "Guild Plans") (the Guilds and Guild Plans collectively, the "Union Entities")[1] hereby make this Statement to Library Asset Acquisitions Company's ("LAAC") Motion concerning the Trustee's[2] alleged use of Cash Collateral ("Motion") held by the Debtors.[3]   Simply put, the Trustee has assured that there will be no use of cash collateral without a court order, and as with its recent motion for relief from stay, LAAC again fails to recognize it is not the senior secured creditor with respect to certain collateral.

## INTRODUCTION

1.   Despite assurances from the Trustee that no cash collateral has been or will be used absent Court approval, LAAC asks this Court to review pages of argument and evidence, hold a hearing, and issue an order concerning the Trustee's use of cash collateral.   The cash collateral at issue involves income arising from Warner Bros. Entertainment, Inc.'s exploitation of four films: *A Sound of Thunder; The In Laws; Ballistic: Ecks vs. Sever;* and *The Whole Ten Yards* (collectively, "the Films" or "Film").   *See,* <u>Motion</u>, pp. 5-6.   LAAC claims this income is "directly traceable to LAAC's pre-petition collateral" and that LAAC has a "critical need" to prohibit the Trustee from using these funds.   *Id.* at p. 2, lns. 8, 22-23.   LAAC also references its uncertainty as "to whether the Guilds…still have security interests, senior to LAAC or otherwise,

---

[1] The WGA is a petitioning creditor of Capitol Films Development, LLC, and the Union Entities as a whole are creditors and/or interested parties of the five debtor estates involved in these proceedings. *See e.g., Declarations of D. Korduner, K. Christovich, and S. Lowry, In Support of the Emergency Motion To Appoint A Trustee,* Filed on March 26, 2010, in Case No. 2:10-bk-19929-BR, Docket No. 28, 29, and 30, respectively.

[2] Unless otherwise indicated, All capitalized terms follow the definition in the Motion.

[3] The Union Entities use the term "Debtors" to refer to CapCo Group, LLC, Capitol Films Development, LLC, CT-1 Holdings, LLC, R2D2, LLC, and ThinkFilm, LLC.   Although some of the Debtors await a determination for an order for entry of relief, in the interests of clarity, the Debtors/Alleged Debtors shall be referred to as "Debtors" or "Debtor" as appropriate.

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

against various films previously owned by FPLAC…" and references the potential effect of a "Termination Statement" filed by DB Zwirn's counsel in 2007 with the Delaware Secretary of State. *Id.* at p. 7 ¶ 16. The Union Entities hereby file this Statement and supporting declarations, in order to clarify their interests in the Films and set forth their position concerning the cash collateral at issue.

**THE UNION ENTITIES' INTEREST IN THE CASH COLLATERAL**

2. The Guilds obtain security interests in film collateral produced subject to their collective bargaining agreements so as to ensure satisfaction of obligations that accrue over the economic life of such films. *See*, Declaration of Joseph Kohanski, p. 3, ¶ 4 ("Kohanski Decl."). The Guilds obtain such security interests from the entity, or entities, that hold the right, under Copyright law, to make, distribute and otherwise exploit the film. Id. The Guilds perfect their security interests by recording them with the Copyright Office and, in a belt-and-suspenders manner, also file UCC Financing Statements ("UCC-1") in the jurisdiction of the applicable grantor(s) of the lien. Id. Cash collected by the Debtors through exploitation of pictures subject such security interests is "Collateral" within the ambit of those security interests.[4]

3. This practice is consistent with controlling case law, and is at odds with LAAC's mistaken focus on the Uniform Commercial Code ("UCC") in discussing perfection and priority of security interests in motion picture collateral. When it comes to motion picture collateral

---

[4] In each Security Agreement, "Collateral" is defined as follows: "All rights, title and interest of Owner throughout the universe in the Picture and all allied, ancillary and subsidiary rights, and all properties and things of value pertaining to the Picture, whether now existing or hereafter made, acquired or produced, including, without limitation, all screenplays, motion picture photoplays, and all other tangible and intangible manifestations of any copyrightable interest relating to the Picture, and all existing or hereafter acquired rights, title, interest and property of Owner described in Paragraphs (i) through (xx) below to the extent they relate to the Picture or the Pictures production or exploitation: (i) Accounts; (ii) Chattel Paper; (iii) Contracts; (iv) Copyrights; (v) Copyright Licenses; (vi) Documents; (vii) General Intangibles; (viii) Instruments; (ix) Insurance and Insurance Policies; (x) Inventory; (xi) Merchandising Rights; (xii) Music Rights; (xiii) Personal Property; (xv) Physical Properties; (xiv) Proceeds; (xvi) Product; (xvii) Rights in Product; (xviii) Trademarks; (xix) Trademark Licenses; and (xx) All substitutions, additions and accessions to all the foregoing; all guaranties of and security for all of the foregoing; and all the books and records relating to the foregoing." See e.g., JCP Decl., p. 3, ¶ 4(a), Exhibit B.

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

registered with the U.S. Copyright Office ("Copyright Office") the UCC is preempted. *See*, In Re World Auxiliary Power Company, 303 F.3d 1120, 1128 (9th Cir. 2002); ["For registered copyrights, the only proper place to file is the Copyright Office"]; *and at* p. 1132 ["the collateral at issue…was a movie library that got licensed out to exhibitors and, in the ordinary course, copyrights in such films would be registered."]; *see also*: In Re Peregrine Entertainment, Ltd. 116 B.R. 194 (C.D. Cal. 1990); In re AEG Acquisition Corp., 127 B.R. 34 (Bankr. C.D. Cal. 1991) *aff'd*, 161 B.R. 50 (B.A.P. 9th Cir. 1993) *lmtd by*, World Auxiliary.  Even a leading UCC commentary recognizes this principle.[5]  As substantiated by the Declaration of Jana Campeau-Przebieda ("JCP Declaration"), each of the Films have been registered with the Copyright Office. *See*, JCP Declaration, p. 3, ¶ 4, Exhibits A-E.   LAAC's assertions concerning lien perfection and priority must be evaluated with this guidance in mind, and these same principles demonstrate that the Guilds hold senior liens.

4. In two of the Films, each of the Guilds have an active, properly perfected and senior lien, as evidenced through recordation of the following materials with the United States Copyright Office:[6]

*The In Laws:*

  i. DGA: Security Agreement, recorded with the Copyright Office on August 24, 2004; Promissory Note Copyright Mortgage, recorded with the Copyright Office on October 6, 2006.
  ii. SAG: Security Agreement, recorded with the Copyright Office on July 23, 2002; Promissory Note Copyright Mortgage, recorded with the Copyright Office on October 6, 2006.

---

[5] *See,* Clark & Clark, The Law of Secured Transactions Under the Uniform Commercial Code: Revised Edition (2009), ¶1.08[1][e], p. 1-103 ["it all depends on whether the copyrights are federally registered. In general, if they are, federal filing is required and a UCC filing does no good."]

[6] The Union Entities do not, and cannot, know whether any other funds in the Debtors' accounts arise from the exploitation of other motion picture collateral.  To the extent payments received by the Debtors or the Trustee are traceable to a specific film, the Union Entities will be able to provide further evidence concerning its secured profile as to the applicable motion picture collateral.  Moreover, the Guilds' secured profile for all the Films, including UCC-1 Financing Statement filings, are described in detail in the schedule attached as Exhibit A, to the JCP Declaration.

   iii. <u>WGA</u>: Security Agreement, recorded with the Copyright Office on October 28, 2003; Promissory Note Copyright Mortgage, recorded with the Copyright Office on October 6, 2006.

*The Whole Ten Yards:*

   iv. <u>DGA</u>: Security Agreement, recorded with the Copyright Office on November 27, 2002; Security Agreement, recorded with the Copyright Office on December 12, 2002; Promissory Note Copyright Mortgage recorded with the Copyright Office on October 6, 2006.

   v. <u>SAG</u>: Security Agreement, recorded with the Copyright Office on December 5, 2002; Promissory Note Copyright Mortgage, recorded with the Copyright Office on October 6, 2006.

   vi. <u>WGA</u>: Security Agreement, recorded with the Copyright Office on October 28, 2003; Promissory Note Copyright Mortgage, recorded with the Copyright Office on October 6, 2006. *See*, <u>JCP Decl.</u>, at p.3, ¶ 4, Exhibits A-C; *See also,* <u>Kohanski Decl.</u>, pp. 3-4, ¶ 6, Exhibits A-C.

5. LAAC claims that "on or about March 2, 2007, Thinkfilm, FPLAC…and Zoorpraxis…entered into an Amended and Restated Credit and Security Agreement." *See,* <u>Motion</u>, p. 3, ¶1, lns. 9-13. Following that transaction, LAAC implies that it succeeded DB Zwirn's interest in the Films and claims that "DB Zwirn perfected [its] security interest by among other means, recording a Copyright Mortgage and Assignment dated November 3, 2006…with the United States Copyright Office…on November 9, 2006. <u>Id.</u> at p. 6, ¶ 14, lns. 15-18. Putting aside for the moment the dubious series of intercompany amendments, manipulations, transfers, and acquisitions, the earliest LAAC could claim that it is secured in the Films is November 3, 2006. Thus, even assuming that LAAC's position is valid and properly perfected, LAAC remains junior to each of the Guilds as to *The In Laws* and *The Whole Ten Yards*.

6. Notwithstanding that the Guilds' security interests are publicly recorded with the Copyright Office, LAAC posits uncertainty as to whether the Guilds' secured position remains in existence, through reference to a UCC Termination Statement filed in Delaware by counsel for DB Zwirn. *See*, <u>Motion</u>, p. 6, ¶ 16, lns. 2-15. As a matter of law, any such UCC Termination

1 Statement (referenced by LAAC in argument only and unsupported by any documentary evidence)

2 bears no effect on Guild liens recorded with the Copyright Office.  World Auxiliary 303 F.3d

3 1120, 1128 (9th Cir. 2002).  Moreover, as described in detail in the Kohanski Declaration, neither

4 FPLAC, DB Zwirn or any other entity, were (or are) authorized to terminate Guild liens pre-dating

5 the FPLAC-Guild transaction, although termination is appropriate for an additional lien granted to

6 the Guilds by FPLAC on October 3, 2006.  *See,* Kohanski Decl., pp. 3-6, ¶¶ 5-8.  Regardless of

7 LAAC's purported uncertainties – which could perhaps have been resolved through

8 communication with FPLAC's principal, David Bergstein – the Guilds are senior to any LAAC

9 interest in cash collateral relating to *The In Laws* and *The Whole Ten Yards*.

10

11 **THE UNION ENTITIES' POSITION CONCERNING THE CASH COLLATERAL**

12    7.    The Trustee has made clear that "[t]here won't be any use of any purported cash

13 collateral without a Court order."  *See*, Kohanski Decl., p. 5, ¶ 9,  Exhibit D.  With this

14 representation in effect, the Union Entities regret expenditure of time and resources, by this Court

15 and by parties-in-interest, in hearing argument on this matter.   Notwithstanding LAAC's

16 representations, the Union Entities do not believe that the Trustee will engage in any improper

17 conduct such that an order from this Court is "critical."   The Union Entities reserve all rights with

18 respect to use of cash collateral, but they are willing to work with the Trustee – and with LAAC –

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

1  in developing a reasonable structure within these convoluted proceedings.    The Guilds welcome

2  reasoned discourse concerning use of cash collateral, but are increasingly dismayed by a

3  continuing onslaught of LAAC filings that are not mindful of legal principles and public records

4  contradicting LAAC assertions of lien status and priority in connection with film collateral.

5  DATED: November 9, 2010          Respectfully submitted,

JOSEPH A. KOHANSKI
DAVID E. AHDOOT
MELVIN YEE
BUSH GOTTLIEB SINGER LÓPEZ
KOHANSKI ADELSTEIN & DICKINSON
A Law Corporation

By:   /s/ David E. Ahdoot
      DAVID E. AHDOOT
Attorneys for Creditors
Directors Guild of America, Inc., Screen Actors Guild, Inc., Writers Guild of America, West, Inc., Directors Guild of America- Producer Pension and Health Plans, Screen Actors Guild-Producer Pension and Health Plans, Writers Guild - Industry Health Fund and Producer-Writers Fuild of America Pension Plan, and Motion Picture Industry Pension and Health Plans

234477.1 12350-0000                          7

Statement Re Motion Re Cash Collateral