JEFFREY K. GARFINKLE (SBN 153496)
JOSEPH M. WELCH (SBN 259308)
BUCHALTER NEMER
A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone: (949) 760-1121
Facsimile: (949) 720-0182
Email: jgarfinkle@buchalter.com
  jwelch@buchalter.com

Attorneys for Movant
Library Asset Acquisition Company, Ltd.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>THINKFILM LLC,<br><br>Debtor. | Case No. 2:10-bk-19912-BR<br><br>Chapter: 11<br><br>**REPLY TO OPPOSITION OF TRUSTEE TO MOTION OF LIBRARY ASSET ACQUISITION COMPANY LTD. TO (1) PROHIBIT TRUSTEE FROM USING CASH COLLATERAL; (2) SEQUESTER CASH COLLATERAL AND (3) PROVIDE ACCOUNTING OF ALL POST-PETITION RECEIPTS**<br><br>Hearing:<br>Date:  November 23, 2010<br>Time:  2:00 p.m.<br>Place:  Courtroom 1668<br>  255 E. Temple Street<br>  Los Angeles, California 90012 |

Library Asset Acquisition Company Ltd. ("LAAC") hereby replies to the Trustee's opposition ("Opposition") to LAAC's motion to (1) prohibit Trustee from using cash collateral, (2) sequester cash collateral and (3) provide accounting of all post-petition receipts ("Motion") as follows:

BN 7612010v1

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**REPLY TO OPPOSITION TO MOTION TO PROHIBIT TRUSTEE FROM USING
CASH COLLATERAL. SEQUESTER CASH COLLATERAL AND PROVIDE ACCOUNTING**

## I. INTRODUCTION

The Opposition contends the Motion was filed "[i]n bad faith," "to harass the Trustee" and "as a transparent attempt to waste the time of the Court, the Trustee, and his counsel concerning $51,215." The truth, however, is that (1) the Trustee admittedly demanded turnover of funds ***"now so that the Trustee can pay ongoing (nonprofessional) expenses"***; and (2) only several days after LAAC challenged the Trustee's blatant disregard of the bankruptcy code and controlling Ninth Circuit law (and just before the Motion was filed), the Trustee ***conditionally*** recanted his position based on (a) an improper demand for "control agreements" and (b) promptly rescheduling Mr. Tutor's *third* 2004 examination. If the Trustee is willing to properly account for and use cash collateral (or concerned with preserving estate assets) then why depose Evan Warshawsky or even file the Opposition? Does the Trustee really believe there is less than $51,215 in applicable secured claims?

The Opposition is exclusively (and unsurprisingly) devoted to non-issues, hyperbole and red herrings. In fact, the Trustee does not cite *any* cases or statutes concerning a trustee's use (or non use) of cash collateral. Instead, the Trustee primarily complains about not having the details of Evan Warshawsky's employment (a recently hired consultant to *LAAC*) and hopes to once again argue about alleged enforceability/perfection issues.

On the day immediately after LAAC filed the Motion, this Court ordered that a lawsuit be commenced to determine enforceability, perfection and any other challenges to LAAC's secured claim that the Trustee intends to assert. The Motion merely seeks to preserve the status quo with respect to LAAC's cash collateral, in whatever amount, pending either the outcome of that lawsuit or LAAC obtaining relief from stay to enforce its rights and remedies on account of LAAC's secured claim.

There is nothing "purported" about LAAC's secured status. LAAC's has submitted numerous documents establishing the granting of security interests by certain Debtors and some of their affiliates, including FPLAC LLC and the perfection of those security interests by filings

BN 7612010v1                                1

**REPLY TO OPPOSITION TO MOTION TO PROHIBIT TRUSTEE FROM USING
CASH COLLATERAL. SEQUESTER CASH COLLATERAL AND PROVIDE ACCOUNTING**

with both the Delaware Secretary of State and the United States Copyright Office.  Any challenges to LAAC's secured status must be through a lawsuit.

Ironically then, the bad faith, harassment and waste of time complained of by the Trustee (and magnified by a remarkable deposition taken in connection with a simple, customary and straightforward cash collateral sequestration motion), more appropriately describe a shoe worn (comfortably) by the *Trustee*.  Until any issues related to LAAC's secured claim are resolved, judicially, the Trustee is obligated to preserve the status quo and respect LAAC's security interest and secured claim.  In sum, the Motion is uncontroverted as to the facts and law governing sequestration of cash collateral.  As a result, it must be granted.

## II. ALL ESSENTIAL FACTS ARE UNCONTROVERTED

### A. The Trustee's Stated Intention to *Use* Cash Collateral *Now*

On October 20, 2010, the Trustee "request[ed] that Mr. Bergstein accompany [the Trustee] to Bank of America to get all funds on deposit there transferred to new accounts in the Trustee's name."  The Trustee continued, "[t]his needs to be done now so that the Trustee can pay ongoing (nonprofessional) expenses." (See Exhibit 1 to Garfinkle Decl.)  On October 22, 2010, these funds were in fact transferred to the Trustee.

### B. The Trustee Improperly Refuses LAAC's Requests and Requires the Motion

On October 22, 2010 LAAC sent a letter to the Trustee challenging his blatant disregard for the Bankruptcy Code, the rights of all secured creditors[1] and controlling Ninth Circuit authority, which prohibits a trustee from using the proceeds of a secured creditor's collateral without either the secured creditor's consent or a court order showing that the secured creditor is adequately protected.  The letter further explained the Trustee's obligation to "seek affirmative

---

[1] Beyond LAAC, numerous other parties hold perfected security interests against various debtors and films.  Since his appointment, the Trustee appears to have ignored these secured claims.  Since the earliest days of his appointment, the Trustee has had a complete list of all films owned by ThinkFilm LLC, TFC LLC and various other affiliated non-debtor entities.  By now, the Trustee must have ascertained all interests and rights against each of the films that were recorded with the U.S. Copyright Office.  Likewise, the Trustee must have obtained UCC lien searches against the Debtors.  Presumably, the forthcoming report from the Trustee will identify with specificity each secured creditor, and the nature and scope of its security interest.

BN 7612010v1                                    2

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**REPLY TO OPPOSITION TO MOTION TO PROHIBIT TRUSTEE FROM USING
CASH COLLATERAL. SEQUESTER CASH COLLATERAL AND PROVIDE ACCOUNTING**

express consent from all [secured] parties before using cash collateral." (See Exhibit 2 to Garfinkle Decl.)

That same day the Trustee *refused* to sequester the funds, claiming they were no longer the proceeds of LAAC's collateral "because BofA never entered into control agreements with Zwirn." The Motion explains how the Trustee's position was wrong as a matter of both fundamental bankruptcy and UCC law. Noticeably, the Opposition neither attempts to refute LAAC's analysis nor addresses bankruptcy or UCC law on *cash collateral*.

Although the Trustee somewhat retreated from his position, he did not give any assurance that he would *unconditionally* comply with the law before the Motion was filed. In an e-mail sent to LAAC on October 25, 2010 (the day the Motion was filed), Mr. Gumport explains: "The Trustee ... won't use those funds until I advise him *after seeing how you respond – if at all – to my demands for all your control agreements and the exam you cancelled of Mr. Tutor*." (See Exhibit 6 to Gumport Decl. (emphasis added).) The Trustee does not (and cannot) support such a conditional position on cash collateral.

The Opposition alleges that LAAC was told "approximately $51,000 was all the funds that had been turned over to the Trustee, would be sequestered, and would not be used without further *notice*." (See Opposition at p.5, lns. 10-13 (emphasis added).) As shown above, the Trustee's response was not so generous and, even if the Trustee had promised notice first, *notice* is not tantamount to creditor consent or a court order. As a result, the Motion was both timely and necessary. It applies with equal force to the $51,215 that the Trustee has already received and any additional amounts the Trustee may receive in the future connected in any way with LAAC's security interests.

### C. The Union Entities' Statement is Misleading; LAAC Supports Immediate Payment to Union Entities of their Contractually Due Payments.

#### 1. Immediate Payment of Post-Petition Royalty Payments to the Union Entities Is Warranted.

As LAAC understands the Union Entities' statement of position and general nature of the Union Entities' pre-petition contractual rights, they are entitled to between 3-7% of certain

BN 7612010v1    3

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**REPLY TO OPPOSITION TO MOTION TO PROHIBIT TRUSTEE FROM USING CASH COLLATERAL. SEQUESTER CASH COLLATERAL AND PROVIDE ACCOUNTING**

revenues related to films against which the Union Entities perfected their security interest. According to the Union Entities' Statement of Position, they only have perfected security interests against two of the four films: *The In-Laws* and *The Whole Ten Yards*.

As established by the Motion, the total amount received on account of these two films was $45,565. Of this amount, the most the Union Entities may be entitled to receive is between $1,247 and $3,190. Remarkably, on account of this relatively *de minimus* sum and in response to a routine cash collateral sequestration motion, the Union Entities filed over 250 pages of pleadings.

To the extent the Union Entities hold a senior security interest against these two films, LAAC supports immediate payment to the Union Entities for the contractually due amounts. By now, the Trustee should know whether the Union Entities hold senior security interest against these two and other films and whether he intends to challenge their security interests. If the Trustee does not intend to challenge the Union Entities' security interest, then he should support immediate payment to the Union Entities.

2. The Union Entities' Other Statements are Misleading.

Paragraph 7 of the Union Statement is preceded by a subtitle "The Union Entities' Position Concerning the Cash Collateral" and explains "[t]he Trustee has made *clear* that '[t]here won't be any use of any purported cash collateral without a *Court order*.'" (See Statement at p. 6, ¶ 7 (emphasis added).) The Statement, however, noticeably fails to disclose that this promise was made only days *after* the Motion was filed - a fact revealed only by the underlying Kohansky Declaration (and applicable exhibit). Given the Trustee's varying comments - and failure to clearly and unequivocally address cash collateral in the Opposition - the Motion is still proper and should be granted.

**D.    A Lawsuit Is Required to Challenged LAAC's Secured Claim**

On October 26, 2010, during the hearing on LAAC's motion for relief from the automatic stay, the Court required that the Trustee's challenges to LAAC's secured claim be addressed by a lawsuit. The Court specifically stated the following:

BN 7612010v1    4

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**REPLY TO OPPOSITION TO MOTION TO PROHIBIT TRUSTEE FROM USING
CASH COLLATERAL. SEQUESTER CASH COLLATERAL AND PROVIDE ACCOUNTING**

> "...the validity of the security interest can only be resolved by an adversary proceeding." (Hearing transcript, p. 44, lns. 5-7.)
>
> "Somebody is going to have to file an adversary proceeding to determine various validities." (Hearing transcript, p. 44, lns. 17-18.)
>
> "...I really think this is what adversary proceedings, regular complaint and answer and so forth are made of." (Hearing transcript, p.45, lns. 7-9.)

The Court clearly wants a lawsuit – and not merely a motion or opposition - to determine any challenges to LAAC's secured claim. The Trustee's Opposition, therefore, is premature and improper. For now, the Trustee must account for, sequester and refrain from using cash collateral without either (1) all secured creditors' consent (including LAAC) or (2) a court order showing that secured creditors are adequately protected.

### E. The Warshawsky Declaration

The Trustee claims the Warshawsky declaration "provides patently inadmissible legal conclusions concerning the perfection of LAAC's security interests." (Opposition at p. 2, lns. 16-17.) Once again, the bark is greater than the bite. The Trustee's evidentiary objections (which surprisingly ignore the court's instructions at the lift stay hearing on properly formatting evidentiary objections), largely object to just a few words or lines introducing (or referring to) security documents properly admitted. Although Federal Rule of Evidence 704 specifically allows a declarant to embrace ultimate issues to be decided by the trier of fact, LAAC does not file any responses to the Trustee's evidentiary objections because the security documents (and conclusions as to LAAC's prima facie security interest in the Motion) are unopposed.

The Trustee next attacks the *credibility* of the Warshawsky declaration because, at Warshawsky's deposition, taken in connection with a routine cash collateral sequestration motion: (1) LAAC directed Warshawsky not to answer questions regarding his *post-petition* compensation with *LAAC* (although Warshawsky did answer questions about his *pre-petition* compensation with *Debtors*); (2) Warshawsky did not personally see ThinkFilm bank account statements confirming transfers of more than $29 million (although Warshawsky did testify about the applicable agreements and the Trustee can verify such funds from public documents filed in

BN 7612010v1    5

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**REPLY TO OPPOSITION TO MOTION TO PROHIBIT TRUSTEE FROM USING
CASH COLLATERAL. SEQUESTER CASH COLLATERAL AND PROVIDE ACCOUNTING**

the Franchise Pictures LLC bankruptcy);[2] and (3) Warshawsky has no knowledge whether any copyright mortgage was ever filed against CapCo Group (even though CapCo does not have a recorded interest in any of the four subject films).

The Trustee's choice to depose Evan Warshawsky in connection with a cash collateral motion concerning $51,215 (which the Trustee purportedly agrees with and declares as unnecessary) is baffling and utterly wasteful. LAAC was and is merely seeking to preserve the status quo relating to its cash collateral. And the admissibility or credibility attacks on the Warshawsky declaration, which merely authenticates and sets forth the history behind various security documents, are simply irrelevant and/or unavailing.

## III.    THE MOTION MUST BE GRANTED

Noticeably, the Trustee does not argue *any* law concerning cash collateral. The Opposition does not cite section 363 of the Bankruptcy Code or mention controlling Ninth Circuit case law on the subject. Further, the Trustee does not attempt to explain his position on "control agreements," or discuss the Commercial Code on perfected security interests. Instead, the Opposition focuses exclusively on red herrings - insiders, equitable subordination and other supposed enforceability issues – all to be properly addressed in the court-mandated lawsuit. Until these matters are decided or settled, the Trustee is obligated to follow the law protecting secured creditors (including LAAC). Coercive tactics and improper threats cannot be countenanced by this Court.

---

[2] Of all of the Trustee's assertions, this is perhaps the most ridiculous. Apparently, the Trustee intends to contend that because DB Zwirn paid moneys directly to third parties to enable FPLAC to acquire assets out of the Franchise Pictures bankruptcy case (pursuant to a long final order of Judge Tighe), LAAC (as the successor to DB Zwirn under the "Thinkfilm Loan") somehow is not entitled to hold a secured claim against FPLAC, Thinkfilm or any of the other borrowers. Of course, the Trustee offers no support for this position.

BN 7612010v1                6

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**REPLY TO OPPOSITION TO MOTION TO PROHIBIT TRUSTEE FROM USING
CASH COLLATERAL. SEQUESTER CASH COLLATERAL AND PROVIDE ACCOUNTING**

## IV. CONCLUSION

Based on the foregoing, LAAC respectfully requests that the Motion be granted.

DATED: November 16, 2010

BUCHALTER NEMER
A Professional Corporation

By: /s/ *Jeffrey K. Garfinkle*
JEFFREY K. GARFINKLE
Attorneys for Movant
LIBRARY ASSET ACQUISITION COMPANY, LTD

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 7612010v1                                         7

**REPLY TO OPPOSITION TO MOTION TO PROHIBIT TRUSTEE FROM USING
CASH COLLATERAL. SEQUESTER CASH COLLATERAL AND PROVIDE ACCOUNTING**