Steven Jay Katzman, (SBN 132755)
skatzman@bmkattorneys.com
Anthony R. Bisconti, (SBN 269230)
tbisconti@bmkattorneys.com
**BIENERT, MILLER & KATZMAN, PLC**
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700/Facsimile (949) 369-3701

Attorneys for Interested Party
David R. Bergstein

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA –LOS ANGELES DIVISION

| | |
|---|---|
| IN RE | Case No. 2:10-bk-19912-BR |
| THINKFILM, LLC | Chapter 11 |
| Debtor. | **OMNIBUS REPLY OF DAVID R. BERGSTEIN IN SUPPORT OF MOTION TO DISMISS DEBTOR'S BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 1112(b)** |
| | [Declaration of David R. Bergstein, Declaration of Anthony R. Bisconti, Objection to Request for Judicial Notice, and Evidentiary Objections filed concurrently] |
| | <u>Hearing Information:</u><br>Date:  April 28, 2015<br>Time: 10:00 a.m.<br>Place: Courtroom 1668<br>255 E. Temple St.<br>Los Angeles, CA 90012 |
| | Judge: Hon. Barry Russell |

# TABLE OF CONTENTS

**Page(s)**

I.   PRELIMINARY STATEMENT IN RESPONSE TO OPPOSITIONS ......................................1

II.  THE COURT SHOULD GRANT MR. BERGSTEIN'S MTD......................................................5

    A.   The Oppositions Fail To Rebut The Showing That There Is Substantial Or
        Continuing Loss To Or Diminution Of The Estates And No Reasonable
        Likelihood Of Rehabilitation. ...........................................................................................5

        1.   There Is A Substantial Or Continuing Loss To Or Diminution Of The
              Estates. ..................................................................................................................5

        2.   There Is No Reasonable Likelihood Of Rehabilitation.......................................10

    B.   The Oppositions Fail To Rebut The Showing That There Has Been Gross
        Mismanagement Of The Estates Rendering Recovery For Creditors Impossible. ..........12

    C.   The Oppositions Fail To Rebut The Showing That There Has Been No Plan
        Confirmed After Five (5) Years And There Is No Ability To Effectuate A Plan. ..........13

    D.   There Are No "Unusual Circumstances" Preventing Dismissal......................................15

        1.   The Oppositions Fail To Satisfy Their Burden Of Establishing "Unusual
              Circumstances." ...................................................................................................15

        2.   The Only "Unusual Circumstances" Are The Trustee's Deceptive Tactics
              And Desire To Continue To Pursue Meritless Litigation Having No
              Demonstrated Value To The Estates.....................................................................18

III. CONCLUSION....................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*9281 Shore Rd. Owners Corp. v. Seminole Realty Corp. (In re 9281 Shore Rd. Owners Corp.)* 187 B.R. 837 (E.D.N.Y. 1995) .................................................................................16

*De Jounghe v. Mender* 334 B.R. 760 (1st Cir. BAP 2005).................................................................14

*Hassen Imports P'ship v. City of W. Covina (In re Hasse Imports P'ship)* BAP No. CC–13–1042–KiPaD, 2013 WL 4428508 (B.A.P. 9th Cir. Aug. 19, 2013)...................................5

*In re Brook* 488 B.R. 483 (Bankr. N.D. Ga. 2013)..................................................................................14

*In re Erkins* 351 B.R. 218 (Bankr. M.D. Fla. 2006) ............................................................................14

*In re Fed. Roofing Co., Inc.* 205 B.R. 638 (Bankr. N.D. Ala. 1996).................................................14

*In re Hoyle* No. 10-01484-TLM, 2013 WL 210254 (Bankr. D. Idaho Jan. 17, 2013) ...........................15

*In re Kent* No. 2:07-bk-03238-SSC, 2008 WL 5047799 (Bankr. D. Ariz. Sept. 23, 2008) .................................................................................................15

*In re The 1031 Tax Group, LLC* 374 B.R. 78 (Bankr. S.D.N.Y. 2007)................................................15

*In re Tornheim* 181 B.R. 161 (Bankr. S.D.N.Y. 1995).........................................................................14

*In re Wide W. Servs., LLC*, No. 13-12551-A11, 2013 WL 5201383 (Bankr. E.D. Cal. Sept. 12, 2013) .........................................................................................................................5

*Loop Corp. v. United States Trustee* 290 B.R. 108 (D. Minn. 2003) .........................................5

*Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.* 374 B.R. 556 (Bankr. M.D. Pa. 2007) ......................................................................................10

**Statutes**

11 U.S.C. § 1112..............................................................................................................................*passim*

David R. Bergstein[1] files this omnibus reply (the "Reply") to the oppositions (collectively, the "Oppositions," and each individually an "Opposition") to Mr. Bergstein's MTD filed by: (i) the Trustee; (ii) The Directors Guild of America, Inc., Screen Actors Guild—American Federation of Television and Radio Artists and Writers Guild of America West, Inc. (collectively, the "Guilds"); (iii) Allied Advertising Limited Partnership ("Allied"); (iv) Dark Productions, LLC ("DP"); and (v) Film Fleet of Louisiana, LLC ("Film Fleet" and, together with the Trustee, Guilds, Allied, and DP, the "Opposing Parties").[2]  For the reasons stated in Mr. Bergstein's MTD, and as more fully set forth below, the Court should grant Mr. Bergstein's MTD.

## I.    PRELIMINARY STATEMENT IN RESPONSE TO OPPOSITIONS

The Oppositions do not rebut the showing of cause for dismissal and fail to establish any "unusual circumstances" preventing dismissal at this time.  The Trustee's Opposition contains numerous improper, misleading, and demonstrably false statements that only further support dismissal.  These unfortunate but increasingly characteristic tactics of the Trustee include, but are not limited to:

- The Trustee's repeated assertion that he must be afforded time to obtain financial statements provided to Comerica Bank ("Comerica"), which the Trustee claims were concealed and only disclosed for the first time in the amended schedules filed by Mr. Bergstein on April 6, 2015 (the "4/6/15 Schedules").[3]  A lynchpin of the Trustee's Opposition is that he needs to obtain these financial statements, which will somehow (the Oppositions make no attempt to explain how) assist him in his continued path of litigation.  In fact, the Trustee: (i) has possessed

---

[1] All capitalized terms used herein shall have the meaning given to them in the *Notice of Motion and Motion to Dismiss Debtor's Bankruptcy Case Pursuant 11 U.S.C. § 1112(b)* ("Mr. Bergstein's MTD"), filed by Mr. Bergstein on April 7, 2015, unless otherwise specifically noted.

[2] The Trustee and the Guilds each filed substantially identical versions of their respective Oppositions in each of the Bankruptcy Cases.  Allied and DP filed their respective Oppositions only in the Thinkfilm Case.  Film Fleet filed its Oppositions only in the CapCo Case.  For purposes of efficiency, substantially identical versions of this Reply will be filed in each of the Bankruptcy Cases.  The Oppositions filed by the Guilds, Allied, DP, and Film Fleet largely make arguments raised by the Trustee in his Opposition and, accordingly, the Reply will largely address the Trustee's Opposition, and specifically respond to any unique points raised in the other Oppositions where noted.

[3] *See, e.g.*, Trustee's Opposition, at 4:20-26.

1

the Comerica-provided financial statements[4] since no later than 2011; (ii) obtained the Comerica-provided financial statements pursuant to a Rule 2004 application against Comerica during 2010 and 2011; (iii) attached to his *Report of Investigation by Chapter 11 Trustee* (the "Trustee's Report") filed in April 2011 numerous exhibits relating to a proposed loan with Comerica and the financial statements provided to Comerica; (iv) was also provided with copies of Comerica-provided financial statements and other financial information which were attached as exhibits to AEF's joinders to the Trustee's first and second motions for substantive consolidation in July 2011 and August 2012; and (v) specifically questioned Evan Warshawsky regarding Comerica-provided financial statements in a Rule 2004 deposition in November 2011.[5] The Trustee's repeated assertion that the Comerica-provided financial statements were somehow concealed and disclosed for the first time in the 4/6/15 Schedules is belied by the record, *including the Trustee's own filings* which demonstrate his possession of the financial statements for years.

- The Trustee's eleventh-hour representation that he and his professionals will limit their compensation to 45% of any net recoveries and disingenuous argument that this cap will allow a distribution to unsecured creditors.[6] The Trustee's stated willingness to limit compensation does not mean that this Court should permit him to continue to pursue destructive and meritless litigation, most of which this Court has already dismissed. Moreover, the Trustee presents *no economic analysis* (nor has he ever) showing there will be *any* recovery by the Estates, let alone one sufficient to make a distribution to creditors, which can occur only after amounts owed to SCIC under the October 2012 Settlement (currently $6.5 million) are satisfied. As the example provided in the reply brief filed by AEF and SCIC makes clear, even assuming a hypothetical recovery of $35 million (an amount the Trustee would never come close to

---

[4] While the 4/6/15 Schedules list that financial statements were provided to Comerica in "2010," subsequent information provided to Mr. Bergstein demonstrates that, in fact, the correct date was six months earlier, in June of 2009. *See* Declaration of David R. Bergstein in support of the Reply (the "Bergstein Reply Decl."), at ¶¶ 3 & 4.
[5] *See* Declaration of Jeffrey K. Garfinkle filed on April 21, 2015 in each of the Bankruptcy Cases (the "Garfinkle Decl."), at ¶¶ 13-27 & Exs. 4-9.
[6] *See* Trustee's Opposition, at 19:16-23.

OMNIBUS REPLY IN SUPPORT OF MOTION TO DISMISS

obtaining), the resulting distribution to "non-insider" creditors would be *de minimis*—AEF and SCIC estimate only approximately $160,000 per Estate, even with the Trustee's 45% "cap."

- Regarding a letter agreement dated June 9, 2003 between 1483830 Ontario Inc., dba Thinkfilm ("ThinkFilm Canada") and Modern Entertainment (the "June 9, 2003 Letter"), the Trustee's counsel states, under penalty of perjury "…**LAAC and its counsel never told me about the [June 9, 2003 Letter]**, which I found by going through more than 100 boxes of records turned over to Trustee after I obtained turnover orders against the Debtors on behalf of the Trustee in 2010 . . . ."[7]  In fact: (i) LAAC's counsel gave the Trustee's counsel *twenty-nine (29) copies* of the June 9, 2003 Letter on July 27, 2010; and (ii) LAAC (and Zelus) filed a motion for relief from stay on January 22, 2014 in which it identified the only films which it believed had active distribution rights, none of which were those identified in the June 9, 2003 Letter.[8]  In any event, the Trustee fails to explain the materiality of the June 9, 2003 Letter, if any.

The extent of the Trustee's dishonest and abusive litigation tactics are further evidenced by his gross misuse of the mediation process in an attempt to gain an improper advantage with respect to dismissal of the Bankruptcy Cases.  The Trustee states as a purported basis for the Court to deny Mr. Bergstein's MTD that "the Trustee is currently participating in judicially-supervised settlement negotiations with Bergstein. Dismissing the Cases will prevent those discussions from having a successful result for the Estates."[9]  The Trustee and his counsel made similar statements in their respective declarations.[10]  As a result, Judge Bason, as mediator, has authorized Mr. Bergstein to disclose the following:

///

///

///

///

---

[7] Declaration of Leonard Gumport in support of the Trustee's Opposition (the "Gumport Decl."), at ¶ 11 (emphasis added).

[8] *See* Garfinkle Decl., at ¶¶ 3-12 and Exs. 1-3.

[9] Trustee Opposition, at 11:23-25.

[10] *See* Declaration of Ronald L. Durkin in support of Trustee's Opposition (the "Durkin Decl."), at ¶ 10; *see also* Gumport Decl. at ¶ 46.

3

OMNIBUS REPLY IN SUPPORT OF MOTION TO DISMISS

(1) The Trustee and his counsel agreed, as a condition of the Mediation, that the administration and litigation in the Bankruptcy Cases would proceed and not be affected by the Mediation, including the filing of the amended schedules and the motions seeking dismissal of the Bankruptcy Cases;[11]

(2) on April 14, 2015, Mr. Bergstein requested the termination of any future mediation involving the Trustee and/or his counsel, on the stated basis that Mr. Bergstein believed the Trustee breached his agreement that there would be no standstill due to the Mediation; and

(3) Judge Bason has not scheduled any further Mediation.

Ignoring the unsubstantiated rhetoric and obfuscation in the Oppositions, they amount to this: The Trustee just needs more time. However, after: (i) more than five (5) years; (ii) two failed attempts at substantive consolidation which did not "even come close;" (iii) the Trustee's own attempt to have the Bankruptcy Cases dismissed and admission that "there is nothing to reorganize;" (iv) the Trustee's abdication of his ability and right to prosecute the Estates' claims to SCIC (which the Trustee necessarily represented was in the best interests of the Estates); (v) this Court's dismissal of attempts to equitably subordinate indisputably valid security interests; (vi) the adjudication of roughly a hundred adversary proceedings (many of which the Estates could not even move past the pleadings stage); (vii) the absence of any submitted plan since 2012 (which even then was lodged, not filed); (viii) the accrual of millions of dollars of administrative fees; (ix) no demonstration of any likelihood of recovery for unsecured creditors; and (x) the determination by SCIC (to whom the Trustee gave the "exclusive right to control any litigation" including to "abandon, settle, compromise, appeal or otherwise resolve" such litigation) that the litigation should be dismissed—cause for dismissal is clearly present. The only "unusual circumstances" are the Trustee's troubling tactics and unjustified desire to continue pursuing destructive, meritless litigation in the name of the Estates where he is unable to establish any benefit to the Estates.

Accordingly, the Court should grant Mr. Bergstein's MTD.

///

///

---

[11] Moreover, the Trustee agreed and acknowledged, in the request for assignment to mediation, that "**There is no standstill agreement among the Parties**." *See* R2D2 Case, Doc. No. 2078 (Request for Assignment to Mediation), at narrative attached thereto, ¶ 6 (emphasis added).

## II.   THE COURT SHOULD GRANT MR. BERGSTEIN'S MTD

**A.    The Oppositions Fail To Rebut The Showing That There Is Substantial Or Continuing Loss To Or Diminution Of The Estates And No Reasonable Likelihood Of Rehabilitation.**

**1.    There Is A Substantial Or Continuing Loss To Or Diminution Of The Estates.**

The Trustee's Opposition contends that the Estates are not suffering from continuing loss or diminution.[12]  As an initial matter, the Trustee fails to address the fact that, despite filing monthly operating reports disclosing combined receipts for the Estates of only $157,428.98 after five (5) years, the remaining cash on hand has been diminished to only $106,213.98,[13] which alone *prima facie* demonstrates diminution of the Estates.  The Trustee also fails to overcome the numerous points raised Mr. Bergstein's MTD demonstrating cause for dismissal.

**First:** The Trustee fails to adequately address the fact that the past and continued accrual of substantial administrative fees in the Bankruptcy Cases, including but not limited to the approximately $6.5 million SCIC incurred in implementing the October 2012 Settlement, also establishes the "substantial or continuing loss to or diminution of the estate" prong of 11 U.S.C. § 1112(b)(4)(A).  "The continuing loss element of § 1112(b)(4)(A) may be satisfied by showing a loss that will 'materially negatively impact the bankruptcy estate and the interest of creditors' or 'dwindling liquidity, or illiquidity resulting in unpaid postpetition debts which usually constitute administrative expenses that will take priority over prepetition claims."  *In re Wide W. Servs., LLC*, No. 13-12551-A11, 2013 WL 5201383, at *3 (Bankr. E.D. Cal. Sept. 12, 2013) (citing *Hassen Imports P'ship v. City of W. Covina (In re Hasse Imports P'ship)*, BAP No. CC–13–1042–KiPaD, 2013 WL 4428508, at *13 (B.A.P. 9th Cir. Aug. 19, 2013)); *see also Loop Corp. v. United States Trustee*, 290 B.R. 108, 113 (D. Minn. 2003) (affirming bankruptcy court's determination of

///

---

[12] *See* Trustee's Opposition, at 15:21-20:12.

[13] *See* ThinkFilm Case, Doc. No. 2073; R2D2 Case, Doc. No. 2166; CT-1 Case, Doc. No. 1982; CFD Case, Doc. No. 1774; and Capco Case, Doc. No. 1877 (March 31, 2015 monthly operating reports).  The Film Fleet Opposition wrongly contends that a difference in CapCo's Schedule F between previously filed schedules and the 4/6/15 Schedules demonstrates that there is no continuing loss to or diminution of the Estate.  *See* Film Fleet Opposition, at 4:7-16.  However, this argument reflects a fundamental misunderstanding of the schedules, which reflect CapCo's assets and liabilities *as of the petition date*; any differences in amended schedules do not evidence a change in those values in between amendments, but rather a revision to the amounts as of the petition date.

"cause" based on continuing loss under § 1112(b)(4)(A) due to the continued accrual of administrative expenses).

Instead of responding to the above authority, the Trustee takes the position because no fee application by SCIC has been submitted and approved, the Court should simply disregard the massive amount of fees and costs that SCIC has incurred under the October 2012 Settlement, which are entitled to full payment before any distribution to the Estates, subject only to Court approval. The Trustee asserts (without support) that the Estates "may never be liable for SCIC's stated administrative claims."[14]   In making this argument, the Trustee implicitly asks this Court to forget that it has personally overseen every aspect of these Bankruptcy Cases for the last five (5) years, including the massive amount of litigation that followed the approval of the October 2012 Settlement. While the Trustee may not be happy with the results of that litigation, he is not free to disregard the provisions of the October 2012 Settlement, which was approved by a now final and non-appealable order of this Court.

**Second:** The Trustee's representation that he and his professionals will agree to limit their compensation to "45% of net recoveries actually made in the future"[15] does not remedy the clear fact that substantial administrative claims have been accruing during the pendency of these Bankruptcy Cases with no hope of being paid. The Trustee has chosen not to disclose the actual amount of administrative fees he and his professionals have incurred to date, and does not dispute the estimate in Mr. Bergstein's MTD that the Estates' non-SCIC administrative claims, primarily the Trustee and his counsel's fees, "are likely in the millions of dollars as well."[16]   Additionally, the Trustee does not—nor can he—provide any information regarding what the "45%" represents in terms of dollar amounts. Forty-five percent (45%) of nothing is nothing, and the Trustee has made no showing that there will be any recovery for the Estates.

The Trustee's belated representation that he will cap his fees and expenses at 45% of any net recovery (made only after cause for dismissal has been demonstrated) does not mean that he should therefore be permitted to continue to pursue meritless litigation. This is particularly true where the party with exclusive authority over that litigation (SCIC) has vigorously litigated it on behalf of the Estates and ultimately determined that its continued pursuit is not warranted.

---

[14] Trustee's Opposition, at 16:25-26.
[15] *Id.* at 17:7-9.
[16] Mr. Bergstein's MTD, at 9:12-14.

**Third:** The Trustee <u>does not dispute</u> that the litany of lawsuits filed on behalf of the Estates has resulted in <u>no economic recovery for the Estates to-date</u>.  Instead, the Trustee asks the Court to accept his "roadmap" which he asserts, based on his purported "business judgment" (without presenting any legitimate facts upon which that "business judgment" is based), will allow the Trustee to obtain a recovery and make a distribution to unsecured creditors pursuant to a Chapter 11 plan.[17]  The Trustee's "roadmap" is full of dead-ends, fatally flawed, and consists solely of the following:

- Obtaining financial statements provided to Comerica, which the Trustee appears to contend he learned of for the first time from the 4/6/15 Schedules.[18]  However, the Trustee has possessed the Comerica-provided financial statements since no later than 2011 (and possibly as early as 2010).    Specifically: (i) the Trustee obtained the Comerica-provided financial statements pursuant to a Rule 2004 application against Comerica during 2010 and 2011; (ii) the Trustee attached numerous exhibits relating to a proposed loan with Comerica and financial statements provided to Comerica to his April 2011 Trustee's Report, evidencing his possession of the same; (iii) AEF submitted many Comerica-provided financial statements and other financial information in connection with its joinders to the Trustee's first and second motions for substantive consolidation in July 2011 and August 2012; and (iv) the Trustee specifically questioned Evan Warshawsky regarding the Comerica-provided financial statements in a Rule 2004 deposition in November 2011,[19] strongly corroborating the fact that the Trustee possessed the same at that time.

- Obtaining leave to withdraw the remaining derivative standing of SCIC.[20]  The Trustee's efforts in this regard are being addressed in the concurrently pending *Motion of Trustee for Order that Pursuant to Paragraph F of the May 2013 Settlement Orders, Withdraws the Derivative Standing of Screen Capital International Corp. To Act on Behalf of the Bankruptcy Estates* (the "Derivative Standing Motion").  In any event, the Trustee does not even attempt to explain which litigation (if any) he intends to pursue or defend if the Derivative

---

[17] *See* Trustee's Opposition, at 18:1-24.
[18] *See id.* at 18:8-10.
[19] *See* Garfinkle Decl., ¶¶ 13-27 & Exs. 4-8.
[20] *See* Trustee's Opposition, at 18:10-11.

OMNIBUS REPLY IN SUPPORT OF MOTION TO DISMISS

Standing Motion is granted, let alone the merits of such litigation or potential benefit to the Estates.

- "[S]eeking reconsideration of this Court's prior denial of the substantive consolidation motions"[21]—which will be the Trustee's *third* attempt at substantive consolidation. However, the Trustee provides no explanation as to what has changed since the Court's denial of the Trustee's last attempts, which did not "even come close" to meeting the standard for substantive consolidation in this circuit. Nothing has changed that would provide such a basis.

- "[S]eeking leave to file amended complaints (including complaints against LAAC) reflecting new but still incomplete information disclosed in the 4/6/15 Schedules."[22] However, the Trustee fails to identify which "amended complaints" he intends to file, or explain what purported benefit they may have to the Estates. Presumably this will include an amended complaint seeking equitable subordination of the secured claims held by LAAC. The Court has already dismissed the Estates' attempt to equitably subordinate LAAC's secured interest.[23] This was not done on a whim; the Court gave the Estates *three* opportunities to file a complaint setting forth a cognizable claim before dismissing the claim. While the District Court entered an order reversing and remanding that portion of this Court's order, the District Court took such action based on the mistaken conclusion that this Court did not decide the merits of LAAC's challenge to SCIC's equitable subordination claim.[24] However, as this Court subsequently made clear, "But I wonder if you both realize how . . . really messed up this was, and how the remand probably should have never happened . . . I dismissed the subordination, not because it had to be done by motion; just the contrary. It was because there was no purpose, since [LAAC] didn't have an allowable claim. Why deal with that?"[25]

This "roadmap" does not undermine Mr. Bergstein's demonstration of cause for dismissal—it

---

[21] *Id.* at 18:11-13.
[22] *Id.* at 18:13-14.
[23] *See* Declaration of Anthony R. Bisconti in support of the Reply (the "Bisconti Decl."), Ex. 1 (Orders Dismissing Adversary Proceeding).
[24] *See id.*, Ex. 2 (District Court Order), at 3.
[25] *Id.*, Ex. 3 (Transcript of Proceedings held on June 17, 2014), at 2:14-16.

OMNIBUS REPLY IN SUPPORT OF MOTION TO DISMISS

bolsters it by showing that the Trustee has no reasonable likelihood of obtaining any recovery for the Estates.  To compound matters, the Trustee's "roadmap" is conspicuously devoid of any economic analysis regarding the feasibility of the Trustee's proposed course of action and benefit to the Estates.  After five years, the Trustee's inability to present this analysis at this stage speaks volumes.

**Fourth:**  The Trustee fails to make any showing that there is a realistic prospect of making any distribution to unsecured creditors.  Under the October 2012 Settlement SCIC is entitled to have all of its out of pocket attorneys fees and costs reimbursed before the Estates receive anything, and that amount is currently at $6.5 million.[26]  The fact that SCIC has not filed a fee application yet does not change this reality.  Further, the Trustee's representation that he will limit the compensation of himself and his professionals to 45% of any net recovery also does not change this equation, since the Trustee has made no showing that the Estates will recovery *anything*, let alone any amount in excess of the amount to which SCIC is entitled; accordingly, the Trustee's self-imposed cap has only an illusory benefit to the Estates.

**Fifth**:  The Trustee contends "the Estates consist of disputed rights (which are not diminishing in value), funds in the Estates' bank accounts (which are not diminishing in value), and records (which are not diminishing in value)."[27]  The Trustee presents no evidence that these purported assets are not diminishing in value and, in fact, the monthly operating reports show that the amount of cash on hand has decreased[28] (and hence, is diminishing in value).

The Trustee fails to identify with any specificity the nature of the purported "disputed rights."  To the extent these "disputed rights" relate to interests in film assets, the Trustee does not dispute that he has not marketed or otherwise introduced those assets into the stream of commerce.  The Trustee presents no evidence or argument demonstrating that he has made any effort whatsoever to do so.  Instead, he presents an email exchange with LAAC's counsel from October 2010, which only sets forth LAAC's objection "to any use of its cash collateral to pay **any expenses of the Debtors or the Trustee**"[29]—there is no discussion regarding the marketing or other exploitation of this collateral.  Given that the interest in such rights is

*///*

---

[26] *See* Molner Decl., ¶ 3.
[27] Trustee's Opposition, 19:26-28.
[28] *See, supra*, n. 26.
[29] Gumport Decl., Ex. 8 (emphasis added).

OMNIBUS REPLY IN SUPPORT OF MOTION TO DISMISS

finite, as more time passes with the Trustee failing to exploit those assets (or any attempt the Trustee has made to do so), their value is necessarily decreasing.

**Sixth:** The Trustee makes no effort to address the fact that, due to the releases the Trustee granted to various individuals and entities for *no financial consideration* during the course of the Bankruptcy Cases—including AEF, SCIC, and their former counsel—other assets of the Estates, namely claims against these entities, have not only been diminished, but completely eliminated.  By way of example, the Trustee required Mr. Bergstein to dismiss the Debtors as plaintiffs in the action against Susan Tregub, which resulted in a judgment in excess of $50 million in favor of the plaintiffs.  Likewise, the Trustee released AEF, SCIC and their former counsel in the October 2012 Settlement, while Mr. Bergstein obtained a $6 million allowed claim against AEF (in addition to other financial consideration) based on the same or similar conduct giving rise to substantial claims of the Estates against these entities.[30]

Based on the foregoing, and for the reasons set forth in Mr. Bergstein's MTD, the evidence establishes a substantial or continuing loss to or diminution of the Estates.

### 2.      There Is No Reasonable Likelihood Of Rehabilitation.

As the Trustee himself concedes, "[t]here must be a reasonable possibility of a successful reorganization within a reasonable time.  The court usually requires the debtor to do more than manifest unsubstantiated hopes for a successful reorganization."  *Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.)*, 374 B.R. 556, 562 (Bankr. M.D. Pa. 2007) (quoted and cited in the Trustee's Opposition at 20:14-18).  The Oppositions present only speculative, unsubstantiated "hope" for rehabilitation.  This is insufficient.

**First:**  The Trustee has already admitted, nearly four (4) years ago, that "there is nothing to reorganize" in these Bankruptcy Cases.[31]  Furthermore, the Trustee does not dispute that there are no businesses to rehabilitate, meaningful funds, operations, or business activities to generate revenue to pay

///

---

[30] The Film Fleet Opposition suggests that Mr. Bergstein's allowed claim in the Aramid Bankruptcy Case is an asset that may be recoverable by the Estates.  This dubious claim has no basis in fact or law, particularly since the Trustee granted AEF, SCIC, and their former lawyers full releases for no financial consideration.

[31] Katzman Decl., Ex. 6 (Trustee's Motion to Dismiss or Convert), at 10.

ongoing administrative costs.   Instead, the Trustee makes various assertions regarding the 4/6/15 Schedules, none of which, even if true, demonstrate that there is a reasonable likelihood of rehabilitation.

The Trustee contends that the 4/6/15 Schedules: (i) disclose for the first time that financial statements were provided to Comerica; (ii) identify that R2D2 has an ownership interest in Pangea; and (iii) identify that Capco has an ownership interest in TFC Library, LLC ("TFC").[32]   However, (a) the Trustee has had the Comerica-provided financial statements since at least 2011; (b) this Court entered an (unstayed) order determining that R2D2 was the 100% owner of Pangea on January 9, 2012;[33] and (c) the Trustee has known since roughly the commencement of these Bankruptcy Cases that the assets of TFC are fully encumbered, and the Estates have pursued (unsuccessfully) litigation to avoid the transfer of assets to TFC and equitably subordinate secured interests.  Nothing contained in the 4/6/15 Schedules changes the fact that there is no reasonable likelihood of rehabilitation.

The Trustee also falsely claims that "there remain significant discrepancies in the film assets scheduled" in the 4/6/15 Schedules. The Trustee asserts that this "discrepancy" is that the 4/6/15 Schedules include "purported rights in film titles named Red Fury, Harry Tracy, Eternal Evil, Sweet Lorrain, A Stranger Waits, Invisible Strangler, Patriots, and Tickets to Heaven," but that "ThinkFilm's rights in those film titles reverted to Modern Entertainment by letter dated June 9, 2003."[34]  In fact, the continuation page to Schedule B in the 4/6/15 Schedules filed in the ThinkFilm Case attaches several exhibits, and notes that the identified distribution agreements "may have expired prior to or since the Petition Date," and that the list of film and video elements were "previously held by Debtor" and were included "for information purposes only."  Accordingly, there is no "discrepancy."

The Trustee's false representations do not end there.  With respect to the June 9, 2003 Letter, the Trustee's counsel states in his declaration, under penalty of perjury:

> …**LAAC and its counsel never told me about the [June 9, 2003 Letter]**, which I found by going through more than 100 boxes of records turned over to Trustee after I obtained turnover orders against the Debtors on behalf of the Trustee in 2010 . . . . LAAC and its counsel never

---

[32] *See* Trustee's Opposition, at 20:24-21:18.

[33] *See* R2D2 Case, Doc. No. 862.

[34] Trustee's Opposition at 21:19-25.

1    told me that . . . ThinkFilm's rights in those films reverted to Modern Entertainment by letter

2    dated June 9, 2003, more than six years prior to the filing of the Cases.[35]

3        In fact: (i) LAAC's counsel gave the Trustee's counsel *twenty-nine (29) copies* of the June 9, 2003

4    Letter on July 27, 2010; and (ii) LAAC (and Zelus) filed a motion for relief from stay on January 22, 2014

5    in which it identified the only films which it believed had active distribution rights, none of which were

6    those identified in the June 9, 2003 Letter.[36]  In any event, the Trustee does not explain why his patently

7    false allegations, if true, are relevant or material.

8        **Second:**  The Trustee's purported willingness to continue the pursuit of litigation in the name of

9    the Estates does not evidence a reasonable likelihood of rehabilitation.  That willingness must be coupled

10    with a demonstration that the litigation to be pursued will actually benefit the Estates.  In the more than

11    850 pages of material the Trustee submitted in opposition to Mr. Bergstein's MTD, the Trustee fails to

12    establish any likelihood of success in the litigation he seeks to pursue.  Nor does the Trustee provide any

13    economic analysis of these purported claims, even assuming success.

14        **Third:**  Nothing contained in the 4/6/15 Schedules changes this Court's prior determinations that

15    CapCo, CFD, R2D2, and CT-1 have assets of "no material value."  The Trustee makes no argument to the

16    contrary, but only weakly asserts "it remains to be seen what assets there are in the Estates."[37]  The Trustee

17    sought an order requiring Mr. Bergstein to file amended schedules, obtained that order, and Mr. Bergstein

18    complied with that order.  The 4/6/15 Schedules do not give rise to any new claims, suddenly render

19    previously meritless litigation somehow meritorious, or change the fact that there is no reasonable

20    likelihood of rehabilitation.

21        Accordingly, cause for dismissal exists of the Bankruptcy Cases under 11 U.S.C. § 1112(b)(4)(A).

22    **B.    The Oppositions Fail To Rebut The Showing That There Has Been Gross
23         Mismanagement Of The Estates Rendering Recovery For Creditors Impossible.**

24    The Trustee does not dispute, as set forth in Mr. Bergstein's MTD, that:

25        •    The Trustee deprived the Debtors of the opportunity to participate in a judgment in

26            excess of $50 million by requiring them to be dismissed as plaintiffs for no consideration;

27 _____

28    [35] Gumport Decl. ¶ 11 (emphasis added).
     [36] *See* Garfinkle Decl., at ¶¶ 3-12 and Exs. 1-3.
     [37] Trustee's Opposition, 23:12.

OMNIBUS REPLY IN SUPPORT OF MOTION TO DISMISS

- The Trustee released substantial, legitimate claims against AEF, SCIC, their former counsel and other parties for no financial consideration to the Estates. The same or similar conduct of these released parties formed the basis for Mr. Bergstein receiving a $6 million allowed claim against AEF, in addition to other financial consideration, under the 8/29/14 Settlement;

- The Trustee's decision to enter the October 2012 Settlement led to the accrual of millions of dollars in administrative fees and no economic recovery for the Estates to date; and

- The Trustee released other claims worth millions of dollars (namely against Image Entertainment, RFF and others), for no consideration.

As further evidence of the Trustee's gross mismanagement of the Estates, the Trustee attempts to shift blame for the Estates' lack of any recovery to SCIC, stating: "Further, the lack of any economic recovery from the litigation is, rather than a reflection of the Trustee's efforts, a comment on SCIC's shortcomings as derivative plaintiff, and is not a legitimate reason in support of dismissal of the Cases."[38] The Trustee willingly transferred to SCIC derivative standing to pursue the Estates' claims in 2012. Either the Trustee stood idly by and watched for two years as SCIC, with its purported "shortcomings as derivative plaintiff," pursued litigation bearing no tangible benefit for the Estates, or the Trustee's purported skepticism of SCIC's ability to prosecute the Estates' claims is an after-the-fact fabrication expressed only after SCIC vigorously litigated those claims for years and ultimately determined that recovery was unlikely, and that settlement and/or dismissal was the best course. Either option only further establishes the Trustee's gross mismanagement of the Estates.

Accordingly, cause for dismissal exists of the Bankruptcy Cases under 11 U.S.C. § 1112(b)(4)(B).

**C.      The Oppositions Fail To Rebut The Showing That There Has Been No Plan Confirmed After Five (5) Years And There Is No Ability To Effectuate A Plan.**

The Trustee argues that because the Court has not entered an order setting a deadline by which a plan must be confirmed, there is no cause for dismissal.[39] The Trustee fails to acknowledge the fact that the Court did state, in denying the Trustee's Motion to Dismiss or Convert, that it would permit a plan to

---

[38] *Id.* at 19:1-3.

[39] *See id.* at 26:11-13.

be proposed "within a reasonable time."[40]   That was nearly four (4) years ago.  By any objective standard,

a "reasonable time" has long since passed.

The Trustee's Opposition argues, however, that the Court stated in 2012 that it preferred to try to

resolve litigation claims prior to evaluating a plan and disclosure statement.[41]   The Trustee does not

acknowledge, however, that nearly *all* of this litigation has failed and been dismissed by this Court, most

occurring in mid-2013.  Accordingly, the Trustee's attempt to blame the failure to submit and confirm a

plan within a reasonable time on a need to resolve litigation claims is misleading, in light of the fact that

nearly all of those claims were dismissed approximately two (2) years ago.

Moreover, even while those litigations were active, in 2013, the Court stated (in the context of the

Estates' failed equitable subordination action):  "**This case has gone on much longer than I thought, and**

**it's sort of, as I say in a lot of these situations somebody said before you put up or you shut up.  This**

**is the time to just decide these**."[42]   While in 2012 in may have seemed appropriate to address litigation

first, after three years, the inability of the Estates to move the majority of the litigation beyond the pleading

stage, and with no recovery for the Estates obtained or reasonably in prospect, there is no reasonable

likelihood of a plan being confirmed in a reasonable time.

The Oppositions also fail to address the fact that "[t]he failure to file a plan within any reasonable

period of time evidences an inability to effectuate such a plan" and thus provides a basis for finding "cause"

for dismissal.  *In re Brooks*, 488 B.R. 483, 490-91 (Bankr. N.D. Ga. 2013) (citing *De Jounghe v. Mender*,

334 B.R. 760, 771 (1st Cir. BAP 2005) ("finding that a debtor's failure to file a plan over a 14–month

period evidenced no prospect for reorganization and an inability to effectuate a plan under § 1112(b)(1) &

(2).");  *In re Erkins,* 351 B.R. 218, 219 (Bankr. M.D. Fla. 2006) (denying the debtor's motion for

reconsideration and upholding the original order to dismiss, where failure to propose a plan over three

years suggested very little optimism for effectuating such a plan); *In re Fed. Roofing Co., Inc.,* 205 B.R.

638, 642 (Bankr. N.D. Ala. 1996) ("[F]ailure to file a plan over long periods of time can be evidence of no

prospect of reorganization and an inability to effectuate a plan...."); *In re Tornheim,* 181 B.R. 161, 165

(Bankr. S.D.N.Y. 1995) (finding cause to convert or dismiss present after 16 months where the debtor's

---

[40] *See* Katzman Decl., Ex. 8, at 8:16-21.
[41] Trustee's Opposition, at 26:14-22.
[42] Bisconti Decl., Ex. 4, at 35:1-4.

1   "failure to file a plan ... shows both unreasonable, prejudicial delay and an inability to effectuate a plan")).

2          Here, by any measure, there has been no realistic or confirmable plan filed within a reasonable time

3 and the Oppositions have made no showing that there is a reasonable likelihood of any plan being filed (let

4 alone confirmed) within a reasonable time frame.  Accordingly, cause for dismissal exists of the

5 Bankruptcy Cases under 11 U.S.C. § 1112(b)(4)(J)&(M).

6      **D.**    **There Are No "Unusual Circumstances" Preventing Dismissal.**

7         **1.**    **The Oppositions Fail To Satisfy Their Burden Of Establishing "Unusual
8                 Circumstances."**

9          The foregoing demonstrates that cause exists to dismiss these cases.  Nonetheless, the Oppositions

10 argue that there are "unusual circumstances" and, accordingly, the Court should not dismiss the Bankruptcy

11 Cases.  Pursuant to 11 U.S.C. § 1112(b)(2):

12        The court may not convert a case under this chapter to a case under chapter 7 or
dismiss a case under this chapter <u>if the court finds and specifically identifies unusual
13        circumstances</u> establishing that converting or dismissing the case is not in the best
interests of creditors and the estate, <u>and</u> the debtor or any other party in interest
14        establishes that—

15            (A) there is a reasonable likelihood that a plan will be confirmed within the
timeframes established in sections 1121(e) and 1129(e) of this title, or if such
16        sections do not apply, within a reasonable period of time; <u>and</u>

17            (B) the grounds for converting or dismissing the case include an act or
omission of the debtor other than under paragraph (4)(A)—

18                (i) for which there exists a reasonable justification for the act or
omission; and

19                (ii) that will be cured within a reasonable period of time fixed by the
20        court.

21 11 U.S.C. § 1112(b)(2) (emphasis added).  While the movant seeking dismissal has the burden of

22 establishing "cause," "[o]nce 'cause' has been established, the **burden shifts to the non-moving party** to

23 establish whether the case falls within the § 1112(b)(2) 'unusual circumstances' exception to § 1112(b)(1)'s

24 mandatory action by the Court." *In re Kent*, No. 2:07-bk-03238-SSC, 2008 WL 5047799, at *7 (Bankr. D.

25 Ariz. Sept. 23, 2008) (citing *In re The 1031 Tax Group, LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007))

26 (emphasis added).  The Opposing Parties carry the burden of not only showing "unusual circumstances,"

27 "but also to satisfy § 1112(b)(2)(A) and (B)(i) and (ii)."  *In re Hoyle*, No. 10-01484-TLM, 2013 WL

28 210254, at *14 (Bankr. D. Idaho Jan. 17, 2013).

As an initial matter, here the Court does not need reach the question of whether "unusual circumstances" are present.  The Oppositions have failed, as a threshold matter, to meet their burden of establishing that: (i) there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time; and (ii) that the grounds for dismissal set forth above are reasonably justified and will be cured within a reasonable period of time.  Because the Opposing Parties have failed to meet their burden on these issues, whether "unusual circumstances" are present is irrelevant—the Court is required to dismiss or convert the Bankruptcy Cases.

Assuming arguendo that any of the Opposing Parties met their burden of establishing 11 U.S.C. § 1112(b)(2)(A) and (B)(i)&(ii), there are no "unusual circumstances" present in the Bankruptcy Cases preventing dismissal.  While the Trustee cites to the case of *9281 Shore Rd. Owners Corp. v. Seminole Realty Corp. (In re 9281 Shore Rd. Owners Corp.)*, 187 B.R. 837, 854 (E.D.N.Y. 1995) in the section of the Trustee's Opposition addressing "unusual circumstances," that decision does not include any discussion of the application of the "unusual circumstances" exception to dismissal—indeed, the decision does not even contain the phrase "unusual circumstances."  Instead, the decision discusses the bankruptcy court's dismissal of case where, unlike here, the debtor asserted an equitable subordination claim that was not decided on the merits.  In contrast, here, the Court has considered—and rejected—the merits of the Estates' equitable subordination claim.  Regardless of the Trustee's deceptive citation to this case, none of the Oppositions specifically identify any grounds sufficient to establish "unusual circumstances" in the Bankruptcy Cases.

**First**: The primary argument that "unusual circumstances" are present is the purported "obstruction" by insiders, and the 4/6/15 Schedules which the Trustee claims "discloses (or admits) information never previously disclosed," referencing the Comerica-provided financial statements.[43]  However, as demonstrated above, the Trustee has had the referenced financial statements since 2011.  The Oppositions further assert as "unusual circumstances" Mr. Bergstein's alleged "litigiousness,"[44] which is ironic given that the Estates commenced in excess of 100 adversary proceedings against which Mr. Bergstein and others—including Mr. Bergstein's wife and mother—have had to defend themselves.

---

[43] *See* Trustee's Opposition, at 29:23-30:5.

[44] *See, e.g.*, Allied Opposition, at 3.

OMNIBUS REPLY IN SUPPORT OF MOTION TO DISMISS

**Second**: The Trustee incorrectly argues that because Mr. Bergstein, AEF, and SCIC are the parties requesting dismissal, somehow this amounts to "unusual circumstances" preventing dismissal of the Bankruptcy Cases.[45]   Since their inception these Bankruptcy Cases have been primarily a two-party dispute.  The Court implicitly recognized this fact when it stated, in denying the Trustee's motion to convert or dismiss the Bankruptcy Cases:

> I intend to give the creditors [AEF and SCIC] a chance to step up.  But obviously, they're the ones who's going to have to pay for it . . . [H]ad there not been this proposal to plan, I most likely would not have converted the cases, [but] most likely would have dismissed the cases . . . .[46]

The Court subsequently confirmed this, stating:

> The only reason I didn't dismiss the case is because Aramid basically stepped up and said, we've got this $4,000,000, and we'll do it, and that was it, unless I'm wrong. If you want me to say that isn't what happened, but it was pretty clear.  **And I could have dismissed it.**  I didn't dismiss it."[47]

The primary parties to this dispute, Mr. Bergstein, AEF, and SCIC, have settled.  That settlement has been vetted and approved by two separate bankruptcy courts.  The circumstances at present are the same as when the Court stated that it "could have dismissed" the Bankruptcy Cases, minus the critical fact that led this Court to not to do so previously—AEF and SCIC will no longer continue to fund these Bankruptcy Cases.

While it may be subjectively "unusual" from the Trustee's perspective that parties would be reasonable and settle, there is nothing objectively unusual about the fact that parties, after years of contentious litigation, decided to cease litigation, consensually resolve their disputes, and move forward in peace.

///

///

---

[45] *See* Trustee's Opposition, at 30:12-23.

[46] Katzman Decl., Ex. 8, at 12:15-22.

[47] *Id.*, Ex. 37, at 18:3-4 (emphasis added).

OMNIBUS REPLY IN SUPPORT OF MOTION TO DISMISS

**Third:** The Trustee has provided no foundation supporting his purported belief that "there is a reasonable likelihood of plan confirmation within a reasonable time."[48]  As set forth above, these cases have been pending for over five (5) years, and the only plans ever submitted to this Court (the last one in 2012) are patently unconfirmable and contingent upon successes in various litigation.  Those litigations have failed.  While the Trustee attempts to argue that this Court has a policy of deciding litigation before moving forward on a plan, the Court has already dismissed a majority of the litigation, mostly in 2013.

> **2.    The Only "Unusual Circumstances" Are The Trustee's Deceptive Tactics And Desire To Continue To Pursue Meritless Litigation Having No Demonstrated Value To The Estates.**

The Oppositions have failed to show any "unusual circumstances" preventing dismissal.  However, any "unusual circumstances," to the extent they are present, have resulted from the Trustee's troubling tactics and unjustified desire to continue pursuing destructive, meritless litigation in the name of the Estates, where he is unable to establish any benefit to the Estates.

The Trustee's tactics are well established, and include (but are in no way limited to): (i) improperly removing Mr. Bergstein's lawsuit against Susan Tregub to this Court in an attempt to derail that litigation— conduct for which Trustee's counsel was sanctioned—and requiring the Debtors to be dismissed from that action, depriving them of participation in a judgment in excess of $50 million; (ii) issuing the Trustee's Report, which contained confidential information that was wholly irrelevant to the Bankruptcy Cases (such as Mr. Bergstein's wife's social security number, personal bank statements, etc.), was unwarranted and not pursuant to any statutory requirement or ruling by this Court, and has not led to any recovery for the Estates; and (iii) asking certain third parties to assist in the process of obtaining the Court's recusal,[49] which this Court recognized was an "engineered attempt" to get rid of this Court due to dissatisfaction with certain rulings favoring Mr. Bergstein.[50]

---

[48] Trustee's Opposition, 31:1-2.

[49] *See* Katzman Decl., Ex. 38 (Declaration filed by David R. Bergstein on January 21, 2015), at exhibit 1 thereto  (Declaration of A. Mitchell Green), at ¶ 11 ("Gumport asked me to make a filing in the R2D2 Cases which tied Bergstein to Judge Russell in order to force Judge Russell's recusal . . . Gumport told me that he could not make such a filing because it would be seen negatively by Judge Russell generally and would further impair Gumport's credibility with the Office of the United States Trustee and the bankruptcy bar generally.").

[50] *See* Katzman Decl., Ex. 16 (Transcript of hearing on Recusal Motion), at 74-76.

18

OMNIBUS REPLY IN SUPPORT OF MOTION TO DISMISS

The Trustee's most recent efforts involve egregious forum shopping in an attempt to circumvent this Court as part of the Trustee's ongoing campaign to continue the pursuit of litigation in the name of the Estates.  On September 11, 2014, the Trustee filed an emergency motion in the District Court seeking to undo the October 2012 Settlement approved by this Court.[51] The District Court denied the motion.[52]  When this Court learned of the Trustee's tactical gamesmanship and forum shopping, the Court was rightfully concerned.  At a status conference held on September 23, 2014, the Court stated:

> . . . I am concerned about some of the things going on in the district court . . . I think some of the things that are going on should be here and not there.
> And, indeed, I was amazed that a motion was made to undo the agreement—I have no opinion on the merits of it—that I signed.  Its not on appeal, and yet it went to Gutierrez. I don't understand . . .
> Well, I don't understand, quite frankly, what's happening . . . And I think there is a difference, say, for instance, between being an appellate court and a trial judge.  And I think they have—it may have suddenly—that could never happen in the Ninth Circuit or the BAP.
> But I'm not faulting anybody, I'm simply saying, there is some slippage there as far as what's going on.[53]

In response to the Trustee's argument that the relief should be requested from the District Court, the Court stated:

> But the problem with that is, that, I can understand is substituting somebody in for an appeal of new party. But the issue as I understand it, my view is really for this Court, the order, that's not even on appeal.[54]

Ignoring the express language of the October 2012 Settlement and this Court's clear statements at the September 23, 2014 hearing, the Trustee filed a renewed motion in the District Court attacking the October 2012 Settlement, going so far as to urge the District Court to remove the reference,[55] again attempting to forum shop by removing the Bankruptcy Cases from this Court.

The District Court initially entered an order granting the Trustee's renewed motion.[56]  On December 3, 2014, this Court held a status conference in the Bankruptcy Cases.  When discussing the

---

[51] *Id.* at Ex. 23 (9/11/14 Motion).
[52] *See id.*, Ex. 24 (Order Denying 9/11/14 Motion), at 6.
[53] Katzman Decl., Ex. 25 (Transcript of status conference held on September 23, 2014), at 6:16-7:11.
[54] *Id.* 37:4-8.
[55] *Id.*, Ex. 27 (10/10/14 Motion) at 20.
[56] *Id.* at Ex. 28 (11/24/14 Order).

OMNIBUS REPLY IN SUPPORT OF MOTION TO DISMISS

Trustee's continued attempts to circumvent this Court by forum shopping to the District Court and misrepresenting the record, the Court stated to the Trustee's counsel:

> It seems what you're doing is going to other -- Judge Gutierrez and arguing that I am simply not doing what I should be doing. At least that's my sense of what you've been arguing. It's totally false, and what I want you to do is if you want me to have -- order him because he has not complied with my original order, you've known that since May of -- of last year.[57]

This Court further made clear its strong disagreement's with the Trustee's counsel's "tactic"[58] of going to the District Court and making arguments that were "not accurate at all,"[59] "nonsense,"[60] and "frivolous."[61]

The Trustee's disingenuous tactics did not end there, which this Court has recognized.  At a hearing held on February 4, 2015, the Court questioned the Trustee's counsel about false statements contained in the Trustee's brief, accusing this Court of "stat[ing] it would not enforce the District Court's 8/12 order unless someone filed a motion to enforce that order."[62]  The Court responded that the Trustee's statement was "just not true.  That's just false . . . I've read it, and it really bothers me that you would make such a false statement."[63]  The Court further warned the Trustee's counsel that his "credibility is really on the line here, Mr. Gumport."[64]  When the Trustee's counsel persisted, the Court responded "you're not being truthful, Mr. Gumport . . . you're losing it, Mr. Gumport . . . I think your judgment and credibility have been tested here, and I just don't like it . . . Mr. Gumport, your credibility—the more you talk, the worse its getting for you."[65]

The foregoing is not exhaustive.  However, the above makes clear that, to the extent there are "unusual circumstances" present in these cases, those circumstances support dismissal of the Bankruptcy Cases at this time.

///

///

---

[57] Katzman Decl., Ex. 30 (Transcript of December 3, 2014 status conference), at 10:18-24.
[58] *Id.* at 12:3-8.
[59] *Id.* at 15:2-4.
[60] *Id.* at 16:1.
[61] *Id.* at 17:22.
[62] Bisconti Decl., Ex. 5 (Transcript of proceedings held February 4, 2015), at 6:6-20.
[63] *Id.* at 6:10-20.
[64] *Id.* at 8:20-21.
[65] *Id.* at 10:7-12:20.

**III.     CONCLUSION**

For the foregoing reasons, and as set forth in Mr. Bergstein's MTD, the Court should grant Mr. Bergstein's MTD and dismiss the Bankruptcy Cases and related adversary proceedings.

Dated: April 21, 2015                         BIENERT, MILLER & KATZMAN, PLC

                                              By:   /s/ Steven Jay Katzman
                                                    Steven Jay Katzman
                                                    Anthony R. Bisconti
                                                    Attorneys for Interested Party David R. Bergstein

OMNIBUS REPLY IN SUPPORT OF MOTION TO DISMISS

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 903 Calle Amanecer, Suite 350, San Clemente, California 92673

A true and correct copy of the foregoing document entitled OMNIBUS REPLY OF DAVID R. BERGSTEIN IN SUPPORT OF MOTION TO DISMISS DEBTOR'S BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 1112(b) DECLARATION OF DAVID R. BERGSTEIN AND DECLARATION OF ANTHONY R. BISCONTI will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 21, 2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

David E Ahdoot     dahdoot@bushgottlieb.com, rsanthon@bushgottlieb.com
Steven A Alpert    notice@pricelawgroup.com, steven@pricelawgroup.com
Todd M Arnold      tma@lnbyb.com
Eric J Bakewell    ejbakewell@venable.com, vmdefterderian@Venable.com; lmelliott@Venable.com;
amweingarten@venable.com;mosordina@venable.com;adward@venable.com;lalitigationdocketing@venable.com

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On _____, 2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 21, 2015, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Barry Russell (Overnight Delivery)
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 21, 2015 | Coleen Grogan | /s/ Coleen Grogan /s/ |
|----------------|---------------|------------------------|
| *Date*         | *Printed Name* | *Signature*           |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                          **F 9013-3.1.PROOF.SERVICE**

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) (Continued)**

Anthony Bisconti    tbisconti@bmkattorneys.com, admin@bmkattorneys.com
Bernard D Bollinger    bbollinger@buchalter.com, IFS_filing@buchalter.com;smartin@buchalter.com
Sandor T Boxer    tedb@tedboxer.com
Hartford O Brown    hbrown@klinedinstlaw.com
John P Byrne    John.Byrne@byrnelaw.biz
Christopher T Casamassima    chris.casamassima@wilmerhale.com, whmao@wilmerhale.com
Steven Casselberry    scasselberry@mrllp.com, jjacobs@mrllp.com
Jennifer S Chang    jsc@birdmarella.com, krw@birdmarella.com
Sara Chenetz    schenetz@perkinscoie.com, dlax@perkinscoie.com
Teresa C Chow    tchow@bakerlaw.com, llovullo@bakerlaw.com
Theodore A Cohen    tcohen@sheppardmullin.com, amontoya@sheppardmullin.com
Donald H Cram    dhc@severson.com, jc@severson.com
Jennifer Witherell Crastz    jcrastz@hemar-rousso.com
William Crockett    wec@weclaw.com, ksa@weclaw.com
Vartanoush Defterderian    vmdefterderian@venable.com, adward@venable.com; mosordina@venable.com;
mrabbi@venable.com
Joseph A Eisenberg    jae@jmbm.com, vr@jmbm.com;tgeher@jmbm.com;bt@jmbm.com;jae@ecf.inforuptcy.com
Russ W Ercolani    ercolaniecfmail@gmail.com
Brian C Frontino    bfrontino@stroock.com, lacalendar@stroock.com
Jeffrey K Garfinkle    jgarfinkle@buchalter.com, docket@buchalter.com;dcyrankowski@buchalter.com
Philip A Gasteier    pag@lnbrb.com
Thomas M Geher    tmg@jmbm.com, we1@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com
Seth Goldman    seth.goldman@mto.com
Irving M Gross    img@lnbrb.com, angela@lnbrb.com
Leonard L Gumport    lgumport@gumportlaw.com
Michael C Heinrichs    mheinrichs@omm.com
Matthew Heyn    mheyn@ktbslaw.com, mcheyn@outlook.com
Whitman L Holt    wholt@ktbslaw.com
Marsha A Houston    mhouston@reedsmith.com
David I Hurwitz    dih@birdmarella.com, krw@birdmarella.com;em@birdmarella.com
Stephen E Hyam    shyam@clarktrev.com
Allan H Ickowitz    aickowitz@nossaman.com, mbonilla@nossaman.com
John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
Stephen R Isbell    sisbell@mrllp.com, jjacobs@mrllp.com
Jacqueline L James    jlj@lnbyb.com
Nami Kang    nkang@erlaw.com
Eve H Karasik    ekarasik@gordonsilver.com
Steven J Katzman    SKatzman@bmkattorneys.com, admin@bmkattorneys.com
Joseph A Kohanski    jkohanski@bushgottlieb.com, jsilver@bushgottlieb.com
Claudio Koren    ckoren@collectionlaw.com, eparker@collectionlaw.com
Bernard J Kornberg    bjk@severson.com
Bernard J Kornberg    bjk@severson.com
Jeffrey A Krieger    jkrieger@ggfirm.com, kwoodson@greenbergglusker.com; calendar@greenbergglusker.com;
jking@greenbergglusker.com
Robert S Lampl    advocate45@aol.com
Mary D Lane    mal@msk.com, mec@msk.com
Lindsay A Lau    llau@omm.com, llau@omm.com
Richard Levy    rlevy@pryorcashman.com
Craig E Lindberg    craig.lindberg@fedex.com, jlpolson@fedex.com,khmiller@fedex.com
Michael S Lurey    michael.lurey@lw.com, colleen.rico@lw.com
Ron Maroko    ron.maroko@usdoj.gov
Peter J Mastan    pmastan@gumportlaw.com
Clinton J McCord    , lsepulvado@edwardswildman.com;yestrada@edwardswildman.com
David W. Meadows    david@davidwmeadowslaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## 1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) (Continued)

Jennifer F Meeker    jmeeker@nossaman.com
Hayes F Michel    hmichel@krakowskymichel.com
Avi Muhtar    amuhtar@gmail.com, amuhtar@ecf.inforuptcy.com
David L. Neale    dln@lnbrb.com
Robert Nida    Rnida@castlelawoffice.com
Christina M Padien    cpadien@akingump.com, tsouthwell@akingump.com
Andrew M Parlen    aparlen@omm.com
Danielle A Pham    dpham@gordonsilver.com
Timothy R Pomeroy    tpomeroy@klinedinstlaw.com
Dean G Rallis    drallis@afrct.com, bcruz@afrct.com
Vince Ravine    vince@vravinelaw.com
J. Alexandra Rhim    arhim@hemar-rousso.com, nairy@hemar-rousso.com
Steven E Rich    srich@mayerbrown.com, egriffin@mayerbrown.com,LOS-DEPT-Docket@mayerbrown.com,
ckelley@mayerbrown.com,jgrenard@mayerbrown.com
Karen Rinehart    krinehart@omm.com
Andrew S. Rotter    arotter@grlegal.com
Daniel A Rozansky    drozansky@jenner.com, lacalendar@stroock.com;lsaltzman@jenner.com
Scott A Schiff    sas@soukup-schiff.com
Mark M Sharf    mark@sharflaw.com, msharf00@gmail.com
Jeffrey S Shinbrot    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com
Leonard M Shulman    lshulman@shbllp.com
Steven R Skirvin    srs@weclaw.com
Adam M Starr    starra@gtlaw.com, laik@gtlaw.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Alex M Weingarten    amweingarten@venable.com, mrabbi@venable.com; mosordina@venable.com;
lalitigationdocketing@venable.com
Joseph M Welch    jwelch@buchalter.com, dcyrankowski@buchalter.com; docket@buchalter.com;
ahorowitz@buchalter.com
Steven Werth    swerth@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com; slee@sulmeyerlaw.com;
slee@ecf.inforuptcy.com;asokolowski@ecf.inforuptcy.com;swerth@ecf.inforuptcy.com
Rebecca J Winthrop    rebecca.winthrop@nortonrosefulbright.com, darla.rodrigo@nortonrosefulbright.com
Gina Yang    gyang@sheppardmullin.com, sstevenson-kelley@sheppardmullin.com
Angella D Yates    ayates@buchalter.com, smartin@buchalter.com;IFS_filing@buchalter.com
Melvin Yee    melvin@wagejustice.org

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                          **F 9013-3.1.PROOF.SERVICE**